Alfred C. Pfeiffer, Jr. (*pro hac vice* pending)
Kyle A. Virgien (*pro hac vice* pending)
Dorottya Schranz (*pro hac vice* pending)
John H. Steinbach (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice* pending)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.343.0762
Facsimile: 415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone: 801.521.9862
Facsimile: 801.532.2850
aclu@acluutah.org

*Attorneys for Plaintiffs Disability Law Center,
Katherine C., and Anthony M.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center, Katherine C., and Anthony M.<br><br>        Plaintiffs,<br><br>v.<br><br>The State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts<br><br>        Defendants. | **COMPLAINT**<br><br>**FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**<br><br><br><br>Case No. _____ |

## INTRODUCTION

1.     In the 54 years since the Supreme Court's landmark decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), the right to independent counsel has emerged as one of the most fundamental safeguards of individual liberty.  Before the law may strip us of our most basic and inalienable rights, it guarantees us representation by a zealous, committed advocate.

2.     This principle undergirds our most elementary conceptions of fairness, due process, and equality before the law.  The Constitution dictates that certain interests are too important to be summarily forfeited.  Nowhere is this axiom more important than when it operates to shield the most vulnerable elements of society—groups like children, the elderly, and those with disabilities.  Where fundamental liberties are at stake, the byzantine legal process cannot be fair to a person "unaided by counsel, and who by reason of his mental conditions stands helpless and alone before the court."  *Massey v. Moore*, 348 U.S. 105, 108 (1954).

3.     The state of Utah has undermined this fundamental guarantee.  Utah Code Section 75-5-303 recognizes the importance of independent counsel for a prospective ward by requiring he or she be represented by an attorney, but it violates both federal law and the U.S. Constitution by imposing the costs of that representation on most prospective wards.  A newly enacted state law—H.B. 101, also known as the Disabled Adult Guardianship Amendments—exacerbates this deprivation by removing the right to counsel for certain prospective wards in guardianship proceedings.  Many Utahns will face a complete forfeiture of legal autonomy without a chance to have their interests protected by an independent attorney.

4.      Further, H.B. 101 targets the poorest Utahns with disabilities.  It applies only to prospective wards with less than $20,000 in net assets, meaning that the people most in need of appointed counsel will be the ones required to defend themselves.

5.      Plaintiffs bring this action for injunctive and declaratory relief because the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act oblige Utah to require—and pay for—counsel before stripping potential wards of their most fundamental and precious legal rights.

## JURISDICTION AND VENUE

6.      This court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States, namely the ADA, the Rehabilitation Act, and the federal Constitution.

7.      This court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4) over this civil action commenced to (i) redress the deprivation of a right or privilege secured by an Act of Congress providing for equal rights of all citizens, and (ii) to secure equitable relief under an Act of Congress providing for the protection of civil rights.

8.      This court has jurisdiction to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to the dispute occurred in this district.

## PARTIES

### Plaintiffs

### Disability Law Center

10.     Founded in 1978, Plaintiff Disability Law Center ("DLC") is a private, non-profit organization dedicated to protecting the rights of Utahns with disabilities.

11.     The governor of Utah designated DLC an authorized protection and advocacy organization under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801, *et seq.*   In PAIMI, the United States Congress directs organizations like DLC to take any necessary legal action to safeguard the rights and interests of individuals with mental illnesses.

12.     The Protection and Advocacy for Individuals with Developmental Disabilities statutes ("PADD"), 42 U.S.C. § 15001, *et seq.*, likewise direct protection and advocacy organizations such as DLC to bring legal challenges in support of those with developmental disabilities.

13.     DLC has frequently exercised its statutory authority to bring suit challenging laws and practices that harm Utahns with disabilities.  *See*, *e.g.*, *J.H. v. Just for Kids of Utah County, Inc.*, No. 2:16-cv-00358-JNP (D. Utah May 2, 2016) (challenging exclusion of an individual with disabilities from a vocational education program); *J.H. v. Six Feet Below, LLC*, No. 1:16-cv-00031-BCW (D. Utah Apr. 11, 2016) (opposing tattoo parlor's blanket denial of service to those with HIV); *Disability Law Center v. Utah*, No. 2:15-cv-00645-RJS (D. Utah Sept. 8, 2015) (bringing class-action suit to bar state entities from forcing vulnerable criminal defendants with mental illness to languish in jail while waiting months for transfer to the Utah State Hospital).

