Alfred C. Pfeiffer, Jr. (*pro hac vice* pending)
Kyle A. Virgien (*pro hac vice* pending)
Dorottya Schranz (*pro hac vice* pending)
John H. Steinbach (*pro hac vice* pending)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice* pending)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.343.0762
Facsimile: 415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone: 801.521.9862
Facsimile: 801.532.2850
aclu@acluutah.org

*Attorneys for Plaintiffs Disability Law Center,*
*Katherine C., and Anthony M.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center, Katherine C., and Anthony M. <br><br> Plaintiffs, <br><br> v. <br><br> The State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts <br><br> Defendants. | Case No. 2:17-cv-00748-JNP <br><br> **PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION ..................................1

INTRODUCTION ..........................................................................................................1

STATEMENT OF FACTS ............................................................................................4

ARGUMENT ................................................................................................................8

I.     The Plaintiffs Will Suffer Irreparable Harm in the Absence of An Injunction Because They Stand to Lose Their Most Basic Freedoms Without Meaningful Access to the Judicial Process..............................................................................9

II.    The Balance of Equities Weighs in the Plaintiffs' Favor. .................................11

III.   The Plaintiffs Have a Substantial Likelihood of Success on the Merits of Their ADA and Constitutional Claims. ......................................................................12

     A.    Denying Individuals with Disabilities the Full Ability to Defend Themselves Against Guardianship Proceedings Violates Title II of the Americans With Disabilities Act. ..........................................................12

          1.    Any Respondent in a Guardianship Proceeding Necessarily Meets the ADA's Requirements That He or She Be "Qualified" and "Disabled."....................................................................................13

          2.    Absent an Injunction, Guardianship Respondents' Lack of Counsel Will Deprive Them of the Ability to Meaningfully Defend Against a Guardianship, Subjecting Them to Both (1) Exclusion From or Denial of Benefits of Public Activities and (2) Discrimination.................14

          3.    The Discrimination or Denial of Benefits Is on the Basis of Guardianship Respondents' Disabilities Because It Removes Their Ability to Meaningfully Present a Defense..............................17

     B.    The Same Showing That Establishes an ADA Violation Also Establishes A Violation of Section 504 of the Rehabilitation Act............................17

     C.    Utah's Guardianship Proceedings Deprive Respondents of Fundamental Rights In Violation of the Fourteenth Amendment. ..............................19

i

**1.**  Utah's Guardianship Law Undermines the Fourteenth
Amendment's Procedural Due Process Guarantee of a Full and
Fair Hearing by Preventing Guardianship Respondents from
Presenting a Defense. ...................................................................19

**2.**  Utah's Guardianship Law Deprives Respondents of Physical
Liberty Without Counsel, a Violation of Substantive Due Process
Under the Fourteenth Amendment. .............................................22

**IV.**  The Public Interest Requires a Preliminary Injunction Protecting Guardianship
Respondents from Devastating, Permanent Deprivations of Liberty while this
Case Proceeds to a Final Determination. ..........................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Addington v. Texas*,
   441 U.S. 418 (1979)................................................................20

*Alexander v. Choate*,
   469 U.S. 287 (1985)................................................................18

*Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*,
   640 F.2d 255 (10th Cir. 1981) ...............................................9

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ............................................26

*Boddie v. Connecticut*,
   401 U.S. 371 (1971) ..............................................................19

*Bowdry v. United Air Lines, Inc.*,
   956 F.2d 999 (10th Cir. 1992) ..............................................10

*Chaffin v. Kansas State Fair Bd.*,
   348 F.3d 850 (10th Cir. 2003) ..............................................14

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982)..............................................................10

*Colyar v. Third Judicial Dist. Ct. for Salt Lake Cty.*,
   469 F. Supp. 424 (D. Utah 1979).........................................25

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*,
   630 F.3d 1153 (9th Cir. 2011) ..............................................27

*Franco-Gonzales v. Holder*,
   767 F. Supp. 2d 1034 (C.D. Cal. 2010) ............................3, 16

*Fry v. Napoleon Cmty. Sch.*,
   137 S. Ct. 743 (2017).........................................................9, 18

*In re Gault*,
   387 U.S. 1 (1967)......................................................2, 23, 24

iii

*Gideon v. Wainwright,*
  372 U.S. 335 (1963)................................................................2, 23, 26

*Goldberg v. Kelly,*
  397 U.S. 254 (1970)...........................................................................21

*Grant v. Johnson,*
  757 F. Supp. 1127 (D. Or. 1991) ....................................................25

*Hamdi v. Rumsfeld,*
  542 U.S. 507 (2004)...........................................................................20

*Heryford v. Parker,*
  396 F.2d 393 (10th Cir. 1968) ..................................................2, 23, 26

*Hollonbeck v. U.S. Olympic Comm.,*
  513 F.3d 1191 (10th Cir. 2008) ......................................................18

*Matter of Howes,*
  471 A.2d 689 (Me. 1984)...................................................................24

*J.V. v. Albuquerque Pub. Sch.,*
  813 F.3d 1289 (10th Cir. 2016) ......................................................14

*Jarvis v. Potter,*
  500 F.3d 1113 (10th Cir. 2007) ......................................................18

*Kikumura v. Hurley,*
  242 F.3d 950 (10th Cir. 2001) ...........................................................9

*Lassiter v. Dep't of Social Servs. Of Durham Cnty.,*
  452 U.S. 18 (1981).............................................................................23

*Leonardson v. City of E. Lansing,*
  896 F.2d 190 (6th Cir. 1990) ...........................................................10

*Little v. Streater,* 452 U.S. 1 (1981)...........................................22, 23

*Massey v. Moore,*
  348 U.S. 105 (1954)........................................................................3, 27

*Mathews v. Eldridge,*
  424 U.S. 319 (1976)......................................................................19, 20

*McClendon v. City of Albuquerque,*
  272 F. Supp. 2d 1250 (D.N.M. 2003) ..............................................10

iv

*Estate of Milstein v. Ayers*,
   955 P.2d 78 (Colo. App. 1998) ....................................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..................................................................................19

*Olmstead v. L.C. ex rel. Zimring*,
   527 U.S. 581 (1999) ..................................................................................17

*Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*,
   276 F.3d 808 (6th Cir. 2002) (en banc) ...............................................14, 16, 17

*Powell v. Alabama*,
   287 U.S. 45 (1932) ....................................................................................21

*Prairie Band of Potawatomi Indians v. Pierce*,
   253 F.3d 1234 (10th Cir. 2001) ..................................................................10

*Randolph v. Rodgers*,
   170 F.3d 850 (8th Cir. 1999) ......................................................................14

