DAVID N. WOLF (6688)
LAURA K. THOMPSON (6328)
ANDREW DYMEK (9277)
Assistant Utah Attorneys General
Utah Attorney General's Office
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: lathomps@agutah.gov
E-mail: adymek@agutah.gov

*Counsel for Defendant State of Utah*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| DISABILITY LAW CENTER, KATHERINE C., AND ANTHONY M.<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH, THE UTAH JUDICIAL COUNCIL, and the UTAH ADMINISTRATIVE OFFICE OF THE COURTS<br><br>Defendants. | **DEFENDANT STATE OF UTAH'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM**<br><br><br>Case No. 2:17-CV-00748-RJS<br><br>Judge Robert J. Shelby<br>Magistrate Judge Warner |

---

Pursuant to Federal Rules of Civil Procedures12(b)(1), and 12(b)(6), Defendant the State

of Utah (the "State") submits this Motion to Dismiss Plaintiffs' Complaint and causes of action

against the State.[1]

---

[1] *See* doc. 2.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... vii

I.   FACTS CONTROVERTING ALLEGATIONS IN COMPLAINT FOR PURPOSES OF RULE 12(B)(1) MOTION ............................................................... viii

A.  In a DLC publication entitled "The Guardianship Process," which is available on the DLC's website, the DLC informs the public that under H.B. 101,..................................... viii

B.  In the same publication, DLC states as follows: ............................................ 1

ARGUMENT .................................................................................................... 1

I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS AGAINST THE STATE........................................................................ 1

1.  Plaintiffs' Claims Arise Under State Law, Not Federal Law .................................. 2

2.  Plaintiffs Lack Standing ...................................................................... 4

a.  Injury in fact ............................................................................. 4

i.  Katherine and Anthony Lack Standing ...................................................... 5

ii.  Disability Law Center – No injury in fact in its own right.............................. 7

iii. Disability Law Center – No associational standing......................................... 8

b.  Redressability ............................................................................ 11

3.  The Court Lacks Subject Matter Jurisdiction Due to the State's Sovereign Immunity...................................................................................... 12

a.  Section 504 of the RA ..................................................................... 14

b.  Title II of the ADA ....................................................................... 14

II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED ................................................................................... 15

1.  Plaintiffs' Facial Challenge to H.B. 101 Fails, as a Matter of Law..................... 16

2.  There Is No Bright Line Rule Requiring Counsel For Potential Wards In Guardianship Proceedings ..................................................................... 19

CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

546 U.S. 151 (2006)................................................................................................ 14, 15

*Access 4 All, Inc. v. Commons at Sugarhouse, LLC*, 2016 WL 6779430 (D. Utah Nov. 15, 2016) ................................................................................................................................ 9

*Alabama v. Pugh*, 438 U.S. 781 (1978) ......................................................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 15

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) .................................................. 4

*Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016) ......................... 5

*Disability Rights New Jersey, Inc. v. Velez*, 862 F.Supp.2d 366 (D. N. J. 2012) ......... 14

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999)............................................................. 10

*Edelman v. Jordan*, 415 U.S. 651 (1974) ..................................................................... 12

*Faith Action for Cmty. Equity v. Hawai'i Dep't of Transp.*, No. 13-00450 SOM, 2014 WL 1691622 (D. Haw. Apr. 28, 2014) ........................................................................ 8

*Gorka v. Sullivan*, 82 F.3d 772 (7th Cir. 1996) ........................................................... 12

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ................... 3

*Gromer v. Mack*, 799 F.Supp.2d 704 (N.D. Tex. 2011) ....................................... 2, 3, 22

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) .................................................... 15

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)................................... 9

*Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013) .............................................. 16

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ........................................ 15

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161 (3d Cir.2002) ..................... 14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ........................................................................................................... 8

*Lujun v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 4, 5, 6

*Massey v. Utah Department of Corrections*, 2017 WL 1476138 (D. Utah April 24, 2017) ........ 12

*Mathews v. Eldridge*, 424 U.S. 319 (1976)........................................................... 20, 21

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ............................................................. 19

*Murray v. Earle*, 2009 WL 1560014 (5th Cir. June 3, 2009) ...................................... 22

*Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159 (10th Cir. 2012) .......................... 13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .............................................................. 12

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................. 13

*Peterson v. LaCabe*, 783 F.Supp.2d 1167 (D. Colo. 2011) ..................................... 16

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)................. 13

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001)..................................................... 9

*SK Finance, S.A. v. La Plata County*, 126 F.3d 1272 (10th Cir.1997) .................................... viii, 1

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..................................................... 4

*Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250 (10th Cir. 2007) ................................ 12

*Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999) ...................... 13

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996)........................................................................................................... 9

*United States v. Georgia*, 546 U.S. 151 (2006) ...................................................... 14

*United States v. Rodriguez–Aguirre*, 264 F.3d 1195 (10th Cir. 2001) .......................... 1

*V-1 Oil Co. v. Utah State Dept. of Pub. Safety*, 131 F.3d 1415 (10th Cir.1997)......................... 13

*Valdez v. National Security Agency*, 228 F.Supp.3d 1271 (D. Utah 2017) ............................. 1, 12

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) ............ 16

*Wood v. Milyard*, 414 Fed. Appx. 103 (10th Cir. 2011) ........................................................ 12

**Statutes**

29 U.S.C. § 705(20) ............................................................................................................... 18

42 U.S.C. § 10801 ................................................................................................................. 10

42 U.S.C. § 10805(a)(1)(B), (C) ............................................................................................ 10

