DAVID N. WOLF (6688)
LAURA K. THOMPSON (6328)
ANDREW DYMEK (9277)
Assistant Utah Attorneys General
Utah Attorney General's Office
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: lathomps@utah.gov
E-mail: adymek@agutah.gov

*Counsel for Defendant State of Utah*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, KATHERINE C., AND ANTHONY M.<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH, THE UTAH JUDICIAL COUNCIL, and the UTAH ADMINISTRATIVE OFFICE OF THE COURTS<br><br>Defendants. | **DEFENDANT STATE OF UTAH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Case No. 2:17-CV-00748-RJS<br><br>Judge Robert J. Shelby |

Pursuant to Fed. R. Civ. P. 65 and DUCivR 7-1(b), Defendant the State of Utah (the "State") submits this Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction.[1]

---

[1] *See* doc. 8.

**INTRODUCTION**

Under prior law, the appointment of counsel for a potential ward in a guardianship proceeding was an inflexible requirement. House Bill ("H.B. 101") provided courts a measure of flexibility. Under H.B. 101, the appointment of counsel is still presumed. However, H.B. 101 gives probate courts the necessary discretion, in proceedings where a parent is seeking a guardianship over their adult child, to not appoint counsel when the court is satisfied that there is no need for one to protect the child's interests. A probate court's assessment of whether counsel is needed subsumes the question of whether due process requires the appointment of counsel.

Plaintiffs' requested injunction should be denied. Most fundamentally, the Court should not enjoin the State to cease implementing H.B. 101, as requested, because Plaintiffs have not alleged facts, and have not presented any evidence, showing that the State implements H.B. 101. To the contrary, Plaintiffs allege that only the other defendants, i.e., the Utah Judicial Counsel and Utah Administrative Office of the Courts, implement H.B. 101.

Plaintiffs have failed to demonstrate they are entitled to so drastic a measure as preliminary injunctive relief. The four-factor test for preliminary injunctions weighs strongly in the State's favor. As shown in the State's motion to dismiss, Plaintiffs do not have a substantial likelihood of success on the merits. It is very unlikely that this Court has subject matter jurisdiction. The State has sovereign immunity, the Plaintiffs lack standing, and this case does not arise under federal law but rather state probate law.

Turning to the second factor, for the same reasons Plaintiffs lack standing, Plaintiffs will not be irreparably harmed absent the issuance of an injunction. Plaintiffs have not shown that they will imminently face a guardianship proceeding. Moreover, Plaintiffs' long delay in

seeking an injunction against the implementation of H.B. 101, which went into effect almost 15 months ago and sunsets in less than a year, cuts against their claims of irreparable harm. Thus, an injunction is neither needed nor appropriate.

The remaining factors, i.e., the equities and public interest, also weigh against the issuance of an injunction. Plaintiffs have made no showing that their federal rights have been or imminently will be violated as a result of H.B. 101. The public has a strong interest in the enforcement of a statute that does not violate any federal laws, and allows parties to avoid potential costs and delays associated with retaining counsel when one is not needed to protect a potential ward's interests.

## I. LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As such, a Court must deny motions for preliminary injunctions unless the movant clearly and unequivocally establishes: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009). Because a preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal." *Heideman v. South Salt Lake City*, 348 F3d 1182, 1188 (10th Cir. 2003) (citations omitted).

In the Tenth Circuit, three types of injunctions are particularly disfavored, and are considered an even more drastic and extraordinary remedy: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford

3

the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Schrier v. University of Colo.,* 427 F.3d 1253, 1259 (10th Cir. 2005); *see O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 980 (10th Cir. 2004). When the requested preliminary injunction would alter the status quo, a movant "will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its favor, without showing a substantial likelihood of success on the merits." *SCFC ILC, Inc. v. Visa USA, Inc*., 936 F.2d 1096, 1101 n. 11 (10th Cir.1991).

Here, Plaintiffs are seeking a disfavored status-quo-disrupting preliminary injunction. The status quo in this case is the enforcement of H.B. 101, which has been in effect since May 10, 2016. Plaintiffs seek to enjoin its enforcement in all cases, regardless of the circumstances. However, Plaintiffs have failed to meet their burden of proving that the four elements of the test for obtaining a preliminary injunction weigh clearly and compellingly in their favor.

