BRENT M. JOHNSON (5495)
General Counsel
NANCY J. SYLVESTER (14347)
Associate General Counsel
Administrative Office of the Courts
P.O. Box 140241
Salt Lake City, Utah 84114-0241
Tel: (801) 578-3800

*Counsel for Defendants Utah Judicial Council
and the Utah Administrative Office of the Courts*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, KATHERINE C., and ANTHONY M.<br><br>Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH, THE UTAH JUDICIAL COUNCIL, and the UTAH ADMINISTRATIVE OFFICE OF THE COURTS<br><br>Defendants. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br><br><br>Case No. 2:17-CV-00748-RJS<br><br>Judge Robert J. Shelby<br>Magistrate Judge Warner |

## MOTION TO DISMISS

The Utah Judicial Council and the Utah Administrative Office of the Courts, by and through counsel Brent M. Johnson and Nancy J. Sylvester of the Utah Administrative Office of the Courts, move this court pursuant to Rules 12(b)(1) and (12)(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' complaint.

## INTRODUCTION

The Utah Judicial Council (Council) and the Utah Administrative Office of the Courts (AOC) join the State in its introduction of the case and add that this court also lacks subject matter jurisdiction over the Council and AOC. Neither the Council nor the AOC has caused the plaintiffs' alleged injuries, nor could they.

Plaintiffs claim that the Council and the AOC are responsible for implementing H.B. 101. In their complaint they assert that the Council "makes policy for the judiciary and has the constitutional power to adopt uniform rules for the administration of the Utah State Court system…." And also that both entities are "responsible for the implementation of ….section 75-5-303 in general and H.B. 101, specifically…." (*See* Complaint at ¶¶ 43, 44; *see also* ¶ 100). In their Motion and Memorandum in Support for a Preliminary Injunction, they attach a letter from Brent Johnson as support for this argument. But what makes this argument a non-starter is that it ignores the fundamental role that each entity plays: that of providing administrative and operational support to the state's judges, not dictating how Utah's judges apply the law. Plaintiffs conflate implementation of the law with application in individual cases.

Even if their concerns are valid, they have failed to challenge H.B. 101 through proper channels, namely through state court processes. Said differently, and as the State argues, Plaintiffs' claims arise under state law, not federal law. Because of this, and in conjunction with the limited roles the Council and the AOC play with respect to H.B. 101, plaintiffs' alleged injuries are not redressable by these entities. Their complaint should be dismissed as to the Utah Judicial Council and the Utah Administrative Office of the Courts.

## ARGUMENT

I.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE**

## CLAIMS AGAINST THE COUNCIL AND THE AOC

The Council and the AOC join the State in its explanation of the law surrounding a 12(b)(1) motion to dismiss and also join the State's arguments regarding 1) Plaintiffs' claims arising under state, not federal law and 2) Plaintiffs' lack of standing.

As noted in the introduction section above, even if Plaintiffs' concerns are valid, they have failed to challenge H.B. 101 through proper channels, namely through the state court process. This supplements the State's arguments. Although Katherine C. and Anthony M. claim the threatened injury of becoming subject to guardianship at an indeterminate point in the future, their families have yet to petition for it. And by the time they do, the provisions of H.B. 101 may have already sunsetted.

But even if, arguendo, they become subject to a guardianship petition and the accompanying judicial process before then, they will have multiple options available to them to protect their interests: 1) hire their own counsel upon the filing of the petition; 2) independently request (potentially no- or low-cost) counsel through the Guardianship Signature Program; 3) request a volunteer court visitor or independent physician to interview or examine them; 4) state their objections to the imposition of guardianship at the hearing; 5) appeal the decision of the district court either directly or through an extraordinary writ; or 6) request a modification or termination of the guardianship after imposition. *See* UTAH CODE §§ 75-5-303, 75-5-307. H.B. 101 prohibits none of these measures. Moreover, an individual judge in Plaintiffs' threatened guardianship cases may still appoint counsel, contrary to their parents' request not to—if they in fact request that no counsel be appointed. But only the facts and circumstances of their individual cases *at the time they are filed* will dictate the ultimate result.

As the State notes, the case of *Gromer v. Mack*, 799 F.Supp.2d 704, 710 (N.D. Tex.

