Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.343.0762
Facsimile: 415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:  801.521.9862
Facsimile:  801.532.2850
aclu@acluutah.org

*Attorneys for Plaintiffs Disability Law Center, Katherine C., and Anthony M.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| Disability Law Center, Katherine C., and Anthony M.<br><br>    Plaintiffs,<br><br>v.<br><br>The State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts<br><br>    Defendants. | Case No. 2:17-cv-00748-RJS-PMW<br><br>**PLAINTIFFS' MOTION TO PROCEED USING PSEUDONYMS AND MEMORANDUM IN SUPPORT**<br><br>Judge Robert J. Shelby<br><br>Chief Magistrate Judge Paul M. Warner |

## RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION

Pursuant to Federal Rule of Civil Procedure 7(b), Plaintiffs Katherine C. and Anthony M. ("Individual Plaintiffs") move for leave to use pseudonyms in connection with their participation in this case in order to preserve their constitutional right to privacy.  Counsel for the Individual Plaintiffs conferred with counsel for Defendants the State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts ("Defendants") about this motion.  The Individual Plaintiffs agreed to make their identities known to the Defendants immediately upon the start of discovery in this case.  Additionally, the Individual Plaintiffs agreed to provide Defendants with their full names in the event of a dismissal with prejudice or adjudication on the merits prior to discovery.  With these assurances in place, the Defendants agreed not to oppose this motion.

The Court should grant the Individual Plaintiffs leave to use pseudonyms because this high-profile case concerns matters of a highly sensitive and personal nature: the Individual Plaintiffs' medical histories, employment information, and familial relationships.

## INTRODUCTION

As outlined in their Complaint (Dkt. No. 2) and Motion for Preliminary Injunction (Dkt. No. 8), the Individual Plaintiffs have brought this challenge in order to protect their constitutional and statutory right to counsel in guardianship proceedings.  Dkt. No. 2, at ¶ 5; Dkt. No. 8, at 4.  They additionally seek a preliminary injunction halting the implementation of Utah House Bill 101 ("H.B. 101"), which removes the requirement of counsel in particular guardianship cases.  Dkt. No. 8, at 27.

In order to explain how H.B. 101 threatens their rights, both Katherine and Anthony must detail the nature and extent of their respective disabilities.  Such disclosure without the

protection of anonymity could have severe personal and professional consequences for both Plaintiffs.  Additionally, because organizational plaintiff the Disability Law Center ("DLC") is not requesting to proceed under a pseudonym, the public will still know who is suing the State of Utah and its government agencies.  Thus, there will still be an identifiable plaintiff even if Katherine and Anthony are allowed to proceed anonymously.

## FACTUAL BACKGROUND

In 2016, the Utah state legislature passed the Disabled Adult Guardianship Amendments, or H.B. 101, codified in Section 75-5-303(d) of the Utah Code.  Dkt. No. 2, at ¶ 52.  H.B. 101 removes the guarantee of counsel for a prospective ward in a guardianship hearing if: (i) he or she is the biological or adopted child of the petitioner; (ii) the value of his or her entire estate does not exceed $20,000; (iii) he or she appears in court with the petitioner; (iv) he or she is given the opportunity to communicate, to the extent possible, his or her acceptance of the appointment of the petitioner; and (v) the court is satisfied that counsel is not necessary in order to protect his or her interests.  Dkt. No. 2, at ¶ 54.

Individual Plaintiff Katherine C. has paranoid schizophrenia.  Dkt. No. 8, Ex. 4, at ¶ 8.  As a result of her condition, she has previously been committed to Salt Lake Behavioral Health.  Dkt. No. 8, Ex. 4, at ¶¶ 11-12.  She lives with her parents in Sandy, Utah and has less than $20,000 in financial assets.  Dkt. No 8, Ex. 4, at ¶¶ 15, 18.  Katherine is concerned that her parents will try to place her under a legal guardianship to control her activities.  Dkt. No. 8, Ex. 4, at ¶ 17.  Living with mental illness has been a frightening and confusing experience for Katherine.  Dkt. No. 8, Ex. 4, at ¶ 5.  Although Katherine recognizes that she must disclose her disability and financial status in order to prove that she could be subject to the provisions of H.B.

