Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:  801.521.9862
Facsimile:  801.532.2850
aclu@acluutah.org

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.343.0762
Facsimile: 415.395.0950
ccenter@aclu.org

*Attorneys for Plaintiffs Disability Law Center,
Katherine C., and Anthony M.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center, Katherine C., and Anthony M.<br><br>Plaintiffs,<br><br>v.<br><br>The State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts<br><br>Defendants. | Case No. 2:17-cv-00748-RJS-PMW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge Robert J. Shelby<br><br>Chief Magistrate Judge Paul M. Warner |

**TABLE OF CONTENTS**

**Page**

I. THE PLAINTIFFS SATISFY THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION. ..................................................................................................................1

    A. The Plaintiffs Will Suffer Irreparable Harm. ............................................................1

        1. The Plaintiffs Need Show No Irreparable Harm Beyond the Loss of Constitutional and Statutory Rights. ..........................................................1

        2. The Plaintiffs Have Shown Irreparable Harm Beyond the Loss of Constitutional and Statutory Rights. ...........................................................2

    B. The Balance of Equities Favors an Injunction. ........................................................3

    C. The Plaintiffs Have Shown a Likelihood of Success on the Merits of Their ADA, Rehabilitation Act, and Constitutional Claims. .............................................4

        1. The Plaintiffs Pleaded Valid Claims over Which This Court Has Jurisdiction. ................................................................................................4

        2. The Plaintiffs Will Succeed on the Merits of Their Statutory Claims. ......................................................................................................4

            a. The Plaintiffs Will Show That All Guardianship Respondents Are Qualified Individuals with Disabilities. ...............5

            b. Guardianship Respondents' Loss of the Ability to Meaningfully Defend Against a Guardianship Subjects Them to Both (1) Exclusion From or Denial of Benefits of Public Activities and (2) Discrimination. .......................................5

            c. The Discrimination or Denial of Benefits Is on the Basis of Guardianship Respondents' Disabilities. ........................................7

        3. The Plaintiffs Are Likely to Succeed on Procedural Due Process...............7

        4. The Plaintiffs Are Likely to Succeed on Their Claim Under the Sixth Amendment (as Incorporated by the Fourteenth Amendment). ..................................................................................................8

    D. The Public Interest Requires a Preliminary Injunction............................................9

II. THE REQUESTED INJUNCTION DOES NOT ALTER THE STATUS QUO; RATHER, IT RESTORES THE LAST UNCONTESTED STATUS. ..............................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Civil Liberties Union of Kan. & W. Mo. v. Praeger,*
    815 F. Supp. 2d 1204 (D. Kan. 2011) ................................................................................10

*Atchison, Topeka & Santa Fe Ry. Co. v. Lennen,*
    640 F.2d 255 (10th Cir. 1981) ..............................................................................................1

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC,*
    562 F.3d 1067 (10th Cir. 2009) ..........................................................................................10

*District of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) ..............................................................................................................4

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ..............................................................................................................2

*Enyart v. Nat'l Conference of Bar Exam'rs, Inc.,*
    630 F.3d 1153 (9th Cir. 2011) ..............................................................................................9

*Fish v. Kobach,*
    840 F.3d 710 (10th Cir. 2016) .........................................................................................1, 3

*Franco-Gonzales v. Holder* (*Franco I*)*,*
    767 F. Supp. 2d 1034 (C.D. Cal. 2010) ................................................................................6

*Franco-Gonzales v. Holder* (*Franco IV*)*,*
    828 F. Supp. 2d 1133 (C.D. Cal. 2011) ................................................................................3

*Franco-Gonzales v. Napolitano* (*Franco II*)*,*
    No. 10-CV-02211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) .....................................6

*Franco-Gonzalez v. Holder* (*Franco III*)*,*
    No. 10-CV-02211, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) .......................................6

*In re Gault,*
    387 U.S. 1 (1967) ..................................................................................................................9

*Gohier v. Enright,*
    186 F.3d 1216 (10th Cir. 1999) ............................................................................................5