4

14.     In accordance with the statutory requirements of PAIMI, DLC relies on an advisory council composed of consumers of mental health services, family members, providers, attorneys, and other interested community members.

15.     The PAIMI advisory council accepts suggestions and input from people with disabilities and their family members and uses that feedback to help shape DLC's advocacy priorities.

16.     Additionally, DLC's 16-member elected governing board counts among its members several Utahns with disabilities and their family members.  The governing board is intimately familiar with the needs of those with mental illness and developmental disabilities.  Along with the PAIMI advisory council, this organizational structure ensures a close connection between DLC's activities and the interests of its constituents.

17.     DLC advocates on behalf of its constituents: the over 300,000 Utahns with disabilities.  This advocacy includes working to expand the availability of healthcare, increase access to education, and secure voting rights for those individuals.

18.     DLC files this action to protect and advocate for the rights and interests of prospective wards in guardianship proceedings in the state of Utah.  These Utahns are DLC constituents.

19.      These constituents have significant mental illnesses or developmental disabilities that substantially limit their ability to perform major life activities, such as self-care, working, and interaction with others.  Further, Defendants regard them as having these mental illnesses or developmental disabilities.  Many also have a record of these mental illnesses or developmental disabilities.  They are therefore individuals with disabilities for purposes of the ADA.  42 U.S.C.

§ 12102.  To the extent these constituents have diagnosed mental illnesses, they are "individuals with mental illness" under PAIMI.  42 U.S.C. § 10802.

20.     These constituents have each suffered injuries, or are at risk of suffering injuries, that would allow them to bring suit against Defendants in their own right.

**Katherine C.**

21.     Plaintiff Katherine C. is a resident of Sandy, Utah.

22.     Katherine currently works as a junior law clerk at a nonprofit in Salt Lake City, Utah. Her work focuses on abuse and neglect of mentally ill prisoners, including the constitutionality of solitary confinement for inmates with mental illnesses.  She graduated Magna Cum Laude with an undergraduate degree in sociology and later earned her law degree.

23.     Shortly after graduating from law school, Katherine was diagnosed with paranoid schizophrenia, which at times significantly limits her ability to engage in a variety of major life activities.  At times in the past, her condition has impeded her ability to work, sleep, care for herself, and socialize with others.

24.     Due in large part to her paranoid schizophrenia, Katherine currently lives with her parents in Sandy and relies on them for financial support.

25.     Katherine possesses less than $20,000 in total assets.

26.     In October 2015, Katherine was committed to the University of Utah Neuropsychiatric Institute in Salt Lake City, Utah.  Although she initially entered the facility voluntarily, she was involuntarily confined for two weeks and subjected to inpatient care.

27.     In September 2016, Katherine was committed to Salt Lake Behavioral Health for six weeks.  Again, Katherine checked herself into the facility voluntarily, but was subjected to

continued detention against her will.  The psychiatrist initially assigned to her case did not ask about her symptoms and attacked her personal beliefs.  Eventually, Katherine's treatment team held a forced medication hearing and determined that Katherine would be injected with Abilify (a powerful antipsychotic drug).

28.    Following her release from Salt Lake Behavioral Health, Katherine was placed on the waitlist for the Utah State Hospital.  Consequently, Katherine faces the prospect of long-term involuntary confinement should she experience another paranoid schizophrenic episode.

29.    Although Katherine's parents are loving and supportive, they have expressed concern about Katherine's ability to function autonomously.  Katherine is deeply concerned that her parents will file to create a permanent guardianship that would deprive her of her essential liberty interests.

30.    In the event of guardianship proceedings initiated by Katherine's parents, Katherine would be unable to afford a lawyer of her own to advocate on her behalf.