*Robertson v. Las Animas Cty. Sheriff's Dep't*,
   500 F.3d 1185 (10th Cir. 2007) .............................................................12, 14, 15

*Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*,
   565 F.3d 1232 (10th Cir. 2009) ..................................................................19

*State ex rel. Shamblin v. Collier*,
   445 S.E.2d 736 (W. Va. 1994) .................................................................1, 24

*Shotz v. Cates*,
   256 F.3d 1077 (11th Cir. 2001) ..................................................................12

*Star Fuel Marts, LLC v. Sam's East, Inc.*,
   362 F.3d 639 (10th Cir. 2004) .....................................................................9

*Tennessee v. Lane*,
   541 U.S. 509 (2004) ................................................................................3, 15

*United States v. James Daniel Good Real Prop.*,
   510 U.S. 43 (1993) ....................................................................................20

*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016) ..................................................................26

*Vitek v. Jones*,
    445 U.S. 480 (1980) ...................................................................................23, 25

*Walker v. McLain*,
    768 F.2d 1181 (10th Cir. 1985) ...........................................................2, 24, 26

*Wilkerson v. Shinseki*,
    606 F.3d 1256 (10th Cir. 2010) .......................................................................18

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ..............................................................................................9

*Young v. City of Claremore*,
    411 F. Supp. 2d 1295 (N.D. Okla. 2005) ........................................................16

# STATUTES

29 U.S.C. § 794(a) .................................................................................................17

29 U.S.C. § 794(b)(1)(A) .......................................................................................18

29 U.S.C. § 794a(a)(2) .............................................................................................9

42 U.S.C. § 12102(1) .............................................................................................13

42 U.S.C. § 12131(1) .............................................................................................12

42 U.S.C. § 12131(2) .............................................................................................13

42 U.S.C. § 12132 ............................................................................................12, 17

42 U.S.C. § 12133 ...................................................................................................9

Utah Code § 75-1-201(22) .....................................................................................13

Utah Code § 75-5 ...................................................................................................17

Utah Code § 75-5-301 .......................................................................................2, 20

Utah Code § 75-5-303(d) ..................................................................................3, 6, 7

Utah Code § 75-5-304 .............................................................................................1

Utah Code § 75-5-306 .......................................................................................5, 25

Utah Code § 75-5-312 ....................................................................................2, 11, 20

vi

Utah Code § 75-5-312(3) ...........................................................................4

Utah Code § 75-5-312(3)(c) .................................................................4, 25

Utah Code § 75-5-312(a) .......................................................................24

## TREATISES

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
    and Procedure § 2948.1 (2d ed. 1995) ............................................9

## REGULATIONS

28 C.F.R. § 35.108(d)(2)(iii)(C), (E), (G), (K) ...................................13

28 C.F.R. § 35.130(b)(3)(i) ...................................................................15

28 C.F.R. § 35.130(b)(7)(i) ...................................................................15

## OTHER AUTHORITIES

*General Session: Executive Offices and Criminal Justice*, Utah Legislature
    Website (2017), *available at*
    https://le.utah.gov/lfa/cobi/currentCobi/cobi.html? cobiID=94................18

*Guardianship Signature Program*, Utah Courts Website (June 2, 2016), *available*
    *at* www.utcourts.gov/howto/family/gc/signature/ ...................................5

Law and Aging, *Representation and Investigation in Guardianship Proceedings*,
    *available at*
    https://www.americanbar.org/content/dam/aba/administrative/law_aging/chart
    representationandinvestigation.authcheckdam.pdf ................................26

*Protected Persons*, Utah Office of the Public Guardian Website, available at
    opg.utah.gov/guardianship/rights-of-protectedpersons/ ........................25

## RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION

The Disability Law Center (on behalf of itself and its constituents), Katherine C., and Anthony M. (collectively the "Plaintiffs") hereby move the Court for a preliminary injunction barring defendants the State of Utah, the Utah Administrative Office of the Courts, and the Utah Judicial Council (collectively the "Defendants") from implementing and enforcing House Bill 101 pending the resolution of this case. House Bill 101 strips the guarantee of representation by counsel from those facing guardianship proceedings. In doing so, it violates guardianship respondents' rights under the Americans with Disabilities Act, the Rehabilitation Act, and the U.S. Constitution.

Injunctive relief is appropriate to protect the Plaintiffs and the public. Those who are subject to guardianship proceedings face the type of imminent, irreparable deprivation of rights that requires the protection of a preliminary injunction. As explained below, (1) the Plaintiffs are likely to suffer immediate and irreparable harm in the absence of preliminary relief, (2) the balance of equities favors an injunction, (3) the Plaintiffs are likely to succeed on the merits, and (4) an injunction is in the public interest. Accordingly, the Plaintiffs respectfully request that the Court grant this motion.

## INTRODUCTION

Upon showing that a respondent is incapacitated and that a guardianship appointment is necessary or desirable as a means of providing care and supervision, a petitioning person may obtain guardianship over this respondent, now termed a "ward." Utah Code § 75-5-304. Guardianship is a drastic measure "result[ing] in a massive curtailment of liberty." *State ex rel. Shamblin v. Collier*, 445 S.E.2d 736, 739 (W. Va. 1994) (internal quotation omitted). Unless a

court specifically limits a guardianship, the ward loses basic aspects of human autonomy including the ability to determine where to live, whether to marry and become a parent, whom to associate with, whether or where to work, and whether or not to receive medical treatment. Utah Code § 75-5-312; Zahradnikova Decl., ¶ 15; *see also* Zahradnikova Decl., Ex. 7. A guardianship can last for the ward's entire life, and a guardian who is the parent or spouse of the ward may transfer the guardianship to a different guardian without a new hearing in court. Utah Code § 75-5-301.

The American legal system has long relied on the right to counsel as the primary safeguard against the erroneous deprivation of basic liberties. In *Gideon v. Wainwright*, the Supreme Court recognized that the right to counsel in criminal proceedings is so fundamental to our concept of liberty that it is incorporated in the Fourteenth Amendment's guarantee of due process. 372 U.S. 335, 345 (1963). Soon after, the Supreme Court extended the right to counsel to juvenile proceedings. *In re Gault*, 387 U.S. 1, 36-37 (1967). In doing so, it discarded the fiction that the state was acting in the juvenile's interest by providing him custody, instead recognizing any deprivation of liberty as necessarily adversarial. *Id.* at 16. The right to counsel extends beyond criminal proceedings to civil proceedings where a party's physical liberty interest is at stake. *Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir. 1968) (extending the right to counsel to civil-commitment proceedings); *Walker v. McLain*, 768 F.2d 1181, 1184 (10th Cir. 1985) (recognizing a right to counsel for those facing imprisonment for civil contempt).