42 U.S.C. § 12102(1) ............................................................................................................. 18

42 U.S.C. § 15002(8) ............................................................................................................. 11

42 U.S.C. § 15043 ................................................................................................................. 11

Article III, Section 2, of the U.S. Constitution ....................................................................... 4

Section 75-5-303 of the Utah Code ............................................................................... 3, 6, 7

U.S. Const. Art. III, § 2, cl. 1 .................................................................................................. 2

Utah Code Ann. § 75-5-308 ................................................................................................. 21

Utah Code Ann. § 63G-7-501(1) ......................................................................................... 13

Utah Code Ann. § 75-5-303(2) .................................................................................... 3, 17, 20

Utah Code Ann. § 75-5-303(5)(d) .......................................................................................... 6

Utah Code Ann. § 75-5-303(d) ....................................................................................... 3, 17

Utah Code Ann. § 75-5-304 ................................................................................................. 20

Utah Code Ann. § 75-5-311(3) .............................................................................................. 6

Utah Code. § 75-1-201(22) ................................................................................................... 21

§ 75-5-303(4) ....................................................................................................................... 21

§ 75-5-303(d) (ii) ................................................................................................................. 21

§ 75-5-303(d) (iii), (iv) ................................................................................ 21

§ 75-5-303(d) (iv) ......................................................................................... 21

§ 75-5-304(2) ................................................................................................ 21

**Regulations**

28 C.F.R. § 35.150(a)(l) ............................................................................... 18

**Other Authorities**

H.B. 101 ........................................................ii, vii, viii, 3, 5, 6, 7, 11, 12, 16, 17, 18, 19, 21

HB 101 ......................................................................................................... vii

House Bill 101 ............................................................................................. vii

## INTRODUCTION

Effective May 10, 2016, House Bill 101 ("H.B. "101") modified the procedures for appointing a guardian for an incapacitated person.  Previously, the procedures required courts to indiscriminately appoint counsel for the person ("potential ward") for whom a guardianship was sought.  This was an inflexible requirement applicable in all cases regardless of the circumstances.

Under H.B. 101, appointment of counsel remains the default rule.   However, in cases where the parents are seeking guardianship, H.B. 101 gives probate courts the discretion to not appoint counsel for their adult child when certain conditions are satisfied.   These conditions are designed to protect the interests of the adult child.  In fact, HB 101 contains a catch-all provision that unequivocally requires the court to appoint counsel for the adult child unless "the court is satisfied that counsel is not necessary in order to protect the interests of the person."  Thus, H.B. 101 allows Utah families to avoid the potential costs and delays associated with retaining an attorney, but only in those cases where the court determines there is no need for one.

This notwithstanding, Plaintiffs claim that H.B. 101, on its face, violates federal statutes and the United States Constitution.  In effect, Plaintiffs contend that there are no circumstances under which H.B. 101 can be applied without violating federal law.  This contention is belied by Plaintiffs' own Complaint.  Although H.B. 101 has been in effect for almost 15 months, Plaintiffs have not alleged facts showing that any individual has been wrongfully denied counsel as a result of H.B. 101, and the law sunsets on July 1, 2018.   Further, none of the named plaintiffs are alleged to have even participated in a guardianship proceeding under H.B. 101.

Lacking any factual allegations showing an actual injury or violation of federal law,

Plaintiffs' Complaint should be dismissed.   Having suffered no injuries, Plaintiffs lack standing to pursue their claims.   Having experienced no violations of federal law, Plaintiffs have failed to state a claim for which relief may be granted.

There are other reasons Plaintiffs' Complaint should be dismissed.  The State of Utah has sovereign immunity; and federal question jurisdiction is lacking because the alleged federal questions are associated with guardianship proceedings arising under state law.

## I.  FACTS CONTROVERTING ALLEGATIONS IN COMPLAINT FOR PURPOSES OF RULE 12(B)(1) MOTION

In the event the Court elects to consider extrinsic evidence for purposes of the State's rule 12(b)(1) motion,[2] the State sets forth the following facts:

A.     In a DLC publication entitled "The Guardianship Process,"[3] which is available on the DLC's website, the DLC informs the public that under H.B. 101,

> **Waiver of counsel will not likely be freely given** because a guardianship takes away an individual's important rights. Since the judge will decide at the beginning of the case whether to waive your family member's right to counsel, it is important that you submit adequate medical/psychological information when filing your petition. **The judge will likely NOT waive your family member's right to counsel if: 1) they understand the proceedings and they want an attorney, or; 2) they object to, or don't like all the areas where you want to make decisions for them**.

(*See* http://disabilitylawcenter.org/wp-content/uploads2/2016/05/The-Guardianship-Process.pdf) (emphasis added)

---

[2] A court may consider extrinsic evidence in resolving a 12(b)(1) motion to dismiss, without converting it into a motion for summary judgment. *SK Finance, S.A. v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir.1997).
[3] *See* Valencia Declaration (to be subsequently filed).

B.      In the same publication, DLC states as follows:

We can provide basic information about the rights of people with disabilities and guardianship law. We're happy to help you connect with local resources. However, **we cannot represent a petitioner or a proposed ward in guardianship proceedings, nor can we offer specific legal advice about your guardianship situation**.