## II. PLAINTIFFS HAVE FAILED TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs have not demonstrated a substantial likelihood of success on the merits. The State has challenged the merits of all of Plaintiffs' claims in the State's motion to dismiss (doc. 36), which motion is incorporated herein by reference. The arguments in the State's motion apply directly, and with even great force, in showing that Plaintiffs have not demonstrated a substantial likelihood of success on the merits. The arguments apply directly because, although Plaintiffs' have submitted declarations in support of their motion, the averments in their declarations either mirror allegations in the Complaint, constitute immaterial background information, or are objectionable and should be given no weight. (*See* State's Evidentiary Objections to Plaintiffs' Declarations, doc. 38, which the State incorporates herein

by reference). The arguments apply with even greater force here because the burden Plaintiffs must shoulder to obtain preliminary injunctive relief is substantially higher than the burden it must shoulder to withstand a motion to dismiss.

It is particularly clear that Plaintiffs have not satisfied their burden to demonstrate a substantial likelihood of success in establishing the Court's subject matter jurisdiction. In the 12(b)(1) portion of its motion to dismiss, the State raised several arguments challenging the Court's subject matter jurisdiction. For their part, Plaintiffs have not affirmatively demonstrated the Court's jurisdiction, and it is Plaintiffs' burden to do so. *Endico v Fonte*, 485 F.Supp.2d, 411, 413 (S.D.N.Y. 2007) (stating that "as plaintiff has the burden of pleading and providing the existence of subject matter jurisdiction, he must demonstrate an appropriate prospect of success on that issue in order to obtain a preliminary injunction."). Thus, Plaintiffs have not demonstrated a substantial or even a minimal likelihood of success on the dispositive issue of the Court's subject matter jurisdiction.

Even if the Court had subject matter jurisdiction, Plaintiffs have not demonstrated any likelihood of success on the merits of its causes of actions, which raise facial challenges to H.B. 101 under the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and Fourteenth Amendment (collectively, "federal law"). To succeed on a facial challenge, Plaintiffs must demonstrate H.B. 101 in all its applications violates federal law. As shown in the 12(b)(6) portion of the State's motion to dismiss, Plaintiffs have not alleged facts that plausibly suggest that H.B. 101 in all its applications violates federal law. In fact, in the motion to dismiss, the State described several scenarios where it does not. These arguments apply with even greater force in showing that Plaintiffs have no likelihood of success on the merits of their facial challenges. The arguments in Plaintiffs' motion do not prove otherwise.

5

### A. No Substantial Likelihood of Success Under the ADA and Rehabilitation Act.[2]

Plaintiffs' arguments under the ADA only serve to highlight the deficiencies in their pleadings and evidence. According to Plaintiffs, to state a claim under the ADA, a "plaintiff must allege (1) that he is a qualified individual with a disability; (2) that he was either 'excluded from participation in or denied the benefits of some entity's services, programs, or activities,' or was otherwise discriminated against by the public entity, and (3) 'that such exclusion, denial of benefits, or discrimination was by reason" of his disability.'" (PI Motion at 12). Even assuming not appointing counsel constitutes an exclusion from participation in or denial of benefits of an activity, Plaintiffs have not alleged, or presented evidence showing, that any of them were not appointed counsel in a guardianship proceeding under H.B. 101. To the contrary, it is clear from their allegations and declarations that neither Katherine nor Anthony have ever participated in a guardianship proceeding. Likewise, DLC has not alleged facts that plausibly show any of its alleged "constituents," for whom DLC claims it has authority to sue, was wrongfully denied counsel in a guardianship proceeding. Even if Plaintiffs had plausibly alleged they had been wrongfully denied counsel, to avoid dismissal under the *Rooker-Feldman* doctrine, it was incumbent on Plaintiffs to plead facts or produce evidence showing that the proceedings where the alleged denial occurred are not final. *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006). Plaintiffs have not done so.

With respect to the first element of their ADA claims, Plaintiffs assert that every guardianship respondent necessarily is "qualified" and "disabled" within the meaning of the

---

[2] Plaintiffs argue that their claims under the Rehabilitation Act ("RA") require the same showing as their claims under the ADA. (PI Motion at 17-18). Thus, the State's arguments in opposition to Plaintiffs' ADA claims apply with equal force to their RA claims.