2011) is instructive here. State laws traditionally govern probate proceedings, and in so doing, confer jurisdiction on state courts, not federal. The *Gromer* "court conclude[d] that it [did] not have federal-question jurisdiction over this case because it would not have had subject matter jurisdiction over the state guardianship application had it been filed initially in this court." *Id.* at 711. And in *Gromer* as in here, the Plaintiff anticipated the deprivation of a constitutional right, but could point to no actual deprivation. So the court could not "conclude that [petitioner's] application for guardianship 'necessarily' raised an actually disputed constitutional issue based on the possibility that the probate court might deprive Gromer of a constitutional right." *Id.* at 710.

1. **The Roles of the Council and the AOC are Limited with Respect to Implementing Legislation; A Judgment Or Injunction Against Them Will Not Redress Plaintiffs' Alleged Injuries**

The crux of the problem with Plaintiffs' naming the Council and the AOC in their complaint revolves around redressability. They appear to grossly overestimate the role of the Council and the AOC in "implementing" legislation, and as mentioned above, conflate the concept of implementation with application of the law.[1] Simply stated, there is nothing to enjoin because these entities are not involved in the judges' decisions to appoint counsel in guardianship cases.

      a. The Council's Authority to Enact Policies and Implement Legislation is Limited to Judicial Administration and Operations

Article 8, section 12 of the Utah Constitution created the Utah Judicial Council; Utah

---

1 Arguably, Utah's governor is the only person who "implements" legislation and he does so by signing bills into law. H.B. 101 was "implemented" on May 10, 2016. *See, e.g., In re Application of Consumers Energy Co. for Reconciliation of 2009 Costs*, 307 Mich. App. 32, 45, 859 N.W.2d 216, 224 (2014), aff'd on other grounds, 499 Mich. 885, 876 N.W.2d 566 (2016) ("[W]e conclude that the most principled way to determine when a rule or law has been 'implemented' is to refer to the effective date thereof.)

Code section 78A-2-104 and Utah Code of Judicial Administration Rules 1-102 and 2-201 populate its basic functions. *See* Addendum A. The sum of the Council's authority and purpose is probably best captured in Rule 2-201(1), which states, "the Council may establish policy by adopting rules governing any *administrative function* of the judiciary" (emphasis added), and also in section 78A-2-104(4)(a), which states, "The council has authority and responsibility to…establish and assure compliance with policies for the operation of the courts…." So the Judicial Council is charged with implementing policies and procedures surrounding the administration of the judiciary and the operation of the courts. It does so through rules it enacts in the Utah Code of Judicial Administration. Individual judges, on the other hand, are charged with applying legislatively-created policies, including H.B. 101, to the facts and circumstances of each case. So while the Utah Judicial Council may adopt policies and rules in response to legislation, it does so only from the perspective of aligning the judiciary's administrative and operational processes with the laws its judges are expected to apply.

A good example of this was when the Council enacted Utah Code of Judicial Administration Rule 4-401.03 in response to the legislature's amendments to Utah Code section 78A-2-208. Section 78A-2-208 requires that courts advise the public when proceedings are being recorded. Rule 4-401.03 created the administrative process for courts to follow: "When an electronic or digital recording system is used, courts will post written notice to the public that the proceedings are being recorded." But not all legislation requires accompanying rules under the Code of Judicial Administration. In fact, when the legislature adopted H.B. 101, the Council did not adopt or amend any rules because it determined that no changes were needed.

H.B. 101 requires the judge to make findings that "counsel is not necessary in order to protect the interests of the person" when four other conditions are met. UTAH CODE §

5

75-5-303(d). That involves the judge's application of facts to legislatively-created policy or law in individual cases. Although in many ways it is procedural, it does not involve court administration or operations. Guardianship reporting, on the other hand, *has* required court administration. Utah Code section 75-5-312(3)(f)(i) states, "A guardian is required to report the condition of the ward and of the estate which has been subject to the guardian's possession or control, *as required by the court or court rule*." (Emphasis added.) The questions that immediately come to mind with that requirement are "how?" and "when?" The Judicial Council answers those questions in Code of Judicial Administration Rule 6-501, Reporting requirements for guardians and conservators. How: "The report, inventory and accounting shall contain sufficient information to put interested persons on notice of all significant events and transactions during the reporting period….the court may direct that a report or accounting be prepared with content and format as it deems necessary." UT R J ADMIN Rule 6-501(5). When: "The guardian shall file with the appointing court a report on the status of the ward no later than 60 days after the anniversary of the appointment….The reporting period is yearly from the appointment date unless the court changes the reporting period on motion of the guardian." *Id.* ¶ 6.