101, she has already suffered painful rejection from some friends and family members who found out about her paranoid schizophrenia.  Dkt. No. 8, Ex. 4, at ¶ 15.

Individual Plaintiff Anthony M. has multiple developmental disabilities, including general anxiety disorder, microcephaly, and club feet.  Dkt. No. 8, Ex. 5, at ¶ 5.  He works as a custodian for a Utah school district and receives continuing care and financial support from his parents.  Dkt. No. 8, Ex. 5, at ¶¶ 2-3.  He has less than $20,000 in total financial assets.  Dkt. No. 8, Ex. 5, at ¶ 11.  Anthony's mother has indicated that she may petition to create a guardianship in order to facilitate care for him.  Dkt. No. 8, Ex. 5, at ¶ 10.  The extent of Anthony's various developmental disabilities and the ways they impact his day-to-day life is information Anthony considers extremely personal.  Anthony M. Decl., at ¶ 4.  Anthony similarly recognizes that the claims he brings in this case require that he disclose his disability and financial status to prove that he could be subject to the provisions of H.B. 101.  However, he also worries about the personal and professional consequences of having his full name published.  Anthony M. Decl., at ¶¶ 4-5.

## ARGUMENT

Parties frequently proceed under pseudonyms in cases that require them to disclose sensitive, personal information.  *E.g.*, *Heller v. Doe ex rel. Doe*, 509 U.S. 312 (1993) (constitutional challenge to involuntary commitment of the developmentally disabled); *Femedeer v. Haun*, 227 F.3d 1244 (10th Cir. 2000).  *See also Whalen v. Roe*, 429 U.S. 589 (1977); *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001); *Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000); *Roe v. Sherry*, 91 F.3d 1270 (9th Cir. 1996); *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) (First Amendment challenge to state's disclosure of referendum petition signatures); *Smith v. Doe*,

3

538 U.S. 84 (2003) (challenge to constitutionality of sex offender registry); *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) (suit alleging release of personal information in violation of federal statute); *Poe v. Ullman*, 367 U.S. 497 (1961) (challenge to constitutionality of state statutes prohibiting the use of contraceptive devices and the provision of medical advice about contraceptive devices). Reviewing cases in which a party has been permitted to proceed under a pseudonym, the Tenth Circuit identified the common feature among them: "there is an important privacy interest to be recognized." *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979).

Although the public ordinarily has some interest in knowing the names of parties to lawsuits, that interest cannot outweigh the overriding public interest in permitting individuals to challenge constitutional violations involving sensitive information. *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) ("[T]here is a substantial benefit to maintaining open court proceedings. . . . Nonetheless . . . there is also a public benefit in allowing some litigants to proceed anonymously."); *M.M. v. Zavaras*, 939 F. Supp. 799, 801–02 (D. Colo. 1996) ("The issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant. Of course privacy interests are recognized in particular circumstances to be in the public interest."); *Coe v. U.S. Dist. Court for Dist. of Colo.*, 676 F.2d 411, 416 (10th Cir. 1982) ("[W]here the issues involved are matters of a sensitive and highly personal nature, . . . the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979))); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000) ("[P]ermitting

4

plaintiffs to use pseudonyms will serve the public's interest in this lawsuit by enabling it to go forward.").

The Individual Plaintiffs' private medical, financial, and familial information is at stake in this litigation. The basis of Individual Plaintiffs' legal claims is that, by virtue of their disabilities and the provisions of H.B. 101, they face a deprivation of their statutory and constitutional right to counsel in guardianship proceedings. If the Individual Plaintiffs are not permitted to defend their rights pseudonymously, they will be compelled to choose between divulging extremely sensitive information and dropping this attempt to protect their—and others'—constitutional rights.

Moreover, because the Defendants in this action are government entities, the balance of interests is weighted toward allowing anonymity: parties to a lawsuit are regularly "allowed . . . to proceed anonymously [when they are] challenging the constitutional, statutory or regulatory validity of government activity." *Coe*, 676 F.2d at 416 (quoting *S. Methodist*, 599 F.2d at 713); *see also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong."). This is in part because, unlike in civil suits between private parties, "such suits involve no injury to the Government's 'reputation.'" *Coe*, 676 F.2d at 416–17 (quoting *S. Methodist*, 599 F.2d at 713). Therefore, this case warrants the use of pseudonyms.