*Guttman v. Khalsa,*
    446 F.3d 1027 (10th Cir. 2006) ..........................................................................................4

*Henrietta D. v. Bloomberg,*
    331 F.3d 261 (2d Cir. 2003) ...............................................................................................7

*Heryford v. Parker,*
    396 F.2d 393 (10th Cir. 1968) ............................................................................................9

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.,*
    31 F.3d 1536 (10th Cir. 1994) ............................................................................................3

*Kikumura v. Hurley,*
    242 F.3d 950 (10th Cir. 2001) ............................................................................................1

*Logan v. Zimmerman Brush Co.,*
    455 U.S. 422 (1982) ............................................................................................................8

*Mrs. H. v. Montgomery Co. Bd. of Educ.,*
    784 F. Supp. 2d 1247 (M.D. Ala. 2011) .............................................................................2

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,*
    389 F.3d 973 (10th Cir. 2004), *aff'd and remanded sub nom.* *Gonzales v. O
    Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418 (2006) ..............................10

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999) ............................................................................................................7

*Planned Parenthood Ass'n of Utah v. Herbert,*
    828 F.3d 1245 (10th Cir. 2016) ..........................................................................................1

*Robertson v. Las Animas Cty. Sheriff's Dept.,*
    500 F. 3d 1185 (10th Cir. 2007) .....................................................................................5, 6

*Rooker v. Fidelity Trust Co.,*
    263 U.S. 413 (1923) ............................................................................................................4

*Schrier v. Univ. of Colo.,*
    427 F.3d 1253 (10th Cir. 2005) ........................................................................................10

*Star Fuel Marts, LLC v. Sam's East, Inc.,*
    362 F.3d 639 (10th Cir. 2004) ............................................................................................1

*Tennessee Valley Auth. v. Hill,*
    437 U.S. 153 (1978) ............................................................................................................2

*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016) ........................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..............................................................................................................2

## STATUTES

35 U.S.C. § 283 ......................................................................................................................2

42 U.S.C. § 12132 ...............................................................................................................5, 7

## REGULATIONS

28 C.F.R. § 35.130(b)(7)(i) ....................................................................................................6

## OTHER AUTHORITIES

Jasmine E. Harris, *Processing Disability*, 64 Am. U. L. Rev. 457, 518 (2015) ...............................9

Pamela B. Teaster et al., *Wards of the State: A National Study of Public
   Guardianship* (2005) .........................................................................................................8

Utah Department of Corrections, Visiting Privilege Levels,
   https://corrections.utah.gov/index.php/2014-10-30-20-13-24/14-visiting-
   information/1057-visiting-privilege-levels ...............................................................................9

I. **THE PLAINTIFFS SATISFY THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.**

   A. **The Plaintiffs Will Suffer Irreparable Harm.**

      1. **The Plaintiffs Need Show No Irreparable Harm Beyond the Loss of Constitutional and Statutory Rights.**

As Utah[1] admits, "the Tenth Circuit presumes harm with certain constitutional violations." Utah Opp., 12; *see also Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016); *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). The Plaintiffs show injury under the Fourteenth Amendment and thus require no further showing of irreparable harm. The Plaintiffs' statutory claims address the same deprivations as its constitutional claims, so they, too, benefit from this presumption. *See Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) (evaluating irreparable harm in a case brought on statutory grounds to enforce voting rights, and noting that "the violation of a constitutional right [to vote] must weigh heavily in that analysis").

The Plaintiffs' losses of statutory rights under the ADA and Rehabilitation Act—acts that provide statutory bases for injunctive relief—also require no further showing of irreparable harm. *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004) (When a plaintiff alleges a violation of "a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.") (citing *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001); *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981)). This rule makes sense: the traditional requirement that a plaintiff

---

[1] In response to the Motion for a Preliminary Injunction ("Mot."), the State of Utah ("Utah") and the Judicial Council ("JC") and Administrative Office of the Courts ("AOC") filed separate opposition briefs ("Utah Opp." and "AOC JC Opp.,"). This brief replies to both oppositions.