31.    Despite Katherine's legal training, she worries that a guardianship proceeding would likely come at a time when her paranoid schizophrenia will prevent her from defending herself.

32.    Due to the provisions of H.B. 101, Katherine faces the very real prospect of being subjected to a guardianship proceeding and deprived of fundamental liberties without an independent advocate to protect her interests.

**Anthony M.**

33.    Plaintiff Anthony M. is 34 years old and a resident of Draper, Utah.

34.     Anthony is currently employed as an assistant custodian with a Utah school district.

35.     Anthony has developmental and intellectual disabilities.  He has microcephaly, club feet, and generalized anxiety disorder.

36.     Due to his disabilities, Anthony is unable to manage his own finances and relies on others to look after his limited financial resources.

37.     As a result of his disability, Anthony is unable to live on his own.  He currently lives with his wife and son but receives continuing care and financial support from his parents.

38.     Anthony was adopted from the Utah Department of Child Foster Services.  He was severely abused while in the system, and Anthony's adoptive parents believed he would eventually need a legal guardianship to ensure continuing care.

39.     Although Anthony has developed skills and abilities over time, Anthony's parents have expressed a desire to obtain a determination of legal guardianship over him.

40.     Anthony has less than $20,000 in net total assets.

41.     Due to the provisions of H.B. 101, Anthony faces the very real prospect of being subjected to a guardianship proceeding and deprived of fundamental liberties without an independent advocate to protect his interests.

**Defendants**

42.     Defendant the State of Utah is responsible for operating its programs, services, and activities in conformity with the Americans with Disabilities Act, the Rehabilitation Act, and the United States Constitution.

43.     Defendant the Utah Judicial Council makes policy for the judiciary and has the constitutional power to adopt uniform rules for the administration of the Utah State Court System.  The Utah Judicial Council, along with Defendant the Utah Administrative Office of the Courts, is responsible for the implementation of Utah Code Section 75-5-303 in general and H.B. 101, specifically, which govern guardianship proceedings.

44.     Defendant the Utah Administrative Office of the Courts administers the Utah State Court System.  The Utah Administrative Office of the Courts, along with Defendant the Utah Judicial Council, is responsible for the implementation of Utah Code Section 75-5-303 in general and H.B. 101, specifically, which govern guardianship proceedings.

45.     Defendant the State of Utah is a public entity subject to the requirements of Title II of the ADA, 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

46.     The Utah State Court system, including Defendant the Utah Judicial Counsel and Defendant the Utah Administrative Office of the Courts, is a public entity subject to the requirements of Title II of the ADA, 42 U.S.C. § 12131 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## FACTS

### Utah's Guardianship Process

47.     Utah's guardianship proceedings are governed by Utah Code Section 75-5-303.

48.     The petitioner in a guardianship proceeding must prove by clear and convincing evidence that the respondent is incapacitated, which is defined by Utah Code Section 75-1-201 as "lack[ing] the ability, even with appropriate technological assistance, to meet the essential requirements for financial protection or physical health, safety, or self-care: (a) receive and

evaluate information; (b) make and communicate decisions; or (c) provide for necessities such as food, shelter, clothing, health care, or safety."

49.     Except as modified by order of the court, a guardian's rights, powers, and duties respecting his or her ward include:

      a.   the right to "establish the ward's place of abode within or without this state";

      b.   the right to consent to the ward's medical care or treatment; and

      c.   "the same powers, rights and duties respecting the ward that a parent has respecting the parent's unemancipated minor child."  Utah Code § 75-5-312.