The right to counsel is especially crucial when the person whose liberty is at stake has an intellectual, developmental, or psychiatric disability. Even before *Gideon*, the Supreme Court recognized that "[n]o trial can be fair that leaves the defense to a man who is insane, unaided by

counsel, and who by reason of his mental conditions stands helpless and alone before the court." *Massey v. Moore*, 348 U.S. 105, 108 (1954). And when Congress passed the Americans with Disabilities Act (the "ADA"), it explicitly recognized full access to the courts as one of the act's key protections. *Tennessee v. Lane*, 541 U.S. 509, 527-29 (2004). When a party's disability affects his or her ability to meaningfully defend against a serious judicial incursion on his or her interests absent counsel, the ADA—and the related Rehabilitation Act—require counsel as an accommodation for that disability. *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034, 1053-55 (C.D. Cal. 2010).

Until January 1 of this year, Utah guaranteed all guardianship respondents representation by independent counsel. This guarantee was flawed because the state required respondents to pay for their own counsel (or to secure *pro bono* or reduced fee counsel), a flaw that the Plaintiffs challenge in this suit. But this motion for a preliminary injunction targets a narrower, more immediate deprivation that results from a recent change in the law. Utah's House Bill 101 went into effect on January 1, 2017, gutting the existing statutory guarantee of counsel. This bill amended the law so that a guardianship respondent is no longer guaranteed counsel when (i) he or she is the biological or adopted child of the person seeking guardianship; (ii) the value of his or her entire estate does not exceed $20,000; (iii) he or she appears in court with his or her parent; (iv) he or she is given the opportunity to communicate, to the extent possible, his or her acceptance of the appointment of petitioner; and (v) the court is satisfied that counsel is not necessary in order to protect his interests. Disabled Adult Guardianship Amendments, H.B. 101, 2016 Gen. Sess. (Utah 2016) ("H.B. 101"); Utah Code § 75-5-303(d).

House Bill 101 violates the Americans with Disabilities Act, the Rehabilitation Act, and the Fourteenth Amendment to the U.S. Constitution. It materially curtails guardianship respondents' ability to defend their interests in proceedings that may irrevocably deprive them of their most fundamental liberties, and it does so without providing the state any significant countervailing benefit. The Plaintiffs therefore respectfully request that this Court protect guardianship respondents with a preliminary injunction preventing the Defendants from implementing H.B. 101 while this case proceeds to a final resolution on the merits.

## STATEMENT OF FACTS

A guardianship involves a serious incursion on a potential ward's liberty. A guardian gains control over a ward's place of abode, ability to travel, and ability to associate with others. Utah Code § 75-5-312(3); Zahradnikova Decl.,[1] ¶ 15. A guardian can also control decisions over a ward's medical treatment, including whether to terminate life-sustaining care and whether to institutionalize the ward. Utah Code § 75-5-312(3)(c); Zahradnikova Decl., ¶ 15; *see also* Zahradnikova Decl., Ex. 7 (limited guardianship providing guardians with the power to "exercise dominion over [the ward], to conduct medical and psychological evaluations, as necessary and as appropriate, to detain [the ward] and transfer her to a more appropriate living situation, if necessary"); *see also* Zahradnikova Decl., Ex. 8. Additionally, a guardianship may give a guardian authority over a ward's ability to marry or raise his or her own children. Zahradnikova Decl., ¶ 15; *see also* Zahradnikova Decl., Ex. 7 (limited guardianship specifying that the ward will seek her guardians' "advice regarding her pending marriage and, in any event, shall not

---

[1] "Zahradnikova Decl." refers to the Declaration of Adina Zahradnikova in Support of Plaintiffs' Motion for Preliminary Injunction.

discuss the date of her nuptials until after January 1, 2015").  In contrast to incarceration or juvenile detention, which is generally temporary, these constraints on the fundamental freedom of wards are permanent unless specifically terminated—a rare occurrence.  Utah Code § 75-5-306; *see also* Zahradnikova Decl., Ex. 7 (limited guardianship order described as "permanent").

The Utah Board of District Court Judges and Utah Bar Commission endorse The Guardianship Signature Program, which provides counsel to some respondents in guardianship proceedings.  *See Guardianship Signature Program*, Utah Courts Website (June 2, 2016), available at www.utcourts.gov/howto/family/gc/signature/.  The Signature Program provides judges with a list of lawyers who have volunteered to represent respondents in guardianship proceedings, either on a pro bono basis or for a sliding scale of up to $75 per hour for respondents whose income is up to 300% of the federal poverty guidelines.  *Id.*  Law students and recent graduates assist Signature Program attorneys through a program run by S. J. Quinney College of Law at the University of Utah.  *Id.*

Until this year, Utah law guaranteed all guardianship respondents counsel, although it required some to pay for this counsel.  But on January 1, 2017, Utah's House Bill 101 went into effect, stripping potential wards in guardianship proceedings of guaranteed counsel when they meet five requirements:

(i) the ward is the biological or adopted child of the person seeking guardianship;

(ii) the value of the ward's entire estate does not exceed $20,000;

(iii) the ward appears in court with his or her parent;

(iv) the ward is given the opportunity to communicate, to the extent possible, acceptance of the appointment of petitioner; and

(v) the court is satisfied that counsel is not necessary in order to protect the ward's interests.

Disabled Adult Guardianship Amendments, H.B. 101, 2016 Gen. Sess. (Utah 2016) ("H.B. 101"); Utah Code § 75-5-303(d).

Plaintiff Katherine C. works as a law clerk at a nonprofit. Katherine C. Decl.,[2] ¶ 1. She has paranoid schizophrenia, with which she was diagnosed in 2015. *Id.* at ¶ 8. Her schizophrenia at times significantly impairs her ability to work, sleep, care for herself, and socialize with others. *Id.* at ¶ 15. She has twice been committed for psychiatric care. *Id.* at ¶¶ 8-9, 11-13. Due in large part to her paranoid schizophrenia, she currently lives with her parents. *Id.* at ¶¶ 15-16.

Katherine's parents have expressed concern about her ability to function autonomously. *Id.* at ¶ 16. As a result, Katherine is concerned that her parents will file to create a permanent guardianship over her. *Id.* at ¶ 17. Katherine possesses less than $20,000 in total assets, *id.* at ¶ 18, and would have no right to counsel under Utah's guardianship statute as modified by H.B. 101. Were she to be placed into guardianship proceedings without a guarantee of counsel, Katherine believes that her paranoid schizophrenia symptoms would deprive her of the ability to communicate effectively with the court in order to request counsel or to represent herself. *Id.* at ¶¶ 19-20.