(*Id.* (emphasis added))

## ARGUMENT

## I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLAIMS AGAINST THE STATE

A 12(b)(1) motion to dismiss permits a defendant to challenge a court's subject matter jurisdiction both facially and factually. *United States v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). A facial challenge targets the adequacy of the allegations in the complaint. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When presented with a facial challenge, courts (1) identify the allegations in the complaint entitled to an assumption of truth and (2) evaluate whether these allegations plausibly support an entitlement to relief. *Iqbal,* 556 U.S. at 680; *Valdez v. National Security Agency*, 228 F.Supp.3d 1271, 1279, & n.24 (D. Utah 2017). To be entitled to an assumption of truth, allegations must be "well-pleaded," which means, at a minimum, they cannot be legal conclusions, bare assertions, or "formulaic recitations" of the elements of a claim. *Valdez,* 228 F.Supp.3d at 1279. In resolving a factual challenge to a court's subject matter jurisdiction, the court "does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1279 & n.24.

As shown below, although the State relies on a DLC publication to factually challenge a few of the allegations in Plaintiffs' Complaint, the Complaint does not withstand a purely facial challenge either.

### 1. Plaintiffs' Claims Arise Under State Law, Not Federal Law

Federal courts have subject matter jurisdiction only over cases or controversies arising under federal law. U.S. Const. Art. III, § 2, cl. 1. This Court lacks subject matter jurisdiction over this case because the alleged federal constitutional and statutory violations could arise, if at all, only during state probate proceedings governed by state law, and under state courts' exclusive original jurisdiction. This jurisdictional defect is masked by the fact Plaintiffs have filed the lawsuit prematurely, before any case or controversy has come close to ripening. However, the defect is real, and fatal to Plaintiffs' case.

The jurisdictional defect in this case is exposed by the persuasive reasoning in *Gromer v. Mack*, 799 F.Supp.2d 704 (N.D. Tex. 2011). In *Gromer*, an adult daughter (Mack) filed a petition in probate court seeking to be appointed her mother's temporary guardian. *Id.* at 706. During the guardianship proceedings, the probate court issued a restraining order against another daughter, Gromer. Gromer then sought to remove the case to federal court, claiming that the probate court violated her federal due process rights in issuing the restraining order. *Id.* at 707.

The *Gromer* court's analysis of whether it had removal jurisdiction is enlightening and applicable to the question of whether this Court has original jurisdiction. This is because the substantive tests for removal jurisdiction and original jurisdiction are the same. As stated in *Gromer*, a "defendant can remove a case only if the claim could originally have been brought in federal court." *Id.* at 710.

2

Despite the federal due process claim, the *Gromer* court ruled that it did not have jurisdiction.  In reaching this conclusion, the court noted, first, that probate matters have traditionally been governed by state law and are within the exclusive jurisdiction of state probate courts.  *Id.* at 710.  Although violations of federal rights may occur during probate court proceedings, that potential does not confer original or removal jurisdiction on federal courts.  Rather, the test for federal subject matter jurisdiction is whether the state-law claim "necessarily raises" a federal issue that is actually disputed and substantial.  *Id.* at 708 (citing *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).  Applying this test, the *Gromer* court ruled it did not have jurisdiction.  *Id.* at 711.

This reasoning is directly applicable to this case.  The filing of a guardianship petition under H.B. 101 does not necessarily raise a federal question related to the appointment of counsel.  Under section 75-5-303 of the Utah Code, which incorporates H.B. 101, the question of whether a potential ward is appointed counsel is determined during the adjudication of the proceedings.  The question may not even arise at all because the potential ward has the right to appear with counsel of his or her own choice.  Utah Code Ann. § 75-5-303(2).  Moreover, if the potential ward does not have counsel, there is a presumption that appointment of counsel is required.  *Id.*  This presumption may be rebutted only if five conditions are met, one of which requires the court be "satisfied that counsel is not necessary in order to protect the interests of the person."  Utah Code Ann. § 75-5-303(d).  Thus, in many cases, the court will appoint counsel for the potential ward.

In those proceedings where the potential ward is represented by their chosen or appointed counsel, the federal questions raised in the Complaint do not arise.  Because the federal questions

raised in Plaintiffs' Complaint arise only potentially, but not necessarily, during guardianship proceedings, the Court should conclude it does not have subject matter jurisdiction, as a matter of law.

### 2. Plaintiffs Lack Standing

The Court also lacks subject matter jurisdiction because Plaintiffs lack standing and therefore no case or controversy is present. Standing is an "irreducible constitutional minimum" requirement for there to be a justiciable case or controversy under Article III, Section 2, of the U.S. Constitution. *Lujun v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A party has standing only when (1) she has suffered an injury in fact, that is (2) fairly traceable to the alleged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have the burden of establishing the elements of standing. *Id.* To satisfy this burden at the pleadings stage, a party's complaint must include well-pleaded allegations of fact demonstrating each element of standing. *Id.* Plaintiffs have failed to satisfy this burden.

### a. Injury in fact

Plaintiffs have failed to allege facts demonstrating an "injury in fact." To demonstrate an injury in fact, a plaintiff must show she suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Spokeo*, 136 S. Ct. at 1548; *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). Allegations of possible future injury fail to satisfy the injury in fact element. *Clapper*, 568 U.S. at 409. What is more, a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id. at 416*.

i.    **Katherine and Anthony Lack Standing**

Plaintiffs Katherine C. ("Katherine") and Anthony M. ("Anthony") have failed to allege facts showing they have suffered an injury of fact.  Neither of them have alleged facts plausibly showing their constitutional or statutory rights were violated as a result of H.B. 101.  Based on the allegations in the Complaint, it is clear that Katherine and Anthony have never been denied counsel as a result of H.B. 101, or have even participated in a guardianship proceeding since H.B. 101 went into effect.