ADA. (Pl Motion, p. 13). This assertion is inaccurate. A guardianship respondent is only alleged to be incapacitated. A groundless petition will not, on its face, come close to establishing that the respondent is incapacitated by clear and convincing evidence, as is necessary to grant a limited or full guardianship under Utah law. In such cases, the guardianship respondent will not be disabled within the meaning of the ADA. Plaintiffs' facial challenge under the ADA therefore fails.

Further, Plaintiffs have made no showing whatsoever that the third element of an ADA claim is satisfied, nor can they. Plaintiffs' Complaint contains only formulaic recitations of the third element, (*see* Complaint ¶¶ 76, 78, 97, 99), which are insufficient as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, Plaintiffs cannot demonstrate that in every case counsel is not appointed, it will necessarily be "by reason of" the potential ward's disabilities, as is necessary to sustain a facial challenge. To the contrary, cases could arise where a court's decision to not appoint counsel is "by reason of" the potential ward's capabilities, not disabilities. Specifically, in cases where the potential ward opposes the petition and wishes to represent himself, the probate court's evaluation of whether counsel is necessary will be largely driven by the court's assessment of whether the potential ward is capable of effectively representing himself. The more capable/less disabled the potential ward is, the more likely it will be that a court will determine that counsel is not necessary. For this addition reason, Plaintiffs' facial challenge under the ADA fails.

The cases cited by Plaintiffs undercut Plaintiffs' facial challenge. In *Franco-Gonzales v. Holder*, 767 F. Supp. 2d 1034 (C.D. Cal. 2010), cited by Plaintiffs, the court noted that the determination of what constitutes a "reasonable accommodation" for a person with a disability depends on an "individualized inquiry and requires a fact-specific, individualized analysis of the

7

disabled individual's circumstances and the accommodations that might allow meaningful access to the program." *Id.* at 1053. Plaintiffs' facial challenge denies the Court the opportunity to perform the requisite individualized inquiry.

Undeterred, Plaintiffs suggest that the *Franco-Gonzales* court made a sweeping statement, applicable to all mentally ill immigrants, that "it is difficult to conceive of any paradigm in which [they] could proceed *pro se*." (PI Motion at 16). Any such suggestion is inaccurate. Consistent with its commitment to an individualized analysis, the *Franco-Gonzales* court actually said, "it is difficult to conceive of any paradigm in which Martinez [i.e., a specific individual] could proceed *pro se*." *Id.* at 1054 (emphasis added).

H.B. 101 requires the sort of fact-specific, individualized analysis endorsed by *Franco-Gonzales* and the other cases cited by Plaintiffs. In particular, in every case where the potential wards does not appear with counsel of her choice, H.B. 101 requires probate courts to determine whether or not counsel is "necessary in order to protect the interests of the person." Utah Code Ann. § 75-5-303(d). This determination is highly case-specific and will ensure that counsel is appointed except when the court is satisfied counsel is not necessary to protect the proposed ward's interests.

### B. No Substantial Likelihood of Success Under the Due Process Clause.

As shown in Defendants' motion to dismiss, Plaintiffs' facial challenge to H.B. 101 under the Due Process Clause is untenable. The question of whether a proposed ward requires counsel to receive due process is highly case- and fact-specific, and Plaintiffs have not demonstrated that due process requires the appointment of counsel in every case, as is necessary to sustain a facial challenge. Plaintiffs have not cited any cases where a court held that there was a *per se*

8

constitutional right to counsel in all guardianship cases, whether under the Fourteenth Amendment or Sixth Amendment, as incorporated by the Fourteenth Amendment.

In applying the three-prong due process analysis, Plaintiffs attempt to stack the deck, focusing on full guardianships and the alleged loss of "physical liberty interests" and claiming that guardianships are, in a sense, worse than "incarceration or juvenile detention, which is generally temporary," because guardianships are allegedly "permanent unless specifically terminated—a rare occurrence." (PI Motion at 5). This is a flawed approach for a facial challenge. To sustain a facial challenge, Plaintiffs must show that H.B. 101, in all its applications, violates the Fourteenth Amendment, and full guardianships are disfavored under Utah law. Whenever H.B. 101 is applied, there is a strong presumption in favor of limited guardianships. Specifically, under Utah law, a court must "prefer a limited guardianship and may only grant a full guardianship if no other alternative exists. If the court does not grant a limited guardianship, a specific finding shall be made that nothing less than a full guardianship is adequate." Utah Code Ann. § 75-5-304. In a limited guardianship, for example, the guardian may be responsible for financial decisions only, and may not even have custody of the ward.