These procedures are administrative and do not require a judge to interpret the law and apply facts in the same way as a judge does in making the determination of whether to appoint counsel under H.B. 101. But they do put parties on notice of what the court expects them to do to administratively comply with the legislature's reporting requirement. Contrast 6-501's administrative procedures with those of the Utah Supreme Court's Rules of Civil Procedure, which "pertain[] to and prescribe[] the practice and procedure or the legal machinery by which the substantive law is determined or made effective*." Brown & Root Indus. Serv. v. Indus.*

*Comm'n of Utah*, 947 P.2d 671, 675 (Utah 1997) (internal quotations omitted). The Utah Rules of Civil Procedure govern how one takes their case from beginning to end through the court system, but like statutory procedures, they do not directly address judicial administration or operations. As this should make clear, the Council's authority to implement legislation is restricted to court administration and operations.

        b.  The AOC's Authority to Implement Legislation is Just as Limited as the Council's

Utah Code Section 78A-2-107 and Utah Code of Judicial Administration Rule 3-301 dictate the AOC's authority and functions. *See* Addendum B. Section 78A-2-107(1) – (3) provides that the AOC, through the Court Administrator, shall, among other administrative functions, "organize and administer all of the nonjudicial activities of the courts; assign, supervise, and direct the work of the nonjudicial officers of the courts; [and ] implement the standards, policies, and rules established by the council…." Rule 3-301 reiterates and expands on these functions.

Because the Council did not promulgate any "standards, policies, and rules" with respect to H.B. 101, the AOC did not implement them. The only "implementation" the AOC engaged in was educating judges on legislative updates, including on H.B. 101, updating the guardianship bench book and creating a bench card for judges, and making a form available regarding H.B. 101's affidavit requirement. Regarding the bench book and bench card, the AOC listed what H.B. 101 says and reminded judges that the Guardianship Signature Program is an available resource when the appointment of counsel is warranted. *See* Addendum C. And regarding the form affidavit, the form follows the statutory requirements and is posted on the Utah State Courts' website among its other guardianship forms as an administrative courtesy. *See*

Addendum D. The AOC's provision of it to the public does no more to encourage its use than does the provision of a divorce or eviction form.

Beyond that, the AOC, like the Council, is never directly involved in the judges' decisions to appoint counsel in guardianship cases. It has simply provided administrative resources to assist in the administration of guardianship cases. This is not the kind of "implementation" that should—nor appears to be—concerning Plaintiffs.

        c.   The Judiciary is an Independent Branch of Government; its Judges Exercise Independent Judgment

Perhaps most unsettling is Plaintiffs' implication that the AOC and Judicial Council's "implementation" of H.B. 101 means they may be instructing individual judges to deny counsel to anyone whose parent(s) file for guardianship against them. Plaintiffs also appear to suggest that the AOC and Judicial Council could—and should—instruct judges to disregard the law. *See generally,* Plaintiffs' Claims for Relief. The Utah Constitution is instructive on why neither scenario should ever come to pass.

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

UTAH CONST. ART. V, § 1.

In simple terms, at both the state and federal levels the Legislative branch is charged with law-making, the Executive branch is charged with enforcing those laws, and the Judicial branch is charged with interpreting and applying those laws. The legislature has granted some law-making authority to the Utah Supreme Court and the Utah Judicial Council in the form of the authority to enact rules governing the judiciary's processes, administration, and operations.

*See* UTAH CONST. ART. VIII, § 4; UTAH CONST. ART. VIII, § 12 UTAH CODE §§ 78A-2-104, 78A-2-107. But that law-making authority cannot override the policies the legislature enacts for the entire state. And individual judges are expected to apply the legislature's laws, regardless of their personal feelings on the policies behind them. UT R J ADMIN CODE, CANON 2, CMT 1. A 2011 Utah Supreme Court case illustrates this principle well:

> With a notable exception, the accepted processes for amending our laws do not include judicial reconsideration or adaptation of the law by our judges, who are the least accountable of our government officials. For the most part, the role of modern judges is to interpret the law, not to repeal or amend it, and then to apply it to the facts of the cases that come before them. The process of interpretation, moreover, involves the judge in an exercise that implicates not the judge's own view of what the law should be, but instead a determination of what the law is as handed down by the legislature or framers of the constitution. The judge, in other words, is not a primary lawgiver but instead an agent for the legislature or framer that played that role. This allocation of power again is deliberate. The more politically accountable bodies of government make new laws; judges, who are more insulated from political processes, simply interpret them and attempt to apply them in an objective, evenhanded manner.