5

## I. THE INDIVIDUAL PLAINTIFFS SHOULD BE PERMITTED TO PROCEED PSEUDONYMOUSLY BECAUSE THE CASE INVOLVES MATTERS OF A SENSITIVE AND HIGHLY PERSONAL NATURE.

The Individual Plaintiffs should also be allowed to proceed under pseudonyms because this case involves "matters of a highly sensitive and personal nature." *Femedeer*, 227 F.3d at 1246 (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992) (recognizing that plaintiffs are permitted to proceed pseudonymously when anonymity is necessary to preserve privacy in such matters). This case involves potential disclosure of medical information about Plaintiffs' disabilities—quintessentially sensitive and highly personal matters. Requiring Individual Plaintiffs to use their full names in connection with that information would unnecessarily and invasively violate their right to medical confidentiality.

Courts routinely permit parties to proceed under a pseudonym where such private and potentially stigmatizing medical and mental health information would otherwise be disclosed and associated with an individual. *See, e.g.*, *Sherry*, 91 F.3d 1270 (pseudonym used on appeal where HIV status would otherwise be revealed) (order permitting use of pseudonym docketed Sept. 26, 1995); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (pseudonym used where bipolar disorder was at issue); *N.Y. Blood Ctr.*, 213 F.R.D. at 112–13 (permitting use of pseudonym by plaintiff with hepatitis B); *Patient v. Corbin*, 37 F. Supp. 2d 433, 434 (E.D. Va. 1998) (finding plaintiff and her husband have a substantial privacy interest in protecting the fact that plaintiff's husband is HIV positive); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 465–69 (E.D. Pa. 1997) (pseudonym used where case involved psychiatric disorders, including a general anxiety disorder, dysthymic disorder, and adult attention deficit disorder); *Compassion in Dying v. Washington*, 850 F. Supp. 1454, 1456 & n.2 (W.D. Wash. 1994)

(pseudonyms used to protect privacy of plaintiffs with terminal illnesses, including cancer, emphysema, and AIDS), aff'd., 79 F.3d 790 (9th Cir. 1996), *rev'd sub nom. Washington v. Glucksberg*, 521 U.S. 702 (1997); *Doe v. Blue Cross & Blue Shield*, 794 F. Supp. 72, 74 (D.R.I. 1992) (permitting use of pseudonym because, "[a]s a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion"); *Doe v. Att'y Gen. of the U.S.*, 723 F. Supp. 452, 453 n.1 (N.D. Cal. 1989), aff'd in part and vacated in part, 941 F.2d 780 (9th Cir. 1991) (pseudonym used to protect privacy where HIV status of plaintiff would otherwise be revealed); *Ingraham*, 364 F. Supp. at 541 n.7 (pseudonym used for prescription drug users, including a postoperative cancer patient and an individual suffering from migraine headaches).  The same principles should apply here, as associating Plaintiffs with their medical disclosures would violate precisely the kinds of "precious and fragile" privacy interests courts are careful to safeguard.

In support of Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 8), Individual Plaintiffs described the nature and extent of their respective disabilities. Dkt. No. 8, Ex. 4-5. Both Katherine and Anthony also discussed how these disabilities affect their daily lives. Dkt. No. 8, Ex. 4, at ¶¶ 15-17; Dkt. No. 8, Ex. 5, at ¶¶ 6-8.  Disclosure of this information in the Individual Plaintiffs' Declarations is necessary in order to explain why H.B. 101 will endanger their rights when they are subjected to a guardianship proceeding.  However, information about their respective disabilities is extremely sensitive and personal to both Individual Plaintiffs.  In Katherine's case, her paranoid schizophrenia has cost her relationships with loved ones who learned of her challenges.  Dkt. No. 8, Ex. 4, at ¶ 15.  Similarly, Anthony worries that having his true identity associated with his disabilities could have a negative impact on future job prospects

7

and relationships. Anthony M. Decl., at ¶¶ 4-5. Hence, to make their case, Individual Plaintiffs must reveal extraordinarily private details about their mental health, their medical conditions, and the status of their treatment.