show irreparable harm derives from equity, but Congress can provide an injunctive remedy free from this equitable requirement.  *See Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 173 (1978) (holding that Congress's mandatory framing of statutory language removed the judiciary's equitable discretion not to issue an injunction).  Utah claims that the Supreme Court abrogated this rule when it rejected the Federal Circuit's presumption of irreparable harm in patent cases. Utah Opp., 12 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006)).  But the *eBay* holding relied on Congress's explicit incorporation of "the principles of equity" into the Patent Act's standard for injunctive relief.  *eBay*, 547 U.S. at 392 (quoting 35 U.S.C. § 283).[2] Because Congress included no such limitation in the ADA or Rehabilitation Act, the Plaintiffs' showing of a statutory violation suffices to prove irreparable harm.

        **2.    The Plaintiffs Have Shown Irreparable Harm Beyond the Loss of Constitutional and Statutory Rights.**

The Plaintiffs demonstrated in their motion the irreparable harm they face: the inability to participate effectively, with counsel, in a judicial proceeding that may strip them of their legal personhood.  *See* Mot. at 10-11.  The Defendants make three unavailing counterarguments. First, the Defendants reiterate their standing arguments from their motions to dismiss.  The Plaintiffs explain why those arguments fail in their opposition to that motion.  *See* MTD Opp., 9-18.  Second, the Defendants argue that harms occurring in court are curable by the court.  This argument assumes far too much, and would undermine the right to counsel altogether.  It is a

---

[2] Utah also cites *Winter*, but *Winter* dealt not with a presumption of irreparable harm but with a relaxed standard allowing a "possibility" of irreparable harm.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 12 (2008).  Finally, Utah claims that an Alabama decision "required a showing of irreparable harm in the context of ADA claims."  Utah Opp., 12 (citing *Mrs. H. v. Montgomery Co. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1268-69 (M.D. Ala. 2011)).  That court required no such showing, instead declining to reach the issue because neither party briefed it. *Id*.

fundamental reality that, just as disabled guardianship respondents standing alone before the court cannot meaningfully participate in their guardianship proceedings, they also cannot effectively assert their constitutional rights, appeal the denials of those rights, or make substantive appeals.  *See* Zahradnikova Reply Decl., ¶ 4; *Franco-Gonzales v. Holder (Franco IV)*, 828 F. Supp. 2d 1133, 1149 (C.D. Cal. 2011) (rejecting the government's argument that the right to an appeal cures the irreparable harm caused by a denial of counsel).  Third, the Defendants point to the 14 months it took the Plaintiffs to file this motion.  Because they "argue[] only the length of the delay and fail[] to show how that delay prejudiced [them]," their argument fails.  *Fish*, 840 F.3d at 753; *accord Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994).

      **B.**      **The Balance of Equities Favors an Injunction.**

Utah argues that the balance of interests tips in its favor because the Court should not consider the Plaintiffs' evidence that disabled Utahns have already suffered the loss of counsel under H.B. 101.  Utah Opp., 14; *see also* Zahradnikova Decl., ¶¶ 13-14 (showing harm has already occurred).  As the Plaintiffs explain in their response to the Defendants' evidentiary objections, the Court should consider this evidence.  But more importantly, the most relevant showing for a preliminary injunction is not the harm the Plaintiffs have already experienced, but the imminent harm they hope the preliminary injunction will prevent.  The Defendants further claim harm because some of their citizens may incur "costs and delays associated with retaining counsel."  Utah Opp., 14.  The Guardianship Signature Program mitigates or eliminates these costs and delays.  *See* Mot., 5.  Any minimal burdens remaining cannot outweigh the serious deprivations the Plaintiffs face.  *See Fish v. Kobach*, 840 F.3d at 755 ("There is no contest

between the mass denial of a fundamental constitutional right and the modest administrative burdens to be borne by . . . state and local offices . . . .").

### C. The Plaintiffs Have Shown a Likelihood of Success on the Merits of Their ADA, Rehabilitation Act, and Constitutional Claims.