50.     Until January 1, 2017, Utah law required that all respondents in guardianship proceedings be represented by a lawyer.  If the respondent had not chosen a lawyer, the court was mandated to appoint one.  But in most cases, Utah passed the burden of paying for the potential ward's attorney onto the potential ward.  *See* Utah Code § 75-5-303(2) ("Unless the allegedly incapacitated person has counsel of the person's own choice, the court shall appoint an attorney to represent the person in the proceeding the cost of which shall be paid by the person alleged to be incapacitated.  If the court determines that the petition is without merit, the attorney fees and court costs shall be paid by the person filing the petition.").  Indeed, the prospective ward may even be asked to pay the fees and costs of the person attempting to impose a guardianship on him or her.  *See id.* ("If the court appoints the petitioner or the petitioner's nominee as guardian of the incapacitated person, regardless of whether the nominee is specified in the moving petition or nominated during the proceedings, the petitioner shall be entitled to receive from the incapacitated person reasonable attorney fees and court costs incurred in bringing, prosecuting, or defending the petition.").

51.     The Office of the Public Guardian, the Utah state agency responsible for public guardianship and conservatorship services in Utah, offers a description of the guardianship process on its website, available at https://opg.utah.gov/guardianship/rights-of-protectedpersons/. The website notes that potential wards "have certain 'due process' rights, including the right to . . . be represented by an attorney" and to "[p]resent evidence in opposition to the petition for guardianship," rights which the website describes as "crucial because they serve as part of a system of checks and balances on guardianship." The website goes on to state that, "even though guardianship may be necessary and very helpful, guardianship limits the self-determination of the person placed under it. There are few legal processes more restrictive of citizens in a free society than guardianship."

**House Bill 101: the Disabled Adult Guardianship Amendments**

52.     In 2016, the Utah state legislature passed the Disabled Adult Guardianship Amendments, or H.B. 101, codified in Section 75-5-303(d) of the Utah Code.

53.     H.B. 101 rescinds a prospective ward's statutory right to independent counsel in a guardianship hearing.

54.     H.B. 101 removes the guarantee of counsel for the prospective ward if: (i) he or she is the biological or adopted child of the petitioner; (ii) the value of his or her entire estate does not exceed $20,000; (iii) he or she appears in court with the petitioner; (iv) he or she is given the opportunity to communicate, to the extent possible, his or her acceptance of the appointment of the petitioner; and (v) the court is satisfied that counsel is not necessary in order to protect his or her interests.

55.     As a result of this legislation, certain Utahns with disabilities and limited financial resources are no longer guaranteed counsel in guardianship hearings**.**

**The Guardianship Signature Program**

56.     The Utah Board of District Court Judges and Utah Bar Commission endorse a program called The Guardianship Signature Program ("Signature Program") which is described on the Utah Courts website at: https://www.utcourts.gov/howto/family/gc/signature/index.html.

57.     The Signature Program provides judges with a list of lawyers who have volunteered to represent respondents in guardianship proceedings, either on a sliding scale if the client's income qualifies or for reasonable and necessary attorney fees if the client's income is more than three times the federal poverty guidelines.

58.     The S.J. Quinney College of Law at the University of Utah has organized a program for second- and third-year students and recent law graduates to assist Signature Program attorneys.

59.     The Signature Program description on the Utah Courts website provides that an attorney who agrees to represent a respondent in a guardianship proceeding will, among other duties, "zealously assert the client's position under the statutes and rules," "investigate alternatives to guardianship," "present the client's proposals and contest proposals with which the client does not agree," and "investigate the proper limited authority of a guardian, ensuring that the court grants a full guardianship only if no alternative exists."

**FIRST CLAIM FOR RELIEF**
**(For Injunctive Relief Against All Defendants)**
**(Americans with Disabilities Act)**

60.     Plaintiffs incorporate paragraphs 1 to 59 by reference.

61.     Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

62.     The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

63.     The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications to rules, policies, the removal of  . . . communication . . . barriers, or the provision of auxiliary aids or services meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

64.     The ADA defines "public entity' as "A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1).

65.     The United States Department of Justice has promulgated regulations under Title II of the ADA requiring public entities to provide reasonable accommodations to make their services, programs, or activities "readily accessible" to disabled individuals.   28 C.F.R. § 35.150(a)(1).

66.     These regulations further require that a public entity may not, "directly or through contractual or other arrangements, utilize criteria or methods of administration . . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of

disability[.]"  28  C.F.R.  § 35.130(b)(3)(i).  And  "[a]  public  entity  shall  make  reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]"  28 C.F.R. § 35.130(b)(7)(i).