---

[2] "Katherine C. Decl." refers to the Declaration of Katherine C. in Support of Plaintiffs' Motion for Preliminary Injunction.

Plaintiff Anthony M. is 34 years old. Anthony M. Decl.,[3] ¶ 1. He has microcephaly, a significant developmental disability that affects his ability to provide for his own care. *Id.* at ¶¶ 5-7. Anthony also has general anxiety disorder, an intellectual disability that impairs his ability to work and communicate with others. *Id.* As a result, Anthony receives continuing care from his wife and mother and depends on them for financial support. *Id.* at ¶ 8. Anthony's mother has indicated that a legal guardianship may be necessary in order to facilitate his longer-term care. *Id.* at ¶ 10. Like Katherine, he has less than $20,000 in total assets, *id* at ¶ 11, and would have no guarantee of counsel under Utah's guardianship statute as modified by H.B. 101. He would have difficulty communicating effectively with the court to request counsel or represent himself. *Id.* at ¶¶ 7, 12.

The Disability Law Center (the "DLC") is a protection and advocacy organization dedicated to protecting Utahns with disabilities. Zahradnikova Decl., ¶¶ 3-5. It brings this case on behalf of its disabled members who may be subject to guardianship proceedings without an adequate right to counsel, and it also brings this case on its own behalf because it suffers a diversion of resources away from its important advocacy work because Utahns with disabilities lack a sufficient right to counsel in guardianship proceedings. *Id.* at ¶ 28. This motion refers to Katherine C., Anthony M., and all disabled Utahns who may be subject to guardianship proceedings without counsel as "guardianship respondents."

In March of 2016, the DLC (together with the Spectrum Institute) wrote letters to Utah Governor Herbert urging him to veto the legislation and raising concerns that the legislation

---

[3] "Anthony M. Decl." refers to the Declaration of Anthony M. in Support of Plaintiffs' Motion for Preliminary Injunction.

would violate the Americans with Disabilities, the Rehabilitation Act, and the United States Constitution. Zahradnikova Decl., Exs. 1, 3. In addition, the DLC organized a petition, signed by 212 people, urging Governor Herbert not to sign H.B. 101 into law, and noting that free and low-cost representation options are already available, making the legislation unnecessary. Zahradnikova Decl., Ex. 2. The Spectrum Institute wrote a letter dated April 7, 2016, to the Utah Judicial Council, raising concerns that H.B. 101 violates the Americans with Disabilities Act, the Rehabilitation Act, and the United States Constitution. Zahradnikova Decl., Ex. 4. The Spectrum Institute wrote the Utah Judicial Council another letter dated April 8, 2016, noting that attorneys appointed to represent guardianship respondents are a reasonable accommodation under the Americans with Disabilities Act and the Rehabilitation Act. Zahradnikova Decl., Ex. 5.

The DLC estimates that parents bring approximately 300 guardianship proceedings against their adult children each year in the State of Utah. *Id.* at ¶ 11. Since the passage of H.B. 101, at least one of DLC's constituents has had a guardianship imposed without representation by counsel. *Id.* at ¶¶ 13-14. Many more are at risk of losing their rights to a guardianship without the benefit of counsel. *Id.* at ¶¶ 17, 28. The DLC believes that there is a higher likelihood of error in cases where the respondent is not represented by independent counsel, and that wards not represented by counsel are at a greater risk of receiving a full guardianship when a partial one would suffice. *Id.* at ¶ 16.

## ARGUMENT

The Plaintiffs seek a preliminary injunction barring the Defendants from implementing H.B. 101 pending the resolution of this case. The Court should order this preliminary injunction

because (1) the Plaintiffs are likely to suffer immediate and irreparable harm in the absence of preliminary relief, (2) the balance of equities tips in favor of an injunction, (3) the Plaintiffs are likely to succeed on the merits, and (4) an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 19-20 (2008).

## I.    THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION BECAUSE THEY STAND TO LOSE THEIR MOST BASIC FREEDOMS WITHOUT MEANINGFUL ACCESS TO THE JUDICIAL PROCESS.

The Plaintiffs will suffer irreparable harm should the Court deny them their right to be represented by counsel in guardianship proceedings brought against them.

The Plaintiffs' claims require no showing of irreparable harm under Tenth Circuit law. Because the Plaintiffs' ADA claims entitle them to statutory injunctive relief, they need not show irreparable harm.  In cases where "the evidence shows that the Defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the Plaintiffs need not be shown." *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004) (citing *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001); *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981)).  The Americans with Disabilities Act and the Rehabilitation Act both provide for injunctive relief.  *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); *see also Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 750 (2017).  The Tenth Circuit similarly subscribes to the majority view that "'[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'"  *Kikumura*, 242 F.3d at 963 (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995)).  Because the Plaintiffs allege infringement of their constitutional rights to

access the courts, they need make no additional showing of irreparable harm on their constitutional claims. *See McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1259 (D.N.M. 2003) (holding that plaintiffs "need not make any further showing of irreparable injury" beyond alleging "a violation of [their] constitutional right to access to courts").

Although the Plaintiffs need not make any further showing of irreparable harm, there is abundant evidence of harm in any event.[4]  Under the current guardianship framework as amended by H.B. 101, certain citizens of Utah face the prospect of losing a full panoply of fundamental liberty interests without being heard through an independent advocate.  These wards, forced to navigate the guardianship process without counsel, may lose these liberty interests erroneously or may lose more interests than appropriate.  Such a fate certainly qualifies as a harm.  Guardianships are drastic and, once established, generally permanent.  The harm respondents face without counsel is thus clearly irreparable.  *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) ("[I]rreparable harm is often suffered when the injury cannot be adequately atoned for in money or when the district court cannot remedy the injury following a final determination on the merits." (internal quotation omitted)).

---

[4] H.B. 101 contains an optional sunset provision causing it to lapse on July 1, 2018, unless the legislature extends it.  This sunset provision has no limiting effect on the Plaintiffs' claims.  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.");  *see also Leonardson v. City of E. Lansing*, 896 F.2d 190, 194 (6th Cir. 1990) (holding that a law that had lapsed pursuant to a sunset provision was still ripe for review as the law "lies dormant, ready to be brought back to life if the need for it reoccurs").  Even if a sunset provision could moot Plaintiffs' claims, it could only do so after becoming operative.  *See Bowdry v. United Air Lines, Inc.*, 956 F.2d 999, 1004 n.4 (10th Cir. 1992) (noting that a sunset provision in an employment agreement "will eventually make the question moot" for employees who are terminated after the sunset provision goes into effect).