Moreover, Katherine and Anthony have not alleged facts showing that they will imminently face a guardianship proceeding.   Katherine merely alleges that her parents "have expressed concern about Katherine's ability to function autonomously" and that she is "deeply concerned that her parents will file to create a permanent guardianship that would deprive her of her essential liberty interests."  (Complaint, ¶¶ 29).  Katherine's subjective concerns that her parents will file a proceeding at some point in the indeterminate future fail to establish standing. *See Lujan*, 504 U.S. at 564 (holding that "some day" intentions fail to establish standing); *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553 (10th Cir. 2016) (same).  Conspicuously absent from the Complaint are any allegations showing that Katherine's parents have taken concrete actions to institute a guardianship proceeding imminently.

The allegations regarding Anthony are similarly defective.  The Complaint alleges that Anthony's "parents have expressed a desire to obtain a determination of legal guardianship to ensure continuing care."  (Complaint, ¶ 39).   However, there are no allegations showing that Anthony's parents will imminently file a guardianship proceeding.   To the contrary, Anthony alleges that he is 34 years old, "currently lives with his wife and son" (neither of whom is alleged

to be disabled), has "developed skills and abilities over time," and is employed as an assistant janitor. (Complaint, ¶¶ 33-34, 37, 39). Thus, in the 16 years since Anthony reached majority, his parents have not sought or obtained guardianship over Anthony, and over this time period his abilities have developed and he now has a wife, who has priority over Anthony's parents for appointment as guardian. *See* Utah Code Ann. § 75-5-311(3). There is no reason to conclude that his parents will imminently bring, much less succeed in, a guardianship proceeding.[4]

Even assuming hypothetically that a guardianship proceeding is imminent, Katherine and Anthony have failed to allege facts showing they likely would be denied counsel as a result of H.B. 101. By its express terms, H.B. 101, codified as section 75-5-303 of the Utah Code, affirmatively requires counsel for a prospective ward unless five conditions are satisfied. Utah Code Ann. § 75-5-303(5)(d). One of these conditions requires that the court be "satisfied that counsel is not necessary in order to protect the interests of the person." *Id.* Neither Katherine nor Anthony have alleged facts demonstrating that the probate court would be satisfied that counsel is not necessary to protect their interests or, if a court so concluded, how that would necessarily constitute a violation of their constitutional or statutory rights. It is pure speculation to conclude that Katherine, Anthony, or anyone else will suffer an injury in fact when the alleged injury, not having counsel, depends on the probate court's evaluation of the need for counsel, the result of which will be based on the facts and circumstances prevailing at a future time, which cannot be predicted.

---

[4] Even assuming Katherine's and Anthony's "concerns" arising from their parents' statements constitute an injury, they are not "fairly traceable" to Defendants for purposes of determining whether Plaintiffs have standing. *See Lujan,* 504 U.S. at 560 (stating that, for purposes of establishing standing, the injury must not be the result of independent action of third party not before the court).

Similarly, Katherine and Anthony do not have standing to challenge the portions of Utah Code § 75-5-303 that require the prospective ward to pay the costs of his/her legal representation in a guardianship proceeding.  There are no allegations that either of them have incurred these costs or were denied counsel because they could not pay these costs.

### ii.    Disability Law Center – No injury in fact in its own right

Likewise, the DLC has failed to allege sufficient facts showing that it has suffered an injury in fact.  DLC falls far short when it alleges: "As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited resources advocating in opposition to H.B. 101 and Defendants' denial of counsel to guardianship respondents. Defendants' actions also require DLC to divert its limited resources to provide legal assistance to those whom Defendants have denied counsel."  (*See* Complaint, ¶¶ 82, 103).  These allegations are insufficient to confer standing, both factually and legally.

The Court should not assume the truth of the allegations that DLC has expended resources or funds because of an alleged "denial of counsel" or in providing legal assistance to those whom Defendants have "denied counsel."  A "denial" connotes wrongfulness or illegality, which makes these improper legal conclusions.  Equally important, these bare assertions are unsupported by foundational factual allegations.  As shown above, Plaintiffs do not allege that Katherine or Anthony were denied counsel or even participated in a guardianship proceeding pursuant to H.B. 101.  Although the Complaint alludes to unnamed constituents, it fails to allege facts that plausibly show that (1) any unnamed constituent's constitutional or statutory rights were violated and (2) DLC was injured as a consequence.

The State also factually challenges the allegation that DLC has "provid[e]d legal assistance to those Defendants have denied counsel."  This allegation is controverted by a DLC publication, available on its website, in which DLC states that it cannot represent a "proposed ward in guardianship proceedings, nor can we offer specific legal advice about your guardianship situation."  (*See* Facts, *supra*, ¶ 2)

Moreover, the Court should not assume the truth of allegations of a "diversion" of resources or funds because they are conclusory and formulaically track one of the elements of the Ninth Circuit's "diversion of funds" theory of standing.  *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  Further, for the theory to apply, DLC must also show "it would have suffered some other injury if it had not diverted resources to counteracting." *Id.*  DLC has failed to allege facts showing it would have suffered some other injury but for its alleged diversion of funds or expenditure of resources.

Moreover, expending resources to advocate against a law or policy does not constitute an injury sufficient to confer standing, even in jurisdictions with "highly permissive" standing requirements.  *See Faith Action for Cmty. Equity v. Hawai'i Dep't of Transp.*, No. 13-00450 SOM, 2014 WL 1691622, *6-7 (D. Haw. Apr. 28, 2014).  If this was not the case, anyone who expended their time and purchased a postage stamp to send a "letter to the editor" could manufacture standing, regardless of whether they suffered a concrete and particularized injury.  That is not the law.