Plaintiffs' assertion that the termination of guardianships is a "rare occurrence" lacks foundation. This assertion is "supported" by a single district court order in which a limited guardianship is described as permanent, which simply means that the appointment lasts until terminated by the court. Under section 75-5-507, the ward or "any person interested in the ward's welfare" may petition to remove a guardian, or seek an order that the ward is no longer incapacitated.

Plaintiffs' attempts to analogize civil guardianship proceedings, where limited guardianships are the norm, to criminal prosecutions or other proceedings involving a loss of

9

physical liberty, must fail. Guardianship proceedings, which "concern the curtailment of a respondent's decision making autonomy with generally no physical deprivation of liberty," are distinguishable from, for example, civil commitment proceedings which by definition "addresses the physical liberty of the respondent." Jasmine E. Harris, *Processing Disability*, 64 Am. U. L. Rev. 457, 518 (2015). Under Supreme Court jurisprudence, a loss of physical liberty is equivalent to "actual imprisonment" or involuntary "commitment to an institution." *Lassiter v. Dep't. of Social Servs. of Durham County*, 452 U.S. 18, 25-26 (1981). That was the definition the Court had in mind when it held "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. *Id*. at 26-27.

Parents and guardians are not jailers, and Utah law criminalizes harmful, abusive, and neglectful conduct towards vulnerable adults, including subjecting them to isolation and inappropriate physical restraints. Utah Code Ann. § 76-5-111. Further, concurrent with the adoption of H.B. 101, Utah also adopted section 75-5-312.5 of the Utah Code, which provides that, unless a court orders otherwise, a "guardian may not restrict or prohibit the right of an adult ward to associate with a relative or qualified acquaintance of the adult ward."

Often, a guardianship will result in no discernible change from the child's perspective. A minor child may have been incapacitated for years. When the child turns 18, and their parents obtain a guardianship, there is a continuity not a deprivation, because her parents as guardians simply have the "same powers, rights, and duties respecting the ward that a parent has respecting the parent's unemancipated minor child." Utah Code Ann. § 75-5-312. Through their appointment as guardians, the parents have simply obtained the legal rights necessary for them to continue to do what they have done all along—provide care and comfort for their child.

10

The State has no quarrel with Plaintiffs' assertion that courts must be particularly vigilant in protecting the procedural-due-process protections due some classes of people—such as those without education or with intellectual disabilities. That is why H.B. 101 requires the appointment of counsel unless the court is satisfied there is no need for one to protect the interests of the proposed ward. Further, as outlined in Defendants' motion to dismiss, the guardianship statute provides a court other procedural tools, including the option to use a court-appointed physician and/or "visitor."

Finally, the State has a significant interest in encouraging parents to obtain the legal rights necessary to care for their adult children, where appropriate. If the circumstances are such that a court is satisfied that a lawyer is not needed to protect the child's interests, the delay and potential expense associated with retaining a lawyer may be avoided.

Accordingly, Plaintiffs have failed to demonstrate a substantial likelihood of success with their facial challenge under the Fourteenth Amendment.

### C. Defendants will not succeed in showing they are entitled to injunctive relief against the State.

Plaintiffs seek a preliminary injunction "barring the Defendants from implementing 101." (PI motion at 27). However, as discussed in the State's motion to dismiss, Plaintiffs have not alleged that the State implements H.B. 101. Likewise, Plaintiffs have not presented evidence that the State implements H.B. 101. Thus, the requested injunction should not be entered against the State.

### III. PLAINTIFFS ARE NOT IRREPARABLY HARMED.

Plaintiffs have failed to demonstrate any of them will be imminently denied counsel in a guardianship proceeding or that such denial would violate their rights under federal law. Thus, a preliminary injunction is inappropriate.