*State v. Walker*, 2011 UT 53, ¶ 31, 267 P.3d 210, 217–18. The notable exception the Court refers to in the first sentence is, of course, when a judge determines that a statute is unconstitutional. Only then will she deviate from the usual course.

Although the State makes arguments defending the constitutionality of H.B. 101, the AOC and the Council do not join in them because neither of them is charged with that responsibility or authority. The same reasons that the AOC and Council will not join in those arguments are the reasons they will not instruct judges to disregard laws. The judiciary is a neutral, independent branch of government, and judges are expected to be impartial and free from undue influence, including from the AOC and the Judicial Council. Both entities are extremely careful to avoid interference with that standard and support judges' in maintaining their integrity and independence. This is why:

9

> In the American system of justice, the fairness, impartiality, stability, and wisdom of our legal system depend in major part on the integrity of the men and women serving as judges. We expect those to whom we entrust our lives, fortunes, and honor to exemplify those virtues. Respect for the rule of law is necessary for a democracy to function and to flourish. As a consequence, respect for the rule of law by those we select as judges is mandatory.

*In re Discipline of Harding*, 2004 UT 100, ¶ 1, 104 P.3d 1220, 1221.

### 2. Like the State, the AOC and the Council have Sovereign Immunity

The AOC and the Council join the State in its sovereign immunity arguments as a basis for lack of subject matter jurisdiction and add the following with respect to the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the United States Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). The allegations in the Plaintiffs' complaint involve the Utah Administrative Office of the Courts and the Utah Judicial Council, both state entities. The Eleventh Amendment to the U.S. Constitution protects a state from being sued in federal court unless the state has consented to being sued. *See Id.; Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Authority*, 577 F.3d 1255, 1258 (10th Cir. 2009) ("The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.") The State of Utah has not consented to suit.    This

action is therefore barred by the Eleventh Amendment, and as such, subject matter is lacking.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

As the State notes, to survive a 12(b)(6) motion to dismiss, "[a] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[C]omplaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive. *Id.* at 1191. For all of the reasons that this complaint should not survive a 12(b)(1) motion because subject matter jurisdiction is lacking, this complaint should not survive a 12(b)(6) motion. Plaintiffs have simply failed to allege injuries that are redressable against the AOC and the Council because neither entity "implements" legislation in the way they suggest. So Plaintiffs have failed to state a claim upon which relief may be granted.

## CONCLUSION

For all of the reasons above, this court lacks subject matter jurisdiction over—and Plaintiffs have failed to state a claim upon which relief can be granted as to—the Utah Judicial Council and the Utah Administrative Office of the Courts. Plaintiffs' complaint should be dismissed.

Dated this 4th day of August, 2017.

/s/Nancy J. Sylvester
Counsel for Defendants Utah Judicial
Council and Utah Administrative Office of
the Courts


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was delivered to the court's CM/ECF electronic filing system as follows on this 7th day of August, 2017; email service was sent on the 4th of August, 2017.

Alfred C. Pfeiffer, Jr. (pro hac vice)
Kyle A. Virgien (pro hac vic)
Dorottya Schranz (pro hac vice)
John H. Steinbach (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California   94111-6538
Telephone:   415.391.0600
Facsimile:   415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (pro hac vice)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:   415.343.0762
Facsimile:   415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:   801.521.9862
Facsimile:   801.532.2850
aclu@acluutah.org
*Attorneys for Plaintiffs Disability Law Center, Katherine C., and Anthony M.*

DAVID N. WOLF (6688)
LAURA K. THOMPSON (6328)
ANDREW DYMEK (9277)
Assistant Utah Attorneys General
Utah Attorney General's Office
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: lathomps@agutah.gov
E-mail: adymek@agutah.gov
*Counsel for Defendant State of Utah*

/s/ Nancy J. Sylvester
Counsel for Defendants Utah Judicial Council and Utah Administrative Office of the Courts