The unvarnished descriptions of disabilities revealed in the complaint, the motion for a preliminary injunction, and the Individual Plaintiffs' supporting declarations are sensitive and highly personal accounts that are sufficient on their own to allow Individual Plaintiffs to proceed pseudonymously. *Femedeer*, 227 F.3d at 1246. Both Individual Plaintiffs have supplied private information about their disabilities, financial situation, and familial status in order to show how they will be affected by H.B. 101. For example, Katherine's and Anthony's disabilities and lack of significant financial assets put them in jeopardy of being subjected to a guardianship proceeding without any guarantee of counsel. Katherine has paranoid schizophrenia and has previously been involuntarily committed as a result. Dkt. No. 8, Ex. 4, at ¶ 8. Her disability has caused her to believe, *inter alia*, that her family members intended to kill her dog and that she was the fictional character Katniss Everdeen from the "Hunger Games" series of novels. Dkt. No. 8, Ex. 4, at ¶¶ 6-7. Anthony has developmental disabilities, including general anxiety disorder, microcephaly, and club feet. Dkt. No. 8, Ex. 5, at ¶ 5. These disabilities make it difficult for Anthony to walk, sleep, form relationships with his peers, and communicate his desires. Dkt. No. 8, Ex. 5, at ¶¶ 6-7. Disclosure of this highly sensitive medical information has had and will have alarming personal and professional consequences for Individual Plaintiffs. Dkt. No. 8, Ex. 4, at ¶¶ 15-16; Anthony M. Decl., at ¶¶ 4-5. Thus, compelling both Individual Plaintiffs to associate their full names with disclosures about their respective disabilities would encroach upon their most personal privacy interests. There is no way for them to proceed

without divulging extremely sensitive information about their conditions. Thus, without the protection of a pseudonym, the Individual Plaintiffs will be forced to broadcast this sensitive information to the world in order to vindicate their constitutional rights.

The high-profile nature of this lawsuit makes the Individual Plaintiffs' anonymity particularly important. Courts have recognized that desire to avoid media harassment around sensitive, personal subject matter can weigh in favor of anonymity for plaintiffs. *See, e.g.*, *Doe v. El Paso Cty. Hosp. Dist.*, No. EP-13-CV-00406-DCG, 2015 WL 1507840, at *6 (W.D. Tex. Apr. 1, 2015) (granting plaintiff's motion to proceed anonymously where his case rested on disclosure of graphic medical information and where he avoided press interviews concerning the case). Here, the challenge to H.B. 101 has already attracted interest from multiple media outlets. *See, e.g.,* "ACLU sues Utah over disabled people's right to a lawyer in guardianship cases," Deseret News, July 7, 2017, *available at* http://www.deseretnews.com/article/865684409/ACLU-sues-Utah-over-disabled-peoples-right-to-a-lawyer-in-guardianship-cases.html; "ACLU Sues Utah on Behalf of Disabled Adults," Courthouse News Service, July 11, 2017, *available at* http://www.courthousenews.com/aclu-sues-utah-behalf-disabled-adults/. Press coverage of this litigation will only increase as the case proceeds. If Katherine and Anthony are not allowed to proceed pseudonymously, they may be exposed to unwanted and unwarranted scrutiny from reporters or members of the public. Allowing Individual Plaintiffs to use pseudonyms will shield them from these forms of potential harassment.

Additionally, any public concern in knowing the parties to a suit is sufficiently obviated by the presence of named plaintiff DLC, which will continue to proceed under its actual identity

and has no need for pseudonymous protection. *C.f. Doe v. Sante Fe Indep. Sch. Dist.,* 933 F. Supp. 647, 652 (S.D. Tex. 1996) (permitting closed proceedings to protect the anonymity of minor plaintiffs where other named, adult plaintiffs were required to proceed in an open forum). DLC's involvement will ensure that any interested observer desiring to understand the nature of the suit will always be able to point to an identifiable plaintiff.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for leave to use pseudonyms should be granted.

DATED:  August 9, 2017                            LATHAM & WATKINS LLP

/s/ Kyle A. Virgien
Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:  415.343.0762
Facsimile:  415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)

        Leah Farrell (Bar No. 13696)
        AMERICAN CIVIL LIBERTIES UNION OF
        UTAH FOUNDATION, INC.
        355 N. 300 W.
        Salt Lake City, Utah 84103
        Telephone:  801.521.9862
        Facsimile:  801.532.2850
        aclu@acluutah.org

        Attorneys for Plaintiffs Disability Law Center, Katherine C., and Anthony M.