#### 1. The Plaintiffs Pleaded Valid Claims over Which This Court Has Jurisdiction.

The Defendants' oppositions incorporate their arguments from their motions to dismiss. Utah Opp., 4-5, 11 (framing redressability argument as a lack of entitlement to injunctive relief); AOC JC Opp., 3. The Plaintiffs refer the Court to their opposition to those motions.

Utah further claims that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine, which denies a federal district court the jurisdiction to overturn a state court's final judgment. Utah Opp., 6 (citing *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006)); *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The Plaintiffs' claims do not ask this Court to overturn any state-court judgment, instead seeking review of the statutory structure that removes the guarantee of counsel in state-court proceedings. The *Rooker-Feldman* doctrine therefore does not apply and cannot bar this Court's jurisdiction. *See Guttman*, 446 F.3d at 1032. Thus even if the Defendants had raised this jurisdictional defense in their motions to dismiss—which they did not—it would fail.

#### 2. The Plaintiffs Will Succeed on the Merits of Their Statutory Claims.

Utah does not dispute the Plaintiffs' articulation of the standard under the ADA: a plaintiff must show (a) a qualified individual with a disability; (b) either "excluded from participation in or denied the benefits of some entity's services, programs, or activities," or

4

otherwise discriminated against by the entity, and (c) "that such exclusion, denial of benefits, or discrimination was by reason" of the individual's disability.  *Robertson v. Las Animas Cty. Sheriff's Dept.*, 500 F. 3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132).  Nor do the Defendants dispute that the same standard governs the Plaintiffs' Rehabilitation Act claims.

        a.    **The Plaintiffs Will Show That All Guardianship Respondents Are Qualified Individuals with Disabilities.**

Utah renews its argument from its motion to dismiss that the Plaintiffs cannot prove on a facial challenge that all guardianship respondents are qualified and disabled because frivolous petitions may be brought against people without disabilities.  Utah Opp., 6–7.  This reliance on unlikely hypotheticals misapprehends the analysis on a facial challenge.  *See* MTD Opp., 18-21.  The Defendants do not otherwise contest this requirement, so the Plaintiffs have at minimum shown a likelihood they will succeed.

        b.    **Guardianship Respondents' Loss of the Ability to Meaningfully Defend Against a Guardianship Subjects Them to Both (1) Exclusion From or Denial of Benefits of Public Activities and (2) Discrimination.**

The Plaintiffs may meet the second ADA requirement by showing either (1) an exclusion from or denial of benefits of public activities or (2) discrimination.  *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).  The Plaintiffs demonstrated a likelihood of success as to both.

Utah does not challenge the Plaintiffs' exclusion-from-benefits claim, except to state that the "Plaintiffs have not alleged, or presented evidence showing, that any of them were not appointed counsel in a guardianship proceeding under H.B. 101."  Utah Opp., 6.  The Plaintiffs submitted this evidence.  *See* Zahradnikova Decl., ¶¶ 13-14.  As the Plaintiffs explain in their responses to the Defendants' evidentiary objections, the Court should consider it.  And more

5

importantly, the Plaintiffs seek this preliminary injunction to prevent imminent future deprivations, which the Defendants do not contest the Plaintiffs have shown. *See* Mot., 6–8.; *see also* Zahradnikova Reply Decl., ¶¶ 3-4.

The Plaintiffs base their claim of discrimination on the theory that "public entities [must] 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'" *Robertson*, 500 F.3d at 1195; *accord* 28 C.F.R. § 35.130(b)(7)(i). Utah claims the Plaintiffs cannot show that an attorney is a reasonable accommodation for all guardianship respondents because what constitutes a reasonable accommodation is "'a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow meaningful access to the program.'" Utah Opp. at 7 (quoting *Franco-Gonzales v. Holder* (*Franco I*), 767 F. Supp. 2d 1034, 1053 (C.D. Cal. 2010)). This statement from *Franco I*, though true in ADA cases where the factual contours of the accommodation are at issue, does not apply here. One need look no further than the *Franco* case itself to see that the accommodation of counsel may be recognized for a group of individuals with intellectual and psychiatric disabilities. After the *Franco I* opinion that the Defendants cite, the court certified a class of people "who have a serious mental disorder or defect that renders them incompetent to represent themselves in detention or removal proceedings." *Franco-Gonzales v. Napolitano* (*Franco II*), No. 10-CV-02211, 2011 WL 11705815, at *2 (C.D. Cal. Nov. 21, 2011). It then found counsel to be a reasonable accommodation in a class-wide determination that required no individualized consideration of any class member's circumstances. *See Franco-Gonzalez v. Holder* (*Franco III*), No. 10-CV-02211, 2013 WL 8115423, at *1 (C.D. Cal. Apr. 23, 2013). The nature of this case—where all