67.     The regulations also require public entities to "take appropriate steps to ensure that communications with the applicants, participants, members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R. § 35.160(a)(1).

68.     These  regulations  bar  the  public  entity  from  passing  on  the  costs  of accommodations to disabled individuals.  28 C.F.R. § 33.130(f).

69.     Plaintiff  Katherine  C.  is  an  individual  with  a  disability  under  the  ADA. Katherine's  impairments  substantially  limit  one  or  more  major  life  activities  in  that  her diagnosed  paranoid  schizophrenia  inhibits  her  ability  to  work,  sleep,  care  for  herself,  and socialize  with  peers.   *See*  28  C.F.R.  § 35.108(d)(2)(iii)(K)  ("schizophrenia . . . substantially limits brain function").

70.     Plaintiff Anthony M. is an individual with a disability under the ADA.  Anthony's impairments  substantially  limit  one  or  more  major  life  activities  in  that  his  developmental disability makes it difficult for him to work, sleep, care for himself, and socialize with peers.  *See* 28 C.F.R. § 35.108(d)(2)(iii)(C) ("Intellectual disability substantially limits brain function").

71.     DLC's constituents are individuals with disabilities under the ADA.  They have mental impairments that substantially limit one or more major life activity, such as self-care and interaction  with  others.   They  are  regarded  as  having  these  mental  illnesses  or  developmental disabilities.  Many also have a record of these mental illnesses or developmental disabilities.

72.     Plaintiffs Katherine C. and Anthony M., along with  DLC's constituents, are qualified individuals under the ADA in that they meet the essential eligibility requirements for access to the courts.

73.     Katherine, Anthony, and DLC's constituents cannot fully participate in guardianship court proceedings without an attorney representative.  Absent counsel, these respondents cannot participate and communicate on an equal, equally effective, or meaningful basis in the adversarial process.  They are less likely to contest the proposed guardianship or, where some form of guardianship is appropriate, to advocate for limits to this guardianship.

74.     Under Title II of the ADA and its implementing regulations, counsel constitute  a required reasonable accommodation for individuals with mental illnesses or developmental disabilities, who otherwise would be excluded from participation in, denied the benefits of, and subjected to discrimination in attempting to access guardianship proceedings. Counsel also constitute a required reasonable accommodation under Title II of the ADA and its implementing regulations to ensure that the court system's communications with developmentally disabled individuals and individuals with mental illnesses are as effective as its communications with others.

75.     Defendants discriminate against Plaintiffs in violation of Title II of the ADA and its implementing regulations by failing to make the reasonable accommodations necessary to ensure an equal opportunity for Plaintiffs to participate in Defendants' programs and activities and to ensure effective communication with Plaintiffs and by forcing Plaintiffs to bear the costs of their reasonable accommodations.

76.     This discrimination is by reason of Katherine's, Anthony's and DLC's constituents' disabilities.

77.     As a result of Defendants' failure to provide counsel, Katherine, Anthony, and DLC's constituents have been excluded from or denied the benefits of Defendants' programs and activities or face exclusion from or denial of the benefits of Defendants' programs and activities.

78.     This exclusion is by reason of Katherine's, Anthony's, and DLC's constituents' disabilities.

79.     By implementing legislation allowing a guardianship to proceed without counsel for the prospective ward (H.B. 101), a required accommodation under the ADA, Defendants discriminate against Katherine, Anthony, and DLC's constituents.

80.     Further, even when Defendants require counsel for the prospective ward, Defendants violate Title II of the ADA and its implementing regulations by requiring the prospective ward to pay for this representation.  Title II and its implementing regulations forbid Defendants from passing on the costs of representation, which representation constitutes a reasonable accommodation, to individuals with mental illnesses or developmental disabilities.

81.     As a result of Defendants' actions, Katherine, Anthony, and DLC's constituents have been and will be injured, and have suffered or will suffer pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.  Remedies at law cannot adequately compensate Katherine, Anthony, and DLC's constituents for these losses.