Only a preliminary injunction can protect Utahns who would otherwise be thrust into guardianship proceedings without counsel while this case awaits resolution.

## II.     THE BALANCE OF EQUITIES WEIGHS IN THE PLAINTIFFS' FAVOR.

The Defendants stand to lose little by maintaining the basic protection they offered all guardianship respondents prior to the passage of H.B. 101.    An injunction against implementation of the act would merely place Utah, the Administrative Office of the Courts, and the Judicial Council back in the position they were in on December 31, 2016.  Programs already in place will provide pro-bono and sliding-scale representation to guardianship respondents at no cost to the state, and the Defendants cannot point to any other cost they will incur if the Court grants a preliminary injunction.   Further, any harm Utah may claim to suffer would be temporary, ceasing when this case reaches final resolution and the preliminary injunction ends.

In stark contrast to the temporary and at most minor impact on the Defendants as a result of this injunction, the Plaintiffs will suffer great and permanent harms in the absence of a preliminary injunction.  A guardianship amounts to the legal erasure of the ward; practically every consequential life decision regarding bodily integrity, freedom of movement, and disposition of property is taken out of the ward's hands.  *See generally* Utah Code § 75-5-312 (describing general powers of guardians, including the ability to determine the ward's place of abode, the power to make medical decisions affecting the ward, and custodial care of the ward's possessions).    Absent an injunction, guardianship respondents will not only lose their constitutional and statutory right to counsel; they also will suffer the related higher likelihood of having a guardianship (or non-limited guardianship) erroneously imposed on them.  Both of these harms would be permanent.

## III.    THE PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR ADA AND CONSTITUTIONAL CLAIMS.

### A.    Denying Individuals with Disabilities the Full Ability to Defend Themselves Against Guardianship Proceedings Violates Title II of the Americans With Disabilities Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). To state a claim, a plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was either "excluded from participation in or denied the benefits of some entity's services, programs, or activities," or was otherwise discriminated against by the public entity, and (3) "that such exclusion, denial of benefits, or discrimination was by reason" of his disability. *Robertson*, 500 F.3d at 1193 (citing 42 U.S.C. § 12132). Because guardianship respondents cannot meaningfully defend themselves without counsel, the ADA requires counsel in these crucial proceedings.

As a threshold matter, it is well-established that state court systems, including Utah's, are public entities subject to the ADA. *See* 42 U.S.C. § 12131(1) ("The term 'public entity' means (A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]"); *see also Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) ("A trial undoubtedly is a service, program, or activity within the meaning of § 12132." (citations omitted)).

1. <u>Any Respondent in a Guardianship Proceeding Necessarily Meets the ADA's Requirements That He or She Be "Qualified" and "Disabled."</u>

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). It further requires a plaintiff to be "qualified," defined as an "individual with a disability who, with or without reasonable modifications to rules, policies, the removal of . . . communication . . . barriers, or the provision of auxiliary aids or services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Any person who meets the requirements for a guardianship is necessarily "disabled" and "qualified" under the ADA. A guardianship may only be imposed upon a judicial determination amounting to a finding of "disability" under the ADA: "that an adult's ability to [receive and evaluate information, make or communicate decisions, or provide for necessities] is impaired to the extent that the individual lacks the ability . . . to meet the essential requirements for financial protection or physical health, safety, or self-care." Utah Code § 75-1-201(22); *see also* 28 C.F.R. § 35.108(d)(2)(iii)(C), (E), (G), (K) ("[I]t should be easily concluded that the types of impairments set forth in paragraphs (d)(2)(iii)(A) through (K) of this section will, at a minimum, substantially limit the major life activities indicated.").[5] All guardianship respondents are

_____

[5] Paragraphs (d)(2)(iii)(A) through (K) include the following "[p]redictable assessments": "(C) Intellectual disability substantially limits brain function; . . . (E) Autism substantially limits brain function; . . . (G) Cerebral palsy substantially limits brain function; . . . (K) Major depressive disorder, bipolar disorder, post-traumatic stress disorder, traumatic brain injury, obsessive compulsive disorder, and schizophrenia each substantially limits brain function."

entitled to participate in their own defense, rendering them "qualified" to participate in the state court programs. *See Popovich v. Cuyahoga Cty. Ct. Com. Pl., Dom. Rel. Div.*, 276 F.3d 808, 815 (6th Cir. 2002) (en banc) (noting that disabled father had the right to "participate meaningfully" in court proceedings which would impact his rights).

> **2.** Absent an Injunction, Guardianship Respondents' Lack of Counsel Will Deprive Them of the Ability to Meaningfully Defend Against a Guardianship, Subjecting Them to Both (1) Exclusion From or Denial of Benefits of Public Activities and (2) Discrimination.

"[C]ourts have recognized two types of [ADA] claims:  (1) exclusion from or denial of benefits and (2) discrimination." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (internal citations omitted).  H.B. 101 imposes both of these harms on guardianship respondents.

First, the denial of counsel excludes the guardianship respondents from benefits.  "The ADA requires more than physical access to public entities:  it requires public entities to provide 'meaningful access' to their programs and services."  *See Robertson*, 500 F.3d at 1195 (citing *Chaffin v. Kansas State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003)); *see also Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (holding that although a deaf inmate could physically attend prison activities, he did not have "meaningful access" without a sign language interpreter). Public entities are required to make such reasonable modifications where a disabled individual requests an accommodation or where the "need is obvious."[6]  *See Robertson,* 500 F.3d at 1196.

---

[6] The Defendants are on notice that H.B. 101 strips guardianship respondents of the reasonable accommodation of counsel for two reasons.  First, the need for accommodation is "obvious" because guardianship respondents are necessarily alleged to be incapacitated.  *See Robertson,* 500 F.3d at 1196.  Second, Plaintiff DLC and other organizations sent letters to Governor Herbert and the Utah Judicial Council, noting that a guardianship proceeding in which the respondent is not represented by counsel could constitute a violation of Title II of the ADA and

Second, denying guardianship respondents counsel discriminates against them. A public entity's failure to make a reasonable modification to policies or practices can constitute discrimination. *See* 28 C.F.R. § 35.130(b)(7)(i); *see also Robertson*, 500 F.3d at 1195 ("To effectuate Title II's mandate, the regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'"). Similarly, "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration … [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability[.]" 28 C.F.R. § 35.130(b)(3)(i).

Congress viewed access to courts as one of the ADA's key protections. *Tennessee v. Lane*, 541 U.S. at 526-29 ("In the deliberations that led up to the enactment of the ADA . . . Congress learned that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their disabilities."). Without counsel, guardianship respondents face the exact type of exclusion from participation in court proceedings that Congress sought to provide. The claims in this case thus fall squarely within the scope of the rights the ADA protects.