### iii.    Disability Law Center – No associational standing

Likewise, DLC has failed to allege facts showing that it has associational standing, i.e., standing to sue based on injuries suffered by its alleged members.   To adequately plead

associational standing, a plaintiff must allege facts showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The first *Hunt* element requires "an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc*., 517 U.S. 544, 555 (1996). This holding precludes DLC from relying on associational standing because it has not included in this lawsuit any members with standing to present, in their own right, the type of claim pleaded by the association. Even assuming Katherine and Anthony are members of DLC, neither of them has standing, as shown above.

The conclusion that DLC lacks organizational standing is reinforced by the case *Access 4 All, Inc. v. Commons at Sugarhouse, LLC*, 2016 WL 6779430, * 9 (D. Utah Nov. 15, 2016), *obj. sust. on other grounds* by 2017 WL 58832 (D. Utah Jan. 5, 2017), which addressed whether an organization had standing to bring an ADA claim on behalf of a member, for purposes of determining whether to sanction a party under Rule 11. Concluding that the organizational standing doctrine requires at least one member with standing be included in the lawsuit, the court noted that, under the Eleventh Circuit's holding in *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001), to "state a valid claim under Title II of the ADA, an *individual* plaintiff must establish, at an irreducible minimum, an injury in fact caused by the challenged act of the defendant" and to obtain injunctive relief, the individual "also had to establish a real and immediate—as opposed to

9

a merely conjectural or hypothetical—threat of future injury." *Id.* at *11 (internal quotations omitted) (emphasis added). DLC has not plead facts sufficient to show that an *unnamed* individual suffered an injury in fact and was facing a real and immediate threat of future injury. *Cf. Doe v. Stincer,* 175 F.3d 879, 884-85 (11th Cir. 1999) (not requiring the specific naming of an individual but still requiring allegations of injury of fact showing the unnamed individual has standing).

Even if DLC had plead facts showing that any individual has suffered an injury in fact, DLC would still have to plead facts showing that the individual is someone for whom DLC is authorized to bring suit. *Doe* illustrates this point. DLC's counterpart in *Doe* was the Advocacy Center for Persons with Disabilities ("Advocacy Center"). Like the DLC, the Advocacy Center alleged that it was authorized to pursue legal remedies on behalf of its constituents under the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), 42 U.S.C. § 10801. However, the *Doe* court noted that, under PAMII, the Advocacy Center's constituents, for purposes of pursuing legal remedies, were individuals with mental illness requiring remedies for "matters which occur within 90 days after the date of discharge of such individual from a facility providing care or treatment." *Id.* at 883 (quoting 42 U.S.C. § 10805(a)(1)(B), (C)). Accordingly, the *Doe* court granted summary judgment to plaintiffs due to lack of standing in part because the Advocacy Center's affidavits "failed to state that these persons were currently receiving treatment [in a facility] or that they had been discharged in the past ninety days—the class of persons with mental illness whom the Advocacy Center may represent under PAMII." *Id.* at 887.

Similarly, DLC has failed to adequately plead associational standing based on PAMII because it has not alleged that Katherine, Anthony, or anyone else allegedly injured by H.B. 101, is currently receiving treatment in a facility or that they had been discharged from a facility in the past ninety days.  Thus, even assuming arguendo that any individual has been injured in fact as a result of H.B. 101, DLC is not authorized to sue on their behalf under PAMII, as a matter of law.

Likewise, DLC has failed to plead facts showing that any individual allegedly injured by H.B. 101 suffers from a "developmental disability" within the meaning of the Protection and Advocacy for Individuals with Developmental Disabilities statutes ("PADD"), such that DLC is authorized to pursue legal remedies on her behalf under 42 U.S.C. § 15043.  Under PADD, a "developmental disability" is a severe chronic disability that, inter alia, is "manifested before the individual attains age 22" and is "likely to continue indefinitely."  42 U.S.C. § 15002(8).  Although Plaintiffs may have pleaded sufficient facts showing that Anthony, but not Katherine, meets this definition, they have not pleaded facts showing either of them has suffered an injury in fact.  Further, Plaintiffs have not plead sufficient facts showing that an unnamed individual meets this definition and has suffered an injury in fact as a result of H.B. 101.  Thus, DLC does not have associational standing under PADD, as a matter of law.

### b.  Redressability

Further, the Court should dismiss Plaintiffs' claims for prospective injunctive relief against the State of Utah because that relief will not redress any alleged injuries.   As a matter of law, an injunction prohibiting the State of Utah from implementing H.B. 101 and requiring it to appoint counsel in all guardianship proceedings, (*see* Complaint, Prayer for Relief, p. 24), will

not redress any alleged injuries because Plaintiffs have not alleged that the State is responsible for implementing H.B. 101 or for appointing counsel in guardianship cases.  To the contrary, Plaintiffs allege, in conclusory terms, that only the other defendants (the Utah Judicial Council and the Utah Administrative Office of the Courts) are responsible for the implementation of H.B. 101.  (*See* Complaint, ¶¶ 43-44).

Likewise, as a matter of law, Plaintiffs lack standing to seek an injunction requiring the State of Utah to pay for counsel for all guardianship respondents in the future.   The State is unaware of any legal authority supporting the entry of an open-ended injunction requiring payments to or for parties that are not before the Court.  Further, to have standing to pursue prospective injunctive relief, a plaintiff must show a continuing injury.  *Valdez*, 228 F.Supp.3d at 1285; *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974).   None of the Plaintiffs have alleged facts showing they are suffering a continuing injury caused by the payment requirement that would be redressed by the requested injunction.