Further, there is no merit to Plaintiffs' assertion that they need not show irreparable harm. The State is unaware of any cases where the Tenth Circuit held that irreparable harm need not be shown when a violation of the ADA occurs. Subsequent to the Tenth Circuit cases cited by Plaintiffs, which address other statutes, the U.S. Supreme Court rejected the proposition that no showing of irreparable harm is required in the context of violations of (1) the Patent Act, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006), and (2) various environmental and administrative statutes, *Winter v. NRDC*, 555 U.S. 7, 22 (2008). Since then, federal courts have required a showing of irreparable harm in the context of ADA claims. *See, e.g.*, *Mrs. H. v. Montgomery Co. Bd. of Educ.*, 784 F.Supp.2d 1247, 1268-69 (M.D. Ala. 2011). Further, although the Tenth Circuit presumes harm with certain constitutional violations, it "nonetheless engage[s] in our traditional equitable inquiry as to the presence of irreparable harm in such a context, [remaining] cognizant that the violation of a constitutional right must weigh heavily in that analysis." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Thus, this Court should require Plaintiffs to demonstrate irreparable harm.

Here, for the same reasons Plaintiffs have no standing, Plaintiffs will not be irreparably harmed absent an injunction. There are no allegations or evidence showing Katherine or Anthony, or any of DLC's constituents, will imminently face a guardianship proceeding. Further, Katherine and Anthony may, by acting now, avoid potential future harm, however speculative, associated with their parents seeking guardianships. If they have concerns that their

parents may overreach in a guardianship proceeding, Katherine and Anthony may designate another person to serve as guardian in the event they become incapacitated. Utah Code Ann. § 75-5-311(2) & (3)(a). They may also employ advance directives, durable powers of attorneys, and trusts. Such tools allow the person to make their wishes known now, when they have sufficient capacity to do so.

Likewise, the fact that any alleged violation would occur, if at all, in a court setting negates a showing of irreparable harm. Harms are curable in court because the ward or any other interested party may petition the probate court to modify the guardianship order or replace the guardian. Utah Code Ann. § 75-5-307. The ward or an interested party may also seek an appeal, writ of mandate, or stay. Suits for breach of fiduciary duty may be brought against the guardian.

Finally, Plaintiffs' long delay in seeking injunctive relieve further undermines their claims of irreparable harm. "[D]elay in seeking preliminary relief cuts against finding irreparable injury." *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Social and Rehabilitation Servs.,* 31 F.3d 1536, 1543–44 (10th Cir.1994); *see GTE Corp. v. Williams*, 731 F.2d 676, 678-79 ("Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm pendente lite[.]") (citing cases). H.B. 101 was signed into law on March 30, 2016, and became effective on May 10, 2016. DLC participated in the committee hearings leading up to the enactment of H.B. 101. Yet, Plaintiffs offer no explanation as to why they did not seek an injunction for well over a year, and H.B. 101 will sunset in less than a year, on July 1, 2018. (See Exhibit 1, hereto). Further, Plaintiffs have not presented any admissible evidence showing that anyone has been wrongfully denied counsel as a result of H.B. 101, or that such a denial caused any harm that was irreparable.

### IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST IS NOT IN PLAINTIFFS' FAVOR.

The balance of equities favor Defendants. Plaintiffs have not presented any admissible evidence that their rights, or anyone else's rights, have been violated as a result of of H.B. 101, or that this law has injured anyone. Conversely, H.B. 101, on its face, allows parties to avoid any costs and delays associated with retaining counsel in cases where counsel is not needed to protect the potential ward's interest.

Likewise, the public has a substantial interest in enforcing a statute, passed by their democratically elected legislature, that neither violates the U.S. Constitution or any federal statutes, and which has not shown to have resulted in any harm, reparable or irreparable, in the fifteen months since it came into effect, and which may allow parties to avoid the costs and delays associated with retaining counsel when counsel is truly not needed. Further, a blanket injunction does not serve the public interest when the question of whether a violation of federal law has occurred depends on the facts of each case.

### CONCLUSION

For the reasons stated above, this Court should deny Plaintiffs' Motion for a Preliminary Injunction.

DATED: August 4, 2017.

                OFFICE OF THE UTAH ATTORNEY GENERAL

                /s/ David N. Wolf
                DAVID N. WOLF
                LAURA K. THOMPSON
                ANDREW DYMEK
                Assistant Utah Attorneys General
                *Counsel for Defendant State of Utah*