6

guardianship respondents necessarily have disabilities that are alleged to meet the standard for guardianship, and face extraordinary personal consequences—makes it particularly suited to a similar reasonable-accommodation determination encompassing all respondents.

### c. The Discrimination or Denial of Benefits Is on the Basis of Guardianship Respondents' Disabilities.

The ADA also requires the discrimination or denial of benefits to be "by reason" of disability. *See* 42 U.S.C. § 12132; *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999). The Plaintiffs presented ample evidence showing that guardianship respondents are deprived of the ability to meaningfully defend their personal interests in a way that those without disabilities are not, thus meeting this requirement. *See* Anthony M. Decl. ¶¶ 6-7; Katherine C. Decl. ¶¶ 15, 20; Zahradnikova Decl. ¶ 17. Utah argues that the deprivation guardianship respondents face is not "by reason of" their disabilities because some judges may decide to use their discretion to appoint counsel only for respondents who are relatively more disabled. Utah Opp., 7. This argument misunderstands the relevant "by reason of" inquiry. Utah's version of the inquiry mistakenly compares the disabled guardianship respondents who receive appointed counsel to the disabled respondents who do not receive appointed counsel; rather, it must compare disabled guardianship respondents to those without disabilities who are not subject to the guardianship process. Because the disabled guardianship respondents face a deprivation of the ability to meaningfully defend their personal interests that those without disabilities do not face, the disabled respondents have experienced this deprivation "by reason of" their disabilities.

### 3. The Plaintiffs Are Likely to Succeed on Procedural Due Process.

As the Plaintiffs explained in their motion, procedural due process entitles them to

7

meaningful access to the hearing that will strip them of their most foundational private interests. Mot., 19-22. Utah attempts to counter this strong showing of likelihood of success by arguing that some guardianships are limited and invade only a limited subset of these private interests. Limited guardianships are rare. Pamela B. Teaster et al., *Wards of the State: A National Study of Public Guardianship*, 84 (2005) (in a survey of public guardianships including data from Utah, finding that only 8% were limited). And even a limited guardianship involves invasions of private interests that weigh heavily in the procedural-due-process analysis. *E.g.*, Zahradnikova Decl., Ex. 7 (ordering a limited guardianship allowing the guardians "to detain" the ward and granting control over the ward's medical decisions, relationships and marriage, and financial assets). (We note that Utah did not choose to apply the challenged restrictions merely to limited-guardianship contexts.) More fundamentally, Utah's argument that limited guardianships are available also misses the mark in the procedural-due-process inquiry. The relevant question is not whether some lesser deprivation may be available but whether adequate process is in place so that the respondent can avoid the complete deprivation of a full guardianship.[3]

### 4. The Plaintiffs Are Likely to Succeed on Their Claim Under the Sixth Amendment (as Incorporated by the Fourteenth Amendment).