82.     As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited resources advocating in opposition to H.B. 101 and Defendants' denial of

counsel to guardianship respondents.  Defendants' actions also require DLC to divert its limited resources to provide legal assistance to those whom Defendants have denied counsel.  Remedies at law cannot adequately compensate DLC for these losses.

**SECOND CLAIM FOR RELIEF**
**(For Injunctive Relief Against All Defendants)**
**(the Rehabilitation Act)**

83.     Plaintiffs incorporate paragraphs 1 to 82 by reference.

84.     Section 504 of the Rehabilitation Act ("Section 504") provides, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794.

85.     Section 504 defines "disability" by reference to the ADA's definition of the term. 29 U.S.C. § 705(20).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

86.     Section 504 includes in its definition of a "program or activity" the operations of any "department, agency, special purpose district, or other instrumentality of a State or of a local government."  29 U.S.C. § 794(b)(1)(A).

87.     Section 504 has been interpreted to demand "certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities."  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017) (citing *Alexander v. Choate*, 469 U.S. 287, 299–300 (1985)).

88.     Courts in this Circuit "apply the standards from the [ADA] in analyzing a Rehabilitation Act claim." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) (citations omitted); *see also Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) ("We . . . look to the ADA for guidance in resolving Rehabilitation Act claims.").

89.     Plaintiff Katherine C. is an individual with a disability under Section 504. Katherine's impairments substantially limit one or more major life activities in that her diagnosed paranoid schizophrenia inhibits her ability to work, sleep, care for herself, and socialize with peers. *See* 28 C.F.R. § 35.108(d)(2)(iii)(K) ("schizophrenia . . . substantially limits brain function").

90.     Plaintiff Anthony M. is an individual with a disability under Section 504. Anthony's impairments substantially limit one or more major life activities in that his developmental disability makes it difficult for him to work, sleep, care for himself, and socialize with peers. *See* 28 C.F.R. § 35.108(d)(2)(iii)(C) ("Intellectual disability substantially limits brain function").

91.     DLC's constituents are individuals with disabilities under Section 504.  They have mental impairments that substantially limit one or more major life activity, such as self-care and interaction with others.  They are regarded as having these mental illnesses or developmental disabilities.  Many also have a record of these mental illnesses or developmental disabilities.

92.     Plaintiffs Katherine C. and Anthony M., along with  DLC's constituents, are qualified individuals under Section 504 in that they meet the essential eligibility requirements for access to the courts.

93.     Plaintiffs Katherine C. and Anthony M., along with  DLC's constituents, cannot fully participate in guardianship proceedings without an attorney representative.  Absent counsel, they cannot understand and participate meaningfully in the adversarial process.  They are less likely to contest the proposed guardianship or, where some form of guardianship is appropriate, to advocate for limits to this guardianship.

94.     On information and belief, the Utah State court system and the State of Utah receive federal funding.

95.     Counsel are a required reasonable accommodation under Section 504 for individuals with mental illnesses or developmental disabilities, who otherwise would be excluded from participation in, denied the benefits of, and subjected to discrimination in attempting to access guardianship proceedings.

96.     Defendants discriminate against Katherine, Anthony, and DLC's constituents in violation of Section 504 by failing to make the reasonable accommodations necessary to ensure an equal opportunity for Katherine, Anthony, and DLC's constituents to participate in Defendants' programs and activities.

97.     This discrimination is by reason of Katherine's, Anthony's, and DLC's constituents' disabilities.

98.     As a result of Defendants' failure to provide counsel, Katherine, Anthony, and DLC's constituents have been excluded from or denied the benefits of Defendants' programs and activities and face exclusion from or denial of the benefits of Defendants' programs and activities.

99.     This exclusion is by reason of Katherine's, Anthony's, and DLC's constituents' disabilities.

100.    By implementing legislation allowing a guardianship to proceed without counsel for the prospective ward (H.B. 101), that counsel constituting a required accommodation under Section 504, Defendants discriminate against Katherine, Anthony, and DLC's constituents.