Courts have recognized the need for counsel in analogous settings. In *Franco-Gonzales*, a district court granted a preliminary injunction, finding the provision of counsel to mentally ill immigrants facing removal proceedings a reasonable modification necessary to prevent

---

Section 504 of the Rehabilitation Act and describing the assistance of counsel as a reasonable modification necessary to provide meaningful access to the courts. *See* Zahradnikova Decl., Exs. 1, 3-5. A representative for the Utah Judicial Council and the Utah Administrative Office of the Courts has responded to at least one of these letters. Zahradnikova Decl., Ex. 6.

discrimination based on disability.[7] 767 F. Supp. 2d at 1053-55. Even though there is no general guarantee of counsel in removal proceedings, the court found that, given "the importance of the issues at stake" and these immigrants' mental illnesses, "it is difficult to conceive of any paradigm in which [they] could proceed *pro se*."[8] *Id.* at 1055. The *Franco-Gonzales* court's analysis applies equally to guardianship proceedings: like removal proceedings, they involve permanent infringements on respondents' liberty, and like the *Franco-Gonzales* plaintiffs, guardianship respondents require counsel's assistance to meaningfully defend themselves.

The Sixth Circuit has similarly upheld accommodations to protect a disabled person's right to access the courts. *Popovich*, 276 F.3d 808. In *Popovich*, a person with a hearing disability claimed that the court's failure to provide adequate hearing assistance discriminated against him by denying him "the opportunity to participate equally in [a child-custody] proceeding pending before the court." *Id.* at 811, 816. The *en banc* Sixth Circuit underscored the importance of his claims, noting his "significant" interest in a "judicial proceeding [that] will determine the amount of time, if any, he can spend with his daughter." *Id.* at 815. Concerned that "[f]ailure to accommodate his hearing disability may render him unable to participate meaningfully in that determination" the court noted that if "he cannot understand what is

---

[7] *Franco-Gonzales* was decided under Section 504 of the Rehabilitation Act. However, it applies equally to the Plaintiffs' ADA and Rehabilitation Act claims: "Title II of the ADA is modeled on the Rehabilitation Act, and decisional law on the Rehabilitation Act may be relied upon interchangeably in examining claims under the ADA." *Young v. City of Claremore,* 411 F. Supp. 2d 1295, 1303 (N.D. Okla. 2005).

[8] The *Franco-Gonzales* court further held that the government must cover the cost of counsel or find counsel willing to provide the services *pro bono*. *Id.* at 1058. The plaintiffs will eventually seek the determination of such a right in this case but do not do so now in this preliminary injunction.

happening during the [] hearing, it will be impossible for him to refute claims made against him, or to offer evidence on his own behalf." *Id.* Like the hearing-impaired plaintiff in *Popovich*, Utah guardianship respondents require counsel in order to meaningfully defend their case by "refut[ing] claims made against" them and "offer[ing] evidence." *Id.* Not only does a guardianship proceeding subsume the same child-custody issues that the *Popovich* court found sufficient to generate a "significant" interest; it extends to a respondent's control over basic aspects of his or her own life.

3.     <u>The Discrimination or Denial of Benefits Is on the Basis of Guardianship Respondents' Disabilities Because It Removes Their Ability to Meaningfully Present a Defense.</u>

An ADA plaintiff must show that the discrimination or denial of benefits occurred "by reason of" his disability. 42 U.S.C. § 12132; *accord* 29 U.S.C. § 794(a). The guardianship respondents satisfy this requirement because their disabilities cause their lack of access to the courts. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999) (holding that the denial of community-living opportunities to developmentally disabled people was "by reason of" their disability). Indeed, the statute, by its very nature as a part of the "Protection of Persons Under Disability and their Property" subsection of the Utah's Utah Code, targets individuals with disabilities. *See* Utah Code § 75-5.

**B.     The Same Showing That Establishes an ADA Violation Also Establishes A Violation of Section 504 of the Rehabilitation Act.**

Section 504 of the Rehabilitation Act provides that, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "Program or activity"

includes the operations of any "department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). To establish a prima facie claim under § 504, a plaintiff must demonstrate that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Comm.,* 513 F.3d 1191, 1194 (10th Cir. 2008). Given the overlap between the ADA and Section 504 of the Rehabilitation Act, courts in this circuit "apply the standards from the [ADA] in analyzing a Rehabilitation Act claim." *Wilkerson v. Shinseki,* 606 F.3d 1256, 1262 (10th Cir. 2010) (citations omitted); *see also Jarvis v. Potter,* 500 F.3d 1113, 1121 (10th Cir. 2007) ("We . . . look to the ADA for guidance in resolving Rehabilitation Act claims."); *cf. Fry,* 137 S. Ct. at 749 ("Section 504 [because of its similarity to the ADA] has been interpreted to demand "certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities." (citing *Alexander v. Choate,* 469 U.S. 287, 299–300, (1985))).

The Utah Court System receives federal funding. *See Utah State Legislature Compendium of Budget Information for the 2017 General Session: Executive Offices and Criminal Justice,* Utah Legislature Website (2017), *available at* https://le.utah.gov/lfa/cobi/currentCobi/cobi.html?cobiID=94&tab=financialsTab. Because the remaining considerations are the same for the Plaintiffs' claims under Section 504 as they are for the Plaintiffs' ADA claims, the Plaintiffs are—for the same reasons—likely to succeed on this Section 504 claim. As explained above, the Plaintiffs are disabled individuals and are "otherwise qualified" to participate in court proceedings. *See, supra,* Section III.A.1; *Wilkerson,* 606 F.3d at

1262-63 (analyzing whether plaintiff was disabled and a qualified individual for purposes of Rehabilitation Act analysis by reference to ADA standards). The State Court system discriminates against the Plaintiffs and other guardianship respondents by failing to require counsel as a reasonable accommodation for their disabilities. *See supra*, III.A.2-3; *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (analyzing discrimination elements of ADA Tile II and Section 504 of the Rehabilitation Act together "[b]ecause these provisions involve the same substantive standards."). The Plaintiffs are therefore also likely to succeed on the merits of their claims under Section 504.

### C. Utah's Guardianship Proceedings Deprive Respondents of Fundamental Rights In Violation of the Fourteenth Amendment.

In addition to discriminating in violation of the ADA and the Rehabilitation Act, H.B. 101 offends the Constitution's most essential guarantees of freedom and autonomy.

#### 1. Utah's Guardianship Law Undermines the Fourteenth Amendment's Procedural Due Process Guarantee of a Full and Fair Hearing by Preventing Guardianship Respondents from Presenting a Defense.