### 3.  The Court Lacks Subject Matter Jurisdiction Due to the State's Sovereign Immunity.

The State of Utah is immune from suits in federal court, including suits seeking injunctive and declaratory relief.  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Steadfast Ins. Co. v. Agricultural Ins. Co*., 507 F.3d 1250, 1252 (10th Cir. 2007); *Massey v. Utah Department of Corrections*, 2017 WL 1476138, *1 (D. Utah April 24, 2017).  Due to the State of Utah's sovereign immunity, this Court lacks subject matter jurisdiction over the case against the State.  *Wood v. Milyard*, 414 Fed. Appx. 103, 105 (10th Cir. 2011) (unpublished) (citing *Edelman*, 415 U.S. 651 at 678); *Gorka v. Sullivan*, 82 F.3d 772, 775 (7th Cir. 1996).

12

None of the exceptions to sovereign immunity apply to this case. The exceptions are (1) consent to suit by the State, (2) the *Ex Parte Young* doctrine, and (3) abrogation of immunity by appropriate congressional legislation. *Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1166 (10th Cir. 2012).

The first two exceptions are plainly inapplicable to this case. For the first exception to apply, a plaintiff must demonstrate that a state expressly and unequivocally consented to suit in federal court. *V-1 Oil Co. v. Utah State Dept. of Pub. Safety*, 131 F.3d 1415, 1421 (10th Cir.1997) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). There is no evidence, or even any bare allegations, showing that the State consented to this suit. To the contrary, the State has manifested the unequivocal intent to retain its sovereign immunity. *See Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1233-34 (10th Cir. 1999) (10th Cir. 1999) (stating that because Utah gives its court exclusive jurisdiction over suits brought against the state, Utah "clearly intended" to retain sovereign immunity from suits in federal court); Utah Code Ann. § 63G-7-501(1). Likewise, the second exception to sovereign immunity, the *Ex Parte Young* doctrine, applies only to state officials, not the State of Utah itself. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Muscogee,* 669 F.3d at 1167 (holding that plaintiffs must show, *inter alia*, that they are "suing state officials rather than the state itself" for the *Ex parte Young* exception to apply). This leaves only the third exception. But the State's sovereign immunity is not abrogated by the statutes on which the Plaintiffs rely in the Complaint, i.e., the Section 504 of the Rehabilitation Act ("RA") and Title II of the Americans with Disabilities Act ("ADA").

### a. Section 504 of the RA

The State of Utah retains its sovereign immunity because the waiver of immunity provided by section 504 of the RA does not apply to the State. Although section 504 conditions the receipt of RA funds on a waiver of immunity, the waiver is limited. More specifically, section 504 does not waive the sovereign immunity of the State "as a whole." *Disability Rights New Jersey, Inc. v. Velez*, 862 F.Supp.2d 366, 375 (D. N. J. 2012). Instead, the "waiver of immunity conditioned on receipt of Rehabilitation Act funds applies on an agency-by-agency, or a department-by-department basis." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 171, 176 (3d Cir.2002).

In addition to this legal limitation, the State's sovereign immunity from section 504 claims is preserved for another reason. Plaintiffs have not alleged that the State, or any agency or department in the State, has received RA funds. Thus, Plaintiffs' claims based on section 504 of the RA should be dismissed on sovereign immunity grounds.

### b. Title II of the ADA

The State of Utah likewise retains its sovereign immunity because Defendants have failed to allege facts showing that Title II of the ADA applies. In *United States v. Georgia*, the U.S. Supreme Court set forth a three-step analysis for determining whether Title II of the ADA waives sovereign immunity in suits seeking money damages.[5] *Georgia*, 546 U.S. 151, 159 (2006). Under this analysis, courts must determine, on a claim-by-claim basis, (1) whether the alleged conduct violated Title II; (2) whether any conduct that violates Title II also violates the

---

[5] Although only two justices agreed, in a concurring opinion, that this holding also applied in cases where a party seeks prospective injunctive relief, *Georgia*, 546 U.S. at 169, for purpose of this motion only, the States assumes, but does not concede, that it does.

Fourteenth Amendment and; (3) "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Id*.; *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012).

Because Plaintiffs have failed to allege facts showing that this three-prong test is satisfied, the State retains its sovereign immunity, as a matter of law.   Here, Plaintiffs have not alleged facts showing that any of the prongs are satisfied.  In particular, Plaintiffs have failed to state claims under Title II and the U.S. Constitution, as is necessary to satisfy the first two prongs of the test.   (*See* 12(b)(6) motion, *infra*).

Even more fundamentally, because Plaintiffs' claims under the ADA and the U.S. Constitution have not ripened into an actual case or controversy—none of the Plaintiffs are alleged to have actually been denied counsel—Plaintiffs have not pleaded, and are <u>unable to plead,</u> any facts showing that their rights under Title II were violated, as is required by all three prongs of the three-prong test.   The State therefore retains its sovereign immunity, as a matter of law.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

To withstand a rule 12(b)(6) motion to dismiss, a complaint must include sufficient factual allegations to state a claim that is plausible, not merely conceivable.  *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As is the case with a 12(b)(1) motion, in determining whether the complaint validly states a claim, courts disregard mere labels and conclusions, and "formulaic recitation[s] of the elements of a cause of action."  *Id*. at 1190-91.