As the Plaintiffs explained in their motion, the Sixth Amendment (as incorporated by the Fourteenth Amendment) requires counsel because guardianships deprive the ward of physical liberty. Mot., 22-26. Utah's arguments that guardianships do not put physical liberty at stake are unavailing. Utah claims that guardianships in Utah do not involve deprivations of physical

---

[3] Utah also argues that the Plaintiffs have not shown terminations of guardianships are rare, apparently in an attempt to claim that termination proceedings after a guardianship is imposed provide adequate procedural protections. But the government cannot claim that an "established state procedure" satisfies procedural due process by pointing to the availability of post-deprivation remedies. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

8

liberty, but it cites only an article making a general statement about District of Columbia guardianship law.  Utah Opp., 10 (citing Jasmine E. Harris, *Processing Disability*, 64 Am. U. L. Rev. 457, 518 (2015)).  This article's author disagrees with the conclusion Utah draws from it and submits a declaration explaining that guardianships place a respondent's physical liberty at stake.  Harris Decl., ¶¶ 5-6.  And regardless, this general article is no counter to the evidence the Plaintiffs presented that in Utah, courts are empowered to issue guardianships including the authority "to detain" a ward.  Zahradnikova Decl., Ex. 7 at 2.  Utah further argues that "guardians are not jailers."  Utah Opp., 10.  Nor were the juvenile administrators in *Gault* or the psychiatric staff in *Heryford*, but both courts found a deprivation of physical liberty.  *In re Gault*, 387 U.S. 1 (1967); *Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968).  What matters is that—no matter their intentions—guardians exercise control over the ward's physical liberty.  Utah claims that guardians must permit their wards to receive certain visitors, but, again, this fact does not undercut the Plaintiffs' claims concerning deprivations of physical liberty.  For example, even prisoners are rarely denied visits.  *See* Utah Department of Corrections, Visiting Privilege Levels, https://corrections.utah.gov/index.php/2014-10-30-20-13-24/14-visiting-information/1057-visiting-privilege-levels.

### D. The Public Interest Requires a Preliminary Injunction.

The public has a strong interest in preventing harm to civil rights, particularly when that harm would fall on those with disabilities.  *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011).  The AOC and JC claim that a preliminary injunction will hurt the public's trust in its judges.  AOC JC Opp., 3.  However, the injunction the Plaintiffs seek—which would merely replace the

statutory scheme after H.B. 101 with the statutory scheme that existed before it—could have no effect on the public's view of its judges. All Defendants reprise the attack on the facial form of the Plaintiffs' claims from their motions to dismiss, arguing a blanket injunction is against the public interest. This argument fails, as the Plaintiffs already explained. *See* MTD Opp., 18-21.

## II. THE REQUESTED INJUNCTION DOES NOT ALTER THE STATUS QUO; RATHER, IT RESTORES THE LAST UNCONTESTED STATUS.

The Defendants argue the Plaintiffs seek is a disfavored, status-quo-altering injunction, but they are wrong. The Tenth Circuit defines the status quo as "the last uncontested status between the parties which preceded the controversy." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). "[I]t is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). "Such an injunction restores, rather than disturbs, the status quo ante, and is thus not an exception to the rule." *Id.* Therefore, "[w]hen a statute is newly enacted, and its enforcement will restrict rights citizens previously had exercised and enjoyed, it is not uncommon for district courts to enjoin enforcement pending a determination of the merits of the constitutional issue." *Id.* at 1018; *accord Am. Civil Liberties Union of Kan. & W. Mo. v. Praeger*, 815 F. Supp. 2d 1204, 1208–09 (D. Kan. 2011). Contrary to the Defendants' arguments, the "status quo" is the guarantee of counsel in place for 28 years before H.B. 101, not the new statutory regime.[4]

---

[4] The Defendants cite the incorrect "heavily and compellingly" standard for a status-quo-altering preliminary injunction. *Schrier*, 427 F.3d at 1261 (noting that the *en banc Centro* court "jettisoned the . . . heavily and compellingly" standard). Instead, courts "more closely scrutinize[]" the plaintiff's showing. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Schrier*, 427 F.3d at 1259).

10

| | |
|---|---|
| DATED:  September 1, 2017 | LATHAM & WATKINS LLP |

/s/ Kyle A. Virgien
Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:  415.343.0762
Facsimile:  415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES
UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:  801.521.9862
Facsimile:  801.532.2850
aclu@acluutah.org

Attorneys for Plaintiffs Disability Law Center, Katherine C., and Anthony M.