101.    Further, even where Utah Code Section 75-5-303 does require counsel for the prospective ward, Defendants violate Section 504 and its implementing regulations by requiring the prospective ward to pay for this representation, which is a reasonable accommodation under Section 504.

102.    As a result of Defendants' actions, Katherine, Anthony, and DLC's constituents have been and will be injured, and have suffered pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Remedies at law cannot adequately compensate Katherine, Anthony, and DLC's constituents for these losses.

103.    As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited resources advocating in opposition to H.B. 101 and Defendants' denial of counsel to guardianship respondents.  Defendants' actions also require DLC to divert its limited resources to provide legal assistance to those whom Defendants have denied counsel.  Remedies at law cannot adequately compensate DLC for these losses.

**THIRD CLAIM FOR RELIEF**
**(For Injunctive Relief Against All Defendants)**
**(Procedural Due Process: United States Constitution, Amendment XIV)**

104.    Plaintiffs incorporate paragraphs 1 to 103 by reference.

105.    Defendants are state actors as contemplated by Amendment XIV of the United States Constitution.

106.    As a result of Defendants' actions, Katherine, Anthony, and DLC's constituents face a significant risk of being adjudged incapacitated and placed into legal guardianships without being represented by independent counsel.

107.    Without independent counsel, Katherine, Anthony, and DLC's constituents will be unable to fully and fairly participate in the guardianship hearings that will determine whether or not their legal autonomy is effectively erased.

108.    Defendants' failure to require and pay for counsel deprives prospective wards unable to afford counsel of their due-process right to a full and fair hearing.  "[R]eason and reflection require us to recognize that in our adversary system . . . any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon*, 372 U.S. at 344.

109.    Failure to require and pay for counsel in these circumstances  infringes the right to a full and fair hearing encompassed in the procedural due process guaranteed by the Due Process Clause of Amendment XIV of the United States Constitution.

110.    As a direct and proximate result of Defendants' actions, Katherine, Anthony, and DLC's constituents face a serious threat of damages including physical, mental, and emotional injury, pain, suffering, humiliation, and embarrassment.  Remedies at law cannot adequately compensate Katherine, Anthony, and DLC's constituents for these losses.

111.    As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited resources advocating in opposition to H.B. 101 and providing legal

assistance to those with disabilities whose due-process rights have been violated.  Remedies at law cannot adequately compensate DLC for these losses.

### FOURTH CLAIM FOR RELIEF
### (For Injunctive Relief Against All Defendants)
### (Right to Counsel: United States Constitution, Amendment XIV)

112.    Plaintiffs incorporate paragraphs 1 to 111 by reference.

113.    Defendants are state actors as contemplated by Amendment XIV of the United States Constitution.

114.    The right to appointed counsel enshrined in Amendment VI has been incorporated against the states through Amendment XIV.  *See*, *e.g.*, *Powell v. Alabama*, 287 U.S. 45 (1932); *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Argersinger v. Hamlin*, 407 U.S. 25 (1972).

115.    The physical liberty interests at stake—such as the ability to travel freely between states and to make medical decisions—and the dictates of due process require the state to provide counsel.  For prospective wards who cannot afford it, the state must additionally pay for this counsel.

116.    As a direct and proximate result of Defendants' actions, Katherine, Anthony, and DLC's constituents  face a serious threat of being denied a right to independent counsel in a critical judicial proceeding against them.   In these guardianship proceedings, Katherine, Anthony, and DLC's constituents face the loss of an extensive range of physical liberty interests, including but not limited to the ability to make medical decisions, travel between states, and freely associate with others.

117.     The United States Constitution protects the right to counsel before the state may convict someone of a crime, subject him or her to juvenile detention, or otherwise deprive him or her of physical liberty.  *Gideon*, 372 U.S. at 345; *In re Gault*, 387 U.S. 1, 41 (1967).  While most people convicted of a crime or subject to juvenile detention will eventually regain their freedom and autonomy, Katherine, Anthony, and DLC's constituents will surrender their basic liberty interests until their death—which may come to pass without any ability to control medical treatment.