Procedural due process "'require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Boddie v. Connecticut*, 401 U.S. 371, 377-78 (1971) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* at 378. In order to evaluate whether procedural due process is satisfied, courts use the three-part inquiry the Supreme Court set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This inquiry balances (1) "the private interest affected," (2) "the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value

of additional safeguards," and (3) "the Government's interest, including the administrative burden that additional procedural requirements would impose." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citing *Mathews*, 424 U.S. at 335). Any minimal burden to the government of requiring counsel pales in comparison to the high risk guardianship respondents face of the erroneous deprivation of crucial liberty interests. Procedural due process thus requires counsel.

First, the private interests at stake in a guardianship proceeding are among the highest in any legal proceeding, criminal or civil. A full legal guardianship essentially strips the ward of his legal autonomy, depriving him of his ability to determine his place of abode, marry or determine custody of his children, dispose of his assets, or make life-altering medical decisions—including the choice to terminate or continue treatment. Utah Code § 75-5-312; Zahradnikova Decl., ¶ 15; *see also* Zahradnikova Decl., Ex. 7. This deprivation is permanent and a guardian can assign this control to another. Utah Code § 75-5-301; *see also* Zahradnikova Decl., Ex. 7 (limited guardianship order described as "permanent"). A guardianship can exhibit many of the hallmarks of physical detention: wards lose control over movement, association, and medical decisions including whether to be institutionalized. Utah Code § 75-5-312; Zahradnikova Decl., ¶ 15; *see also* Zahradnikova Decl., Ex. 7. The Supreme Court has long recognized that the freedom from physical detention is "the most elemental of liberty interests" subject to special importance in the *Mathews* balancing test. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004) (finding an accused illegal enemy combatant's liberty interest to outweigh even "the weighty and sensitive governmental interests" implicated by war and treason); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment

for any purpose constitutes a significant deprivation of liberty that requires due process protection." (citations omitted)).  These strong interests require the strictest procedural protections.

Second, if respondents are forced to navigate the guardianship determination without counsel, they face a particularly high risk of erroneous deprivation.  The Supreme Court has admonished that "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."  *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970) (finding written submissions an insufficient protection for welfare recipients, many of "who[m] lack the educational attainment necessary to write effectively").  And it has recognized that courts must be particularly vigilant in protecting the procedural-due-process protections due some classes of people—such as those without education or with intellectual disabilities.  *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932); *see also id.* ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.  Even the intelligent and educated layman has small and sometimes no skill in the science of law . . . .  If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.").  Guardianship respondents are unusually vulnerable to abuses through the judicial process.  Without counsel, they may be unable to fully express their desires to the court, put on the evidence that best supports their case, and—when guardianship is appropriate— argue for limitations to that guardianship to prevent unnecessary infringements on their liberty.  Counsel, in contrast, would necessarily ensure that the court understands the ward's position and then argue according to the ward's wishes.  The barriers preventing respondents from meaningfully defending themselves thus give rise to a high risk that they will be erroneously

deprived of crucial rights—a deprivation that could be prevented if the guardianship respondents were guaranteed counsel.

Third, the Defendants can state no serious interest to counter the high risk that a guardianship proceeding without counsel will erroneously deprive a ward of a crucial liberty interest. The Plaintiffs will ultimately seek a permanent injunction requiring Utah to pay for guardianship respondents' counsel—and can readily support this relief given the severity of the need for counsel—but at this stage they merely seek to return to a status quo ante where Utah paid nothing for guardianship respondents' attorneys. Through December 31, 2016, and under the preliminary injunction the Plaintiffs seek, the Signature Program would provide respondents representation that would either be pro bono or would be charged to the respondents on a sliding-scale basis. *See Guardianship Signature Program*, Utah Courts Website, *supra.* The only interest Utah might claim is thus its vanishingly small pecuniary interest in avoiding the extra judicial resources that might be required to address the objections that counsel would raise at a hearing. A minor pecuniary interest cannot justify imposing a barrier to meaningful access to the judicial process. *Little v. Streater*, 452 U.S. 1 (1981) (holding that the state's interest in avoiding the cost of a blood test by passing it on to parties could not justify the barrier this cost presented to indigent parties).

2. Utah's Guardianship Law Deprives Respondents of Physical Liberty Without Counsel, a Violation of Substantive Due Process Under the Fourteenth Amendment.

The Plaintiffs will also prevail on the merits because a guardianship would deprive them of physical liberty in violation of their substantive due process right to counsel under the Fourteenth Amendment.

The right to counsel applies to any deprivation of physical liberty—including a guardianship. Soon after it recognized a right to counsel under the Fourteenth Amendment in *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Supreme Court extended this right to juvenile delinquency proceedings. *Gault*, 387 U.S. at 36-37. The state argued that—unlike an adversarial criminal trial—a delinquency proceeding represented the state acting in the child's best interest to provide him custody. *Id.* at 16. The Court rejected that view, recognizing that any deprivation of physical liberty—no matter the positive intent or benign label—requires the strictest protections. *Id.* at 27-29. Given the potential loss of physical liberty a juvenile in delinquency proceedings can face, it concluded that "the juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *Id.* at 36. As it has developed its right-to-counsel jurisprudence under substantive due process, the Supreme Court has consistently divided cases into two types—those in which a litigant "may lose his physical liberty if he loses" the case, and those involving other deprivations such as losing a property right. *Lassiter v. Dep't. of Social Servs. Of Durham County*, 452 U.S. 18, 25 (1981). When physical liberty is at stake, it noted that the Constitution always requires appointed counsel. *Id.* (citing *Vitek v. Jones*, 445 U.S. 480, 497, 500 (1980); *Gault*, 387 U.S. at 41). Only in cases where the party's physical liberty is not at issue does the Constitution allow him to proceed without guaranteed counsel. *Lassiter*, 452 U.S. at 25. The Tenth Circuit has strictly adhered to this rule, recognizing the right to counsel whenever civil proceedings threaten to deprive litigants of their physical liberty. It held that due process requires appointed counsel in civil-commitment proceedings. *Heryford*, 396 F.2d at 396 ("It matters not whether the

proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency."). And it similarly held that those at risk of imprisonment in civil contempt proceedings have the right to counsel. *Walker*, 768 F.2d at 1184.