### 1. Plaintiffs' Facial Challenge to H.B. 101 Fails, as a Matter of Law

Plaintiffs attempt to state claims challenging H.B. 101 under the ADA (Counts I, V), Rehabilitation Act (Count II), and Due Process Clause (Counts III, IV, V). These are facial challenges, not as-applied challenges, as is evident from the Complaint. Plaintiffs have not alleged facts showing that any of them have been denied counsel in a guardianship proceeding. Yet, Plaintiffs are seeking sweeping injunctive and declaratory relief prohibiting Defendants from "implementing H.B. 101 to remove the requirement of counsel" in all cases and requiring "Defendants to appoint and pay for counsel for all guardianship respondents."

A party bringing a facial challenge faces a high burden. Facial challenges are disfavored and generally fail if there is any set of circumstances under which the law would be valid. *Peterson v. LaCabe*, 783 F.Supp.2d 1167, 1173 (D. Colo. 2011) (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008)). To sustain a facial challenge, Plaintiffs must show that H.B. 101 violates federal law (i.e., the ADA, Rehabilitation Act, or Due Process Clause) in all its applications. *Id.* This is an especially high burden given the highly case- and fact- specific nature of the relevant inquiries, including what constitutes a "reasonable accommodation" and "due process," and the absence of any interpretations of H.B. 101 by Utah appellate courts. *See Keller v. City of Fremont*, 719 F.3d 931, 945 (8th Cir. 2013) (noting that "fact-intensive issues illustrate why facial challenges are disfavored and, accordingly, why Plaintiffs' facial challenge must fail.").

Plaintiffs' facial challenge fails as a matter of law because H.B. 101 does not violate the ADA, RA, or Due Process Clause in all its applications. According to Plaintiffs' theory, these federal laws are violated whenever the court does not appoint counsel for a potential ward.

However, H.B. 101 does not deny the potential ward counsel in every case. To the contrary, under the statute of which H.B. 101 is a part, a potential ward has the right to appear with counsel of his or her choice. Utah Code Ann. § 75-5-303(2). H.B. 101 does not require courts to strip a potential ward of his/her chosen counsel. Moreover, if the potential ward has not chosen counsel, there is a presumption that appointment of counsel is required. Utah Code Ann. § 75-5-303(2). This presumption may be rebutted only if five conditions are satisfied, one of which requires the court be "satisfied that counsel is not necessary in order to protect the interests of the person." Utah Code Ann. § 75-5-303(d). In determining whether or not counsel is necessary, courts applying H.B. 101 may consider, among other things, whether, under the circumstances, the ADA, RA, or Due Process Clause requires counsel to be appointed.

This required judicial determination presents a considerable obstacle to any attempt to show that H.B. 101 violates federal law in all its applications. Plaintiffs' allegations do not come close to clearing this obstacle. In particular, Plaintiffs have not plead facts showing that in every application of H.B. 101, courts will conclude that counsel is not required for the prospective ward. In fact, DLC states in its publication that, under H.B. 101, courts "will likely NOT waive your family member's right to counsel if: 1) they understand the proceedings and they want an attorney, or; 2) they object to, or don't like all the areas where you want to make decisions for them." (*See* Facts, ¶ 1). Thus, H.B. 101 does not violate federal law in all its applications.

Likewise, Plaintiffs have not alleged facts showing that all potential wards are subject to the ADA and RA, and any attempt to do so would be legally untenable. Indeed, Utah's guardianship statute anticipates that some guardianship petitions will be without merit. *See* Utah Code Ann. § 75-5-303(2). A guardianship petition will be without merit if it is brought

frivolously against a potential ward who, on the face of the petition, is manifestly not incapacitated under Utah law and not disabled within the meaning of the ADA or RA.  42 U.S.C. § 12102(1); 29 U.S.C. § 705(20).  In these cases, H.B. 101 may be applied without triggering the ADA or RA.

Further, there will be cases where the potential ward is disabled but is competent enough to waive their alleged "right" to counsel.  Thus, even assuming that counsel in such cases would constitute a "reasonable accommodation" to make the proceeding "readily accessible" to the potential ward, *see* 28 C.F.R. § 35.150(a)(l), nothing in the ADA or RA prevents a disabled person from rejecting the accommodation, or requires the public entity (court) to force upon a disabled person an accommodation that he or she does not want.  Likewise, even assuming the proposed ward had a constitutional right to counsel, it is waivable.

Further, there will be cases where the potential ward is disabled as defined by the ADA and RA, but nonetheless capable of effectively representing herself in the guardianship proceeding without violating the ADA, RA, or Due Process Clause.  Katherine is an example. Katherine alleges that she has a disability as defined in the ADA and RA.  (Complaint, ¶¶ 69, 89).  At the same time, Katherine holds a law degree and currently works for a nonprofit "focus[ing] on abuse and neglect of mentally ill prisoners, including the constitutionality of solitary confinement for inmates with mental illnesses."  (Complaint, ¶¶ 22-23).  Katherine does not allege that she currently would require counsel or would be unable to effectively represent herself in a guardianship proceeding.  Rather, she worries her condition will worsen and that a "guardianship proceeding would likely come at a time when her paranoid schizophrenia will prevent her from defending herself."  (Complaint, ¶ 31).  In her present condition, however,

Katherine, despite her alleged disability, could effectively represent herself in a guardianship proceeding without violating the ADA, RA, or Due Process Clause.

Because H.B. 101 is clearly not invalid under all its applications, Plaintiffs' facial challenge, premised on the theory that counsel is required in all cases, should be dismissed. *A fortiori*, Plaintiffs' claim that the State is additionally required to pay for counsel for guardianship respondents in all future cases (Count V), without any showing of indigency or need, should also be dismissed.