118.     Failure to require and pay for counsel at a critical stage of a judicial proceeding with such physical liberty interests at stake violates Amendment XIV of the United States Constitution.

119.     As a direct and proximate result of Defendants' actions, Katherine, Anthony, and DLC's constituents face a serious threat of damages including physical, mental, and emotional injury, pain, suffering, humiliation, and embarrassment. Remedies at law cannot adequately compensate Katherine, Anthony, and DLC's constituents for these losses.

120.     As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited financial resources advocating in opposition to H.B. 101 and providing legal assistance to people with disabilities affected by this bill.  Remedies at law cannot adequately compensate DLC for these losses.

**FIFTH CLAIM FOR RELIEF**
**(For Declaratory Judgement Against All Defendants)**
**(Americans with Disabilities Act and the United States Constitution)**

121.     Plaintiffs incorporate paragraphs 1 to 120 by reference.

122.   Plaintiffs are entitled to a declaratory judgement that Title II of the ADA obligates Defendants to require counsel for all guardianship respondents in the State of Utah.

123.   Plaintiffs are entitled to a declaratory judgement that Title II of the ADA requires Defendants to pay for counsel for all guardianship respondents in the State of Utah.

124.    Plaintiffs are further entitled to a declaratory judgement that the Fourteenth Amendment to the United States Constitution obligates Defendants to require and pay for counsel for all guardianship respondents in the State of Utah.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

A.   An injunction prohibiting Defendants from implementing H.B. 101 to remove the requirement of counsel for respondents in guardianship proceedings in the State of Utah.

B.   An injunction requiring Defendants to appoint and pay for counsel for all guardianship respondents in the State of Utah.

C.   A judicial declaration that Title II of the ADA and Section 504 of the Rehabilitation Act require respondents in guardianship proceedings to have counsel.

D.   A judicial declaration that Title II of the ADA and Section 504 of the Rehabilitation Act require Defendants to appoint  and pay for counsel for all guardianship respondents in the State of Utah.

E.      A judicial declaration that the Fourteenth Amendment to the United States Constitution requires Defendants to appoint and pay for counsel for all guardianship respondents in the State of Utah.

F.      Any other relief as the Court deems just and equitable, including but not limited to fees under the ADA and Rehabilitation Act and any other applicable statute or regulation.

Dated this 6th day of July, 2017                    Respectfully submitted,


                                                    /s/  John Mejia

                                                    Alfred C. Pfeiffer, Jr. (*pro hac vice* pending)
                                                    Kyle A. Virgien (*pro hac vice* pending)
                                                    Dorottya Schranz (*pro hac vice* pending)
                                                    John H. Steinbach (*pro hac vice* pending*)
                                                    LATHAM & WATKINS LLP
                                                    505 Montgomery Street, Suite 2000
                                                    San Francisco, California  94111-6538
                                                    Telephone: 415-391-0600
                                                    Facsimile: 415-395-8095
                                                    al.pfeiffer@lw.com
                                                    kyle.virgien@lw.com
                                                    dorey.schranz@lw.com
                                                    john.steinbach@lw.com

                                                    Claudia Center (*pro hac vice* pending)
                                                    AMERICAN CIVIL LIBERTIES UNION
                                                    FOUNDATION
                                                    39 Drumm Street
                                                    San Francisco, CA 94111
                                                    Telephone: 415.343.0762
                                                    Facsimile: 415.395.0950
                                                    ccenter@aclu.org

                                                    John Mejia (Bar No. 13965)
                                                    Leah Farrell (Bar No. 13696)
                                                    AMERICAN CIVIL LIBERTIES UNION OF
                                                    UTAH FOUNDATION, INC.

355 N. 300 W.
Salt Lake City, Utah 84103
Telephone: 801.521.9862
Facsimile: 801.532.2850
aclu@acluutah.org

Attorneys for Plaintiffs Disability Law Center,
Katherine C., and Anthony M.