Guardianship proceedings unquestionably place the respondent's physical liberty into jeopardy. A guardian gains control over a ward's place of abode, ability to travel, and ability to associate with others. Utah Code § 75-5-312(a); Zahradnikova Decl., ¶ 15. These restrictions limit a ward's physical liberty. *See State ex rel. Shamblin*, 445 S.E.2d at 739 ("Appointment of a guardian results in a massive curtailment of liberty . . . . The guardian becomes the custodian of the person, estate and business affairs of the ward; the guardian dictates the ward's residence; the ward's freedom to travel is curtailed; and the ward's legal relationship with other persons is limited." (internal quotation omitted)); *Matter of Howes*, 471 A.2d 689, 691 (Me. 1984) ("The appointment of a guardian for an incapacitated person affects the fundamental personal liberty of the prospective ward."); *Estate of Milstein v. Ayers*, 955 P.2d 78, 81 (Colo. App. 1998) (holding, for standing purposes, that "[b]ecause a guardianship proceeding involves a potential deprivation of fundamental rights and liberties, it implicates constitutional issues"). The fact that a ward may be confined in a home or institution rather than a prison is immaterial—all are deprivations of liberty. *See Gault*, 387 U.S. at 27 ("It is of no constitutional consequence—and of limited practical meaning—that the institution to which [a juvenile] is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement."). Utah's own state agency responsible for public guardianship services describes guardianship as "limit[ing] the self-determination of the person placed under it" and notes that "[t]here are few legal processes more

24

restrictive on citizens in a free society than guardianship." *Rights of Protected Persons*, Utah Office of the Public Guardian Website, available at opg.utah.gov/guardianship/rights-of-protectedpersons/. A guardian can also force decisions on a ward about her own medical treatment, including whether to terminate life-sustaining care and whether to be institutionalized. Utah Code § 75-5-312(3)(c); *see also* Zahradnikova Decl., ¶ 15. These intrusions on a ward's body and physical freedom certainly implicate physical liberty. *Vitek,* 445 U.S. at 491-92 (holding commitment to a mental hospital a "massive curtailment of liberty" requiring counsel); *Grant v. Johnson*, 757 F. Supp. 1127, 1132 (D. Or. 1991) (holding that a guardianship procedure that could result in commitment to a mental hospital "contemplates restraints on the liberty of alleged incapacitated persons and, therefore, the due process protections under the Fifth and Fourteenth Amendments to the United States Constitution must be afforded to those persons").

The ostensibly benevolent goals of Utah's guardianship regime do not change the fact that guardianships substantially restrict a ward's physical liberty. In the context of involuntary commitment, Utah courts have recognized that "the humanitarian motivation of the state . . . does not shield [Utah] from due process requirements." *Colyar v. Third Judicial Dist. Ct. for Salt Lake Cty.*, 469 F. Supp. 424, 429 (D. Utah 1979). In contrast to imprisonment or juvenile detention, which is generally temporary, this confinement and constraint on the fundamental freedom of wards is permanent unless specifically terminated—a rare occurrence. Utah Code § 75-5-306; *see also Colyar*, 469 F. Supp. at 429 (holding that involuntary commitment, "because it may be for an indeterminate period of time, can be a more intrusive use of the state's power than incarceration under the criminal code" (internal citations omitted)). A guardianship thus deprives the ward of physical liberty. Because the respondent's physical liberty is at stake, the

right to counsel attaches to a guardianship proceeding. *Heryford*, 396 F.2d at 396; *Walker*, 768 F.2d at 1184.

Each state's guardianship program has different rules, but all recognize the fundamental nature of the liberties at stake by providing some form of statutory right to counsel or guardian ad litem in guardianship hearings. *See* ABA Commission on Law and Aging, *Representation and Investigation in Guardianship Proceedings, available at* http://www.americanbar.org/content/dam/aba/administrative/law_aging/chartrepresentationandinvestigation.authcheckdam.pdf (2015). Even Utah provides a limited guarantee, although only to respondents who do not meet the requirements of H.B. 101 (such as those with more than $20,000 in net assets). Not all states' guarantees are sufficient, but their existence shows that states recognize a guardianship as the type of severe intrusion on a liberty interest that requires the protection of counsel. *See Gideon*, 372 U.S. at 345 (referencing twenty-two states' support of a criminal right to counsel through an amicus brief in granting this right).

## IV. THE PUBLIC INTEREST REQUIRES A PRELIMINARY INJUNCTION PROTECTING GUARDIANSHIP RESPONDENTS FROM DEVASTATING, PERMANENT DEPRIVATIONS OF LIBERTY WHILE THIS CASE PROCEEDS TO A FINAL DETERMINATION.

The public has a robust interest in accurate determinations in all legal proceedings. This interest is heightened in guardianship proceedings, where citizens particularly vulnerable to abuses at the hands of the legal system face serious deprivations of liberty. The legal grounds on which the Plaintiffs move underscore the public importance of this case. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)) (internal quotation marks omitted). Courts have also recognized the equally strong public

interest in statutory causes of action targeting discrimination on the basis of disabilities. *See Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) ("In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities."). Without counsel, guardianship respondents will "by reason of [their] mental conditions stand[] helpless and alone before the court" as it strips them of their most basic human liberties. *See Massey*, 348 U.S. at 108. The public has a strong interest in a preliminary injunction shielding these respondents from this catastrophic deprivation while this court addresses the merits of this lawsuit.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs respectfully request that this Court issue a preliminary injunction barring the Defendants from implementing H.B. 101.

DATED:  July 6, 2017                    LATHAM & WATKINS LLP

                                        /s/ John Mejia
                                        Alfred C. Pfeiffer, Jr. (*pro hac vice* pending)
                                        Kyle A. Virgien (*pro hac vice* pending)
                                        Dorottya Schranz (*pro hac vice* pending)
                                        John H. Steinbach (*pro hac vice* pending)
                                        LATHAM & WATKINS LLP
                                        505 Montgomery Street, Suite 2000
                                        San Francisco, California  94111-6538
                                        Telephone:  415.391.0600
                                        Facsimile:  415.395.8095
                                        al.pfeiffer@lw.com
                                        kyle.virgien@lw.com
                                        dorey.schranz@lw.com
                                        john.steinbach@lw.com

                                        Claudia Center (*pro hac vice* pending)
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        39 Drumm Street
                                        San Francisco, CA 94111
                                        Telephone:  415.343.0762
                                        Facsimile:  415.395.0950
                                        ccenter@aclu.org

                                        John Mejia (Bar No. 13965)
                                        Leah Farrell (Bar No. 13696)
                                        AMERICAN CIVIL LIBERTIES UNION OF
                                        UTAH FOUNDATION, INC.
                                        355 N. 300 W.
                                        Salt Lake City, Utah 84103
                                        Telephone:  801.521.9862
                                        Facsimile:  801.532.2850
                                        aclu@acluutah.org

                                        Attorneys for Plaintiffs Disability Law Center,
                                        Katherine C., and Anthony M.