### 2. There Is No Bright Line Rule Requiring Counsel For Potential Wards In Guardianship Proceedings

Plaintiffs' constitutional claims are premised on the theory that there is a bright line rule requiring that counsel be appointed and paid for by the State in all cases.  Plaintiffs are mistaken.

Specifically, in their Third Claim for Relief, Plaintiffs allege that the Due Process Clause of the Fourteenth Amendment, requires that Defendants appoint and pay for counsel for potential wards in all cases.  However, the text of the United States Constitution contradicts Plaintiffs' theory.  Despite requiring "due process" in the Fifth Amendment, the framers separately provided a right to counsel in criminal cases in the Sixth Amendment, which shows that the framers did not believe that the right to counsel is inherent in the right to due process.

Further, given the flexibility inherent in the Due Process Clause and guardianship statutes, Plaintiffs' theory that counsel is required *in all cases* does not withstand scrutiny.  Due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  In determining what process is due, courts consider (1) the private interest affected, (2) the risk of erroneous deprivation of those interests with the procedures used, and (3) the Government's interest in the function involved and burdens

associated with proposed procedural burdens.  *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

Applying these factors, it becomes clear that due process does not require the appointment of counsel in all cases.  In guardianship proceedings, the impact on a potential ward's private interests often will be limited.  The potential ward's parents may request only a limited guardianship in their petition.  Further, under Utah law, a court must "prefer a limited guardianship and may only grant a full guardianship if no other alternative exists. If the court does not grant a limited guardianship, a specific finding shall be made that nothing less than a full guardianship is adequate."  Utah Code Ann. § 75-5-304.  In a limited guardianship, for example, the guardian may be responsible for certain financial decisions only, and may not even have custody of the ward.

As for the second factor, there are procedural protections available to minimize the risk of any erroneous deprivation of the private interests at stake.  At the onset of the guardianship proceedings, notice of the hearing must be provided to, *inter alia*, the "person alleged to be incapacitated and spouse, parents, and adult children of the ward or person."  Utah Code Ann. § 75-5-309(1).  These interested parties may file a response to the petition, appear at the hearing, or assist the proposed ward in obtaining counsel.  At the hearing on the guardianship petition, the potential ward has the right to appear with counsel of his/her own choice.  Utah Code Ann. § 75-5-303(2).  To obtain additional information, the court has the discretion to appoint a physician "who shall submit a report in writing to the court and may be interviewed by a visitor

sent by the court." *Id.* § 75-5-303(4).[6]  The visitor may also interview the potential guardian, visit the place of abodes of the potential ward and guardian, conduct other investigations or observations as the court directs, and submit a report to the court. *Id.*  Of course, the court also has inherent authority to craft any additional procedures the court deems appropriate under the circumstances.

The substantive law is also protective of the rights of the potential ward.  The Court may not appoint a guardian unless there is clear and convincing evidence that the potential ward is incapacitated, Utah Code. § 75-1-201(22), and, even then, the Court "must prefer a limited guardianship and may only grant a full guardianship if no other alternative exists." *Id.* § 75-5-304(2).

Even with these procedures, a court is still required to appoint counsel for a proposed ward unless the five conditions required by H.B. 101 are satisfied.  To mitigate concerns that a financial motive underlies the guardianship petition, H.B. 101 requires that the value of the person's entire estate not exceed $20,000.  *Id.* § 75-5-303(d) (ii).  Further, H.B. 101 requires that the proposed ward appear in court and be given an opportunity to be heard.  *Id.* § 75-5-303(d) (iii), (iv).

Even if all these procedures are followed and other conditions are satisfied, the Court must still appoint counsel for the proposed ward unless the "court is satisfied that counsel is not necessary in order to protect the interests of the person." *Id.* § 75-5-303(d) (iv).  All told, these procedures significantly minimize any risk of erroneous deprivation of the potential ward's

---

[6] A "visitor" is "trained in law, nursing, or social work" and is an "appointee of the court with no personal interest in the proceedings." Utah Code Ann. § 75-5-308.

private interests.

Turning to the third factor, the State's interest in probate matters and guardianship proceedings is high.   These important matters have been traditionally vested in the state. *Gromer*, 799 F.Supp.2d at 710.  The State has a compelling interest in ensuring that the needs of incapacitated adults are provided for, and in removing impediments to persons seeking guardianships.  Allowing the citizens of this state to avoid the potential costs and delays associated with retaining an attorney, in those cases where a court has determined an attorney is not necessary, is undoubtedly a substantial state interest.

Finally, in their Fourth Claim for Relief, Plaintiffs also allege that that Sixth Amendment, incorporated by the Fourteenth Amendment, requires the appointment of counsel for potential wards.  However, the Sixth Amendment, by its express terms, applies only to criminal prosecutions, not civil guardianship proceedings.  *See Murray v. Earle*, 2009 WL 1560014, * 3 (5th Cir. June 3, 2009) (holding no Sixth Amendment right to counsel attached when state filed petition in civil court to determine guardianship of juvenile and her siblings).

## CONCLUSION

For the reasons stated above, the State respectfully request that this Court dismiss Plaintiffs' claims against the State in their entirety, and with prejudice.

DATED: August 4, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ David N. Wolf
DAVID N. WOLF
LAURA K. THOMPSON
ANDREW DYMEK
Assistant Utah Attorneys General
*Counsel for Defendant State of Utah*