Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone: 415.343.0762
Facsimile: 415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone: 801.521.9862
Facsimile: 801.532.2850
aclu@acluutah.org

*Attorneys for Plaintiffs Disability Law Center,*
*Katherine C., and Anthony M.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Disability Law Center, Katherine C., and Anthony M. <br><br>      Plaintiffs, <br><br> v. <br><br> The State of Utah, the Utah Judicial Council, and the Utah Administrative Office of the Courts <br><br>      Defendants. | Case No. 2:17-cv-00748-RJS-PMW <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT STATE OF UTAH'S MOTION TO DISMISS AND DEFENDANTS THE UTAH JUDICIAL COUNSEL AND THE UTAH ADMINISTRATIVE OFFICE OF THE COURTS' MOTION TO DISMISS** <br><br> Judge Robert J. Shelby <br><br> Chief Magistrate Judge Paul M. Warner |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................1

II. THIS COURT HAS SUBJECT-MATTER JURISDICTION. .........................................1

    A. The Legal Standard. .....................................................................1

    B. This Court Has Federal-Question Jurisdiction over the Claims in This Case, Which Arise Under Federal—Not State—Law and Fall Outside of the Narrow Probate Exception. ...............................................................2

    C. The Plaintiffs' Statutory Claims Fit Within Established Exceptions to Eleventh Amendment Sovereign Immunity........................................................5

        1. Under the Rehabilitation Act, Receipt of "Federal Funds" Constitutes Consent to Suit by State Entities and States. ...........................5

        2. Congress Validly Abrogated Eleventh Amendment Sovereign Immunity for ADA Title II Claims Related to Access to the Courts..........7

    D. All Plaintiffs Have Standing to Bring This Challenge............................................9

        1. Each Plaintiff Alleges Injury in Fact. .........................................9

            a. Plaintiffs Katherine and Anthony Allege Injury in Fact Because They Face an Imminent, Concrete Risk that the Defendants Will Deny Them Counsel. ...........................................9

            b. DLC Alleges Organizational Injury in Its Own Right And Associational Injury on Behalf of Disabled Utahns. ....................11

        2. The Defendants—the State and the Two Entities that Implement Statutes on Guardianship Counsel—Can Redress the Plaintiffs' Harms. .....................................................................15

III. THE PLAINTIFFS HAVE STATED VIABLE CLAIMS. .............................................18

    A. The Defendants' Hypotheticals Do Not Extinguish the Plaintiffs' Facial Challenge on Behalf of Individuals with Disabilities For Whom the Law Is a Restriction. ...........................................................................18

    B. A Constitutional Right to Counsel Protects Guardianship Respondents, A Vulnerable Group Who Would Otherwise Face Severe Deprivations Alone...........................................................................21

1.    Because Guardianship Respondents Face a Deprivation of Physical Liberty, Substantive Due Process Guarantees their Right to Counsel. ...................................................................................21

2.    The Plaintiffs Have Alleged a Violation of Procedural Due Process under the Fourteenth Amendment. ...........................................................22

3.    The Private Interest at Stake—A Deprivation of Fundamental Physical Liberty and Decisional Autonomy—Is Extraordinary. ...............23

4.    Only Counsel Can Cure the Immense Risk that a Disabled Respondent Will Suffer an Erroneous Deprivation. ..................................24

5.    Utah's Interest in Allowing its Citizens to Avoid Working with Counsel Are Slight. ...................................................................................25

IV.    CONCLUSION...............................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACLU v. Individual Members of the Ind. State Bd. of Law Examiners,*
No. 1:09-cv-842-TWP_MJP, 2, 2011 U.S. Dist. LEXIS 106337 (S.D. Ind.
Sept. 20, 2011) .......................................................................................................19

*Addington v. Texas,*
441 U.S. 418 (1979).................................................................................................23

*Agg v. Flanagan,*
855 F.2d 336 (6th Cir. 1988) .................................................................................3, 5

*Ankenbrandt v. Richards,*
504 U.S. 689 (1992).................................................................................................4

*Arbogast v. Kansas, Dep't of Labor,*
789 F.3d 1174 (10th Cir. 2015) .............................................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................18

*Atwood v. Fort Peck Tribal Court Assiniboine,*
513 F.3d 943 (9th Cir. 2008) .................................................................................4

*Bixler v. Foster,*
596 F.3d 751 (10th Cir. 2010) ...............................................................................18

*Boddie v. Connecticut,*
401 U.S. 371 (1971).................................................................................................22

*Bramlett v. Peterson,*
307 F. Supp. 1311 (M.D. Fla. 1969) ......................................................................17

*Brockman v. Wyoming Dep't of Family Servs.,*
342 F.3d 1159 (10th Cir. 2003) .............................................................................6

*Brown v. Stone,*
66 F. Supp. 2d 412, (E.D.N.Y. 1999) ....................................................................15

*Citizens United v. FEC,*
    558 U.S. 310 (2010)..............................................................................................19

*Clinton v. City of New York,*
    524 U.S. 417 (1998)..............................................................................................11

*Cressman v. Thompson,*
    719 F.3d 1139 (10th Cir. 2013) .........................................................................10

*Disability Rights New Jersey, Inc. v. Velez,*
    862 F. Supp. 2d 366 (D.N.J. 2012) .....................................................................6

*Doe v. City of Albuquerque,*
    667 F.3d 1111 (10th Cir. 2012) ....................................................................18, 19

*Faith Action for Cmty. Equity v. Hawaii,*
    No. CIV. 13-00450 SOM, 2014 WL 1691622 (D. Haw. Apr. 28, 2014) ...............12

*Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie,*
    725 F.2d 695 (D.C. Cir. 1984) ............................................................................17

*Fitzpatrick v. Bitzer,*
    427 U.S. 445 (1976)................................................................................................7

*Flood v. Braaten,*
    727 F.2d 303 (3d Cir. 1984)..................................................................................3

*Foman v. Davis,*
    371 U.S. 178 (1962)..............................................................................................26

*Franks v. Smith,*
    717 F.2d 183 (5th Cir. 1983) ................................................................................4

*Gallagher v. Shelton,*
    587 F.3d 1063 (10th Cir. 2009) ..........................................................................18

*Garramone v. Romo,*
    94 F.3d 1446 (10th Cir. 1996) ............................................................................23

*In re Gault,*
    387 U.S. 1 (1967)............................................................................................16, 21

*Gideon v. Wainwright,*
    372 U.S. 335 (1963)..............................................................................................21

*Goldberg v. Kelly,*
   397 U.S. 254 (1970)...............................................................24, 26

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
   545 U.S. 308 (2005)......................................................................2

*Gromer v. Mack,*
   799 F. Supp. 2d 704 (N.D. Tex. 2011) ...............................................3, 5

*Guttman v. Khalsa,*
   669 F.3d 1101 (10th Cir. 2012) ......................................................8

*Hamdi v. Rumsfeld,*
   542 U.S. 507 (2004).....................................................................23

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982)...............................................................11, 12

*Heryford v. Parker,*
   396 F.2d 393 (10th Cir. 1968) ..................................................21, 22

*Hollonbeck v. U.S. Olympic Comm.,*
   513 F.3d 1191 (10th Cir. 2008) ....................................................6, 7

*K.M. v. Regence Blueshield,* No. 13-CV-1214-RAJ, 2014 WL 801204 (W.D.
   Wash. Feb. 27, 2014) ..................................................................15

*Kay v. Bemis,*
   500 F.3d 1214 (10th Cir. 2007) ......................................................18

*Koslow v. Commonwealth of Pennsylvani*a,
   302 F.3d 161 (3d Cir. 2002)............................................................6

*Lane v. Pena,*
   518 U.S. 187 (1996).....................................................................5

*Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.,*
   452 U.S. 18 (1981).......................................................................22

*Laub v. U.S. Dep't of Interior,*
   342 F.3d 1080 (9th Cir. 2003) .........................................................6

*Life Ins. Co. of N. Am. v. Wagner,*
   No. 2:15-CV-00505-DS, 2016 WL 1494711 (D. Utah Apr. 14, 2016) ....................4

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................................9

*Marshall v. Marshall,*
   547 U.S. 293 (2006) ......................................................................................3, 4

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ........................................................................................9

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ....................................................................................23, 24

*Murray v. Earle,*
   334 F. App'x 602 (5th Cir. 2009) ....................................................................22

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
   *Fla.*, 508 U.S. 656 (1993) ...............................................................................15

*New York Civil Liberties Union v. New York City Transit Auth.,*
   684 F.3d 286 (2d Cir. 2012) ...................................................................11, 13, 14

*Nordgren v. Mitchell,*
   716 F.2d 1335 (10th Cir. 1983) .......................................................................23

*Peterson v. LaCabe,*
   783 F. Supp. 2d 1167 (D. Colo. 2011) ............................................................18

*Planned Parenthood of S.E. Penn. v. Casey,*
   505 U.S. 833 (1992) ....................................................................................19, 20

*Port Auth. Trans-Hudson Corp. v. Feeney,*
   495 U.S. 299 (1990) ........................................................................................5

*Powell v. Alabama,*
   287 U.S. 45 (1932) .........................................................................................24

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,*
   793 F.3d 1177 (10th Cir. 2015) .......................................................................2

*Protocols, LLC v. Leavitt,*
   549 F.3d 1294 (10th Cir. 2008) ......................................................................10

*Robinson v. Kansas,*
   295 F.3d 1183 (10th Cir. 2002) .......................................................................6

*Spann v. Colonial Vill., Inc.*,
   899 F.2d 24 (D.C. Cir. 1990) ...............................................................11

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ...............................................................................2

*Stenberg v. Carhart*,
   530 U.S. 914 (2000) ...........................................................................20

*Struck v. Cook Cty. Pub. Guardian*,
   508 F.3d 858 (7th Cir. 2007) ...............................................................3

*Tennessee v. Lane*,
   541 U.S. 509 (2004) ......................................................................8, 26

*United States v. Bailey*,
   115 F.3d 1222 (5th Cir. 1997) .............................................................3

*United States v. Clark*,
   249 F. Supp. 720 (S.D. Ala. 1965) ....................................................17

*United States v. Crawford*,
   115 F.3d 1397 (8th Cir. 1997) .............................................................3

*United States v. Georgia*,
   546 U.S. 151 (2006) ......................................................................7, 8

*United States v. Johnson*,
   114 F.3d 476 (4th Cir. 1997) ...............................................................3

*United States v. Supreme Court*,
   839 F.3d 888 (10th Cir. 2016) ...........................................................10

*Uroza v. Salt Lake Cty.*,
   No. 11-CV-713-DAK, 2014 WL 4457300 (D. Utah Sept. 10, 2014) .....................22

*Valdez v. Nat'l Sec. Agency*,
   228 F. Supp. 3d 1271 (D. Utah 2017) ..................................................2

*Vitek v. Jones*,
   445 U.S. 480 (1980) ...........................................................................21

*Walker v. McLain*,
   768 F.2d 1181 (10th Cir. 1985) ....................................................21, 22

*Warth v. Seldin,*
   422 U.S. 490 (1975) .................................................................................11

*Washington State Grange v. Washington State Republican Party,*
   552 U.S. 442 (2008) .................................................................................18

*Ex parte Young,*
   209 U.S. 123 (1908) .................................................................................17

## STATUTES

Utah Code Ann. § 75-1-302(1) ..................................................................3

Utah Code Ann. § 75-5-303(5)(d)(ii) .......................................................25

Utah Code Ann. § 75-5-312(3)(a) .............................................................22

Utah Code Ann. § 75-5-312(3)(c) .............................................................22

Utah Code Ann. § 78A-6-203(1)(a)-(b) ...................................................16

## RULES

Fed. R. Civ. P. 8(a)(1) ...............................................................................2

Fed. R. Civ. P. 12(b)(1) .......................................................................1, 18

Fed. R. Civ. P. 12(b)(6) ...........................................................................18

Fed. R. Civ. P. 15(a)(2) ............................................................................26

Utah Judicial Council Code of Judicial Administration, Rule 3-417 ..........16

Utah R. Juvenile P. 25(c)(1) ....................................................................16

## TREATISES

Moore's Federal Practice Civil § 103.06 (2017) ........................................4

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XIV ............................................................................7

## OTHER AUTHORITIES

https://www.utcourts.gov/howto/family/gc/signature/ ...............................14

Utah State Legislature Compendium of Budget Information for the 2017 General
    Session: Executive Offices and Criminal Justice, Utah Legislature Website
    (2017),
    https://le.utah.gov/lfa/cobi/currentCobi/cobi.html?cobiID=94&tab=financials
    Tab ................................................................................................................................6

## I.    INTRODUCTION

The Defendants[1] do not dispute in this motion that the Plaintiffs state a valid theory supporting a right to counsel under the ADA and Rehabilitation Act.  Nor do they seriously dispute the Plaintiffs' theory that the Sixth Amendment (as incorporated by the Fourteenth) creates a right to counsel in guardianship proceedings.[2]  *See infra* 21-25.  Instead, the Defendants take issue with this suit's form.  They claim that there exists no proper defendant for the Plaintiffs' ADA and Rehabilitation Act claims, effectively depriving the Plaintiffs of their day in court to remedy the very real deprivation they allege.  The Defendants assert that an avenue exists for the constitutional relief the Plaintiffs seek: an unrepresented, disabled guardianship respondent could raise them in response to the court's denial of counsel.  But the scenario the Defendants imagine is practically impossible, and the deprivation this suit attempts to remedy is that experienced by the large majority of respondents who make no such request.

Contrary to the Defendants' assertions, the Plaintiffs state claims within this Court's jurisdiction, and on which relief can be granted.  The Court must therefore allow the Plaintiffs the access to relief that they seek.

## II.    THIS COURT HAS SUBJECT-MATTER JURISDICTION.

### A.    The Legal Standard.

The Defendants challenge this court's subject-matter jurisdiction over this case via Federal Rule of Civil Procedure 12(b)(1).  As the parties seeking to invoke federal jurisdiction,

---

[1] The State of Utah ("Utah") filed a motion to dismiss ("Utah Mot.") (Dkt. No. 36), and the Utah Administrative Office of the Courts ("AOC") and the Utah Judicial Council ("JC") filed a separate motion to dismiss ("AOC JC Mot.") (Dkt. No. 42) that in large part relies on Utah's motion.  This opposition brief addresses both motions.

[2] The Defendants attack the Plaintiffs' theory that procedural due process under the Fourteenth Amendment requires counsel, and the Plaintiffs address this attack below.

the Plaintiffs bear the burden of establishing that jurisdiction is proper.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  "At the pre-discovery motion to dismiss stage," this burden is easily met: "this court must assume the truth of well-pleaded factual allegations that are not simply legal conclusions or bare assertions of the elements of a claim."[3]  *Valdez v. Nat'l Sec. Agency*, 228 F. Supp. 3d 1271, 1280 (D. Utah 2017); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1184 (10th Cir. 2015).  To establish jurisdiction, the complaint need only contain "a short and plain statement of the grounds for the court's jurisdiction."  *Valdez* at 1278 (quoting Fed. R. Civ. P. 8(a)(1)).

### B.    This Court Has Federal-Question Jurisdiction over the Claims in This Case, Which Arise Under Federal—Not State—Law and Fall Outside of the Narrow Probate Exception.

The Defendants argue that the Plaintiffs' causes of action are not subject to federal-question jurisdiction because Plaintiffs are objecting to a state law, and "the state-law claim [does not] 'necessarily raise[]' a federal issue."  Utah Mot., 3; *accord* AOC JC Mot., 3-4.  This argument plays word games, pretending that there is a "state law claim" when there is not.  The Plaintiffs' claims—asserting the 14th Amendment, the Americans with Disabilities Act, and the Rehabilitation Act—arise solely under federal law.  The case law the Defendants cite makes their error plain.  The *Grable* Court made clear that "federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law"—like the Plaintiffs' claims here.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  *Gromer* is also beside the point; that court merely followed the rule that "[a] defense that raises a

---

[3] The Defendants additionally request that the Court use its discretion to take into consideration evidence beyond the pleadings on a narrow factual issue.  The Plaintiffs address this request below.  *See infra* 12-13.

federal question is inadequate to confer federal jurisdiction." *Gromer v. Mack*, 799 F. Supp. 2d 704, 708 (N.D. Tex. 2011) (quotation omitted). The Plaintiffs' claims therefore fall within this Court's federal-question jurisdiction.

The Defendants also appear to invoke the probate exception to federal jurisdiction,[4] but this narrow exception does not require the Plaintiffs to bring this federal-law action in Utah's state courts. This exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). "But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. As an initial matter, the law in a clear majority of circuits is that the probate exception (or its sister doctrine, the domestic-relations exception[5]) limits only diversity jurisdiction, not federal-question jurisdiction. *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir. 1984); *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997); *United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir. 1997); *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir. 1988); *United States v. Crawford*, 115 F.3d 1397, 1401–1402 (8th

---

[4] The Defendants do not cite the probate exception by name. Instead, they cite *Gromer* and state the proposition that "probate matters have traditionally been governed by state law and are within the exclusive jurisdiction of state probate courts." Utah Mot., 3; *accord* AOC JC Mot., 4. *Gromer*, in turn, explains the probate exception. *Gromer*, 799 F. Supp. 2d at 710 n.5. Because the probate exception is the legal doctrine that embodies the Defendants' views, the Plaintiffs address this doctrine. To the extent the Defendants intended instead to claim that Utah granted its courts exclusive jurisdiction over probate matters, it neither did, Utah Code § 75-1-302(1), nor could, *Marshall v. Marshall*, 547 U.S. 293, 297 (2006).

[5] *See Marshall*, 547 U.S. 293, 308 (describing the probate exception as "kin to the domestic relations exception"); *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007) ("The exception is usually described as two exceptions, one for probate and one for domestic relations. But the two exceptions are materially identical. The fact that they are two rather than one reflects nothing more profound than the legal profession's delight in multiplying entities.")

Cir. 1997); *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 947 (9th Cir. 2008). As the Ninth Circuit carefully explained in the context of the domestic-relations exception, there is no basis on which to apply this exception to federal-question jurisdiction:

> [In discussing the domestic-relations exception in] *Ankenbrandt* [*v. Richards*, 504 U.S. 689 (1992), the Supreme Court] held that the domestic relations exception was not of constitutional dimension, but rested on Congress' intent in enacting the *diversity* jurisdiction statute, 28 U.S.C. § 1332. Although *Ankenbrandt* did not address whether the exception applies to the federal question jurisdiction statute, 28 U.S.C. § 1331, the Court's reasoning plainly does not apply to that statute.

*Atwood*, 513 F.3d at 947; *see also* Moore's Federal Practice - Civil § 103.06 (2017) ("[A]pplication of the exception [in federal-question cases] would constitute a judicial interference with congressional employment of the federal courts to enforce substantive federal law."). Put simply, no court in this Circuit has held that states may override federal question jurisdiction simply by classifying matters as relating to "probate."

Even if this Court determines that the probate exception could apply to federal-question jurisdiction, the claims here fall outside of this narrow exception because they ask the Court neither to make a determination of substantive Utah probate law nor to dispose of property in the custody of the Utah state courts. *Marshall*, 547 U.S. at 311–12; *Life Ins. Co. of N. Am. v. Wagner*, No. 2:15-CV-00505-DS, 2016 WL 1494711, at *3 (D. Utah Apr. 14, 2016). The Fifth and Sixth Circuits have rejected the Defendants' exact argument in the context of the domestic-relations exception. The Fifth Circuit found the exception not to apply to a § 1983 action alleging an unconstitutional seizure and taking of a child, holding that "[t]he mere fact that a claimed violation of constitutional rights arises in a domestic relations context does not bar review of those constitutional issues." *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir. 1983). The Sixth Circuit similarly held that "the federal courts must properly exercise jurisdiction over" a

"claim that the state's method of determining and enforcing child support is unconstitutional and contrary to federal law." *Agg*, 855 F.2d at 339. In contrast, in the *Gromer* opinion on which the Defendants rely, the court noted the probate exception would apply because the case before it fell at the exception's core: "the dispute is over precisely the *res* that is currently before the county probate court in the guardianship proceeding." *Gromer*, 799 F. Supp. 2d at 711.

### C. The Plaintiffs' Statutory Claims Fit Within Established Exceptions to Eleventh Amendment Sovereign Immunity.

The Defendants claim sovereign immunity from the Plaintiffs' statutory causes of action under the Eleventh Amendment.[6] "The Eleventh Amendment bar to suit" that the Defendants assert "is not absolute." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (citations omitted). "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." *Id.* (citations omitted). Because each of the Plaintiffs' statutory claims falls under one of these Eleventh Amendment exceptions, the Defendants' claims of sovereign immunity fail.

### 1. Under the Rehabilitation Act, Receipt of "Federal Funds" Constitutes Consent to Suit by State Entities and States.

The Eleventh Amendment does not bar the Plaintiff's Rehabilitation Act claim because the Defendants consented to suit by accepting federal funds for the operation of their court system. *See Lane v. Pena*, 518 U.S. 187, 200 (1996) (noting that the Rehabilitation Act contains an "unambiguous waiver of the States' Eleventh Amendment immunity"). The Defendants try to evade this rule by narrowly arguing that (1) the state as a whole does not waive sovereign immunity by accepting federal funding, and (2) that the complaint does not allege the receipt of

---

[6] The Defendants make no such claim of sovereign immunity from the Plaintiffs' constitutional causes of action.

"RA funds." Utah Mot., 14. Neither argument succeeds.[7]

First, the relevant sovereign-immunity waiver is broad enough to encompass the Plaintiffs' Rehabilitation Act claims against all Defendants. The Tenth Circuit has repeatedly held that states can waive sovereign immunity through the acceptance of federal financial assistance. *Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015) ("[E]very circuit court to consider the issue, including the Tenth Circuit, has concluded 'that by accepting federal financial assistance as specified in [the Rehabilitation Act as amended], *states and state entities* waive sovereign immunity from suit.'" (emphasis added) (quoting *Robinson v. Kansas*, 295 F.3d 1183, 1190 (10th Cir. 2002)); *Brockman v. Wyoming Dep't of Family Servs.*, 342 F.3d 1159, 1168 (10th Cir. 2003) (holding that "the State of Wyoming made itself amenable to suit" under the Rehabilitation Act). This waiver has reasonable limits: "the definition of program or activity was not intended to sweep in the whole state or local government whenever one subdivision discriminates." *Arbogast* at 1184 (quotation marks omitted). Instead, it extends to "all the activities of the department or the agency receiving federal funds."[8] *Id.* Here, the Plaintiffs' complaint alleges that "the Utah State court system and the State of Utah" receive the

---

[7] Public information indicates that the Defendants receive public funding for the administration of the Utah state courts. *See* Utah State Legislature Compendium of Budget Information for the 2017 General Session: Executive Offices and Criminal Justice, Utah Legislature Website (2017), https://le.utah.gov/lfa/cobi/currentCobi/cobi.html?cobiID=94&tab=financialsTab, "Funding Source" tab. Additional facts giving the details of the Defendants' receipt of federal funding, however, are uniquely in the Defendants' possession. The Plaintiffs therefore respectfully request that if the Court finds the complaint insufficient to support this waiver, it order limited jurisdictional discovery on the issue of federal funding rather than dismissing this case. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (finding clear error in dismissal without jurisdictional discovery into federal involvement in state action).

[8] The Defendants base their argument on law from the District of New Jersey, *Disability Rights New Jersey, Inc. v. Velez*, 862 F. Supp. 2d 366, 375 (D.N.J. 2012), and the Third Circuit, *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 171, 176 (3d Cir. 2002). To the extent that the Defendants claim this authority supports a broader view of their sovereign immunity than the Tenth Circuit precedent the Plaintiffs cite here, it is invalid.

relevant funding, and it alleges a Rehabilitation Act violation occurring in the Utah courts, as enacted by the State via legislation. Comp., ¶¶ 94, 96. It thus sufficiently alleges a violation related to "the activities of the department or the agency receiving federal funds." *Aborgast* at 1184.

Second, the Plaintiffs adequately pleaded the receipt of "RA funds." The Tenth Circuit's pleading requirements for a Rehabilitation Act claim do not require any magical words such as "RA funds." *See Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008) (noting that to establish a prima facie case under the Rehabilitation Act, a plaintiff need only show that "the program receives federal financial assistance") (citation omitted). The Plaintiffs have pleaded the Defendants' receipt of federal funds. Compl., ¶ 94 ("On information and belief, the Utah State court system and the State of Utah receive federal funding."). This allegation suffices for jurisdiction.

### 2. Congress Validly Abrogated Eleventh Amendment Sovereign Immunity for ADA Title II Claims Related to Access to the Courts.

The Eleventh Amendment does not bar the Plaintiffs' claims under Title II of the ADA because they fall within Congress's exercise of its authority to abrogate state sovereign immunity. Section 5 of the Fourteenth Amendment grants Congress the "power to enforce, by appropriate legislation," the amendment's grants of rights against the states and thus functions as an abrogation of state sovereign immunity. U.S. Const. Amend. XIV; *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 (1976). Thus, "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006). The Supreme Court has broadly held that certain classes of Title II claims

7

necessarily fall within Congress's abrogation authority. *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). For example, "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." *Id.* For cases falling outside the classes of Title II claims where sovereign immunity is necessarily abrogated, courts follow a three-part inquiry: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia,* 541 U.S. at 159; *Guttman v. Khalsa*, 669 F.3d 1101, 1112–13 (10th Cir. 2012) (citing *Lane*'s holding, but engaging in the *Georgia* analysis because "*Lane* does not resolve the specific question here: whether the accommodation requirement of Title II is a valid exercise of § 5 authority, as it applies to cases involving professional licensing").

The Defendants request that the Court dismiss the Plaintiffs' allegations as insufficient under the *Georgia* test, but this argument fails for two reasons. First, as explained above, the *Georgia* test is unnecessary here because the Supreme Court recognized per-se abrogation for all cases seeking "access to the courts." *Lane,* 541 U.S. at 533–34. Second, even if the Plaintiffs' allegations had to satisfy the *Georgia* test, they would do so because the complaint alleges that the same conduct violates both Title II and the 14th Amendment. *Compare* Compl., ¶¶ 60-82 *with* ¶¶ 104-20. The Defendants' contrary arguments merely restate their 12(b)(6) arguments and their standing-related argument that no "case or controversy" exists. Those attacks fail for the reasons set out in Plaintiffs' responses to those arguments. *See infra* 9-18.

**D.      All Plaintiffs Have Standing to Bring This Challenge.**

In order to establish standing, the Plaintiffs must demonstrate: (1) injury in fact; (2) that their injuries are fairly traceable to the Defendants' conduct; and (3) that their grievances may be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Defendants agree that the complaint satisfies the second *Lujan* requirement,[9] contesting only the first and third. *See* Utah Mot., 4-11. These arguments lack merit.

**1.      Each Plaintiff Alleges Injury in Fact.**

The requirement that a plaintiff demonstrate injury in fact guarantees that "petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation omitted). The Plaintiffs thus must allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations and citations omitted). Katherine, Anthony, and DLC each allege a valid injury in fact.

> **a.      Plaintiffs Katherine and Anthony Allege Injury in Fact Because They Face an Imminent, Concrete Risk that the Defendants Will Deny Them Counsel.**

The Plaintiffs' complaint explains the concrete, imminent injury in fact that Katherine and Anthony face because they are not guaranteed counsel. Anthony's parents "have expressed a desire to obtain a determination of legal guardianship over him." Compl., ¶ 39. Katherine is

---

[9] Utah includes an argument in a footnote that Katherine's and Anthony's concerns that their parents may bring a guardianship proceeding is not an injury fairly traceable to the Defendants. Utah Mot. at 6 n.4. But Katherine and Anthony do not claim these concerns as an injury in this suit—their injury is the deprivation of counsel that the Defendants directly cause.

similarly "deeply concerned that her parents will file to create a permanent guardianship" because her parents have "expressed concern about Katherine's ability to function autonomously." Compl., ¶ 29. Neither Anthony nor Katherine would benefit from the guarantee of counsel in a guardianship proceeding. Compl., ¶¶ 32, 41. The Defendants make several arguments that Katherine and Anthony lack standing because this injury in fact is not sufficiently imminent.[10] Utah Mot., 5. Controlling law mandates otherwise.

First, the Defendants claim that Katherine's and Anthony's injuries are not sufficiently imminent because they relate to legal proceedings that have yet to occur. But under Tenth Circuit law a deprivation related to a legal proceeding that has yet to occur—and may never even occur—can constitute an injury in fact. For example, the 10th Circuit has held that a plaintiff suffered an injury in fact when the law changed so as to expose it to liability, even though no claim had yet been made against it. *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1301 (10th Cir. 2008). The 10th Circuit also holds that a plaintiff may establish injury in fact by alleging that a law could expose him to potential criminal liability, even though no charges have been brought. *United States v. Supreme Court*, 839 F.3d 888, 901–902 (10th Cir. 2016); *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013). Katherine and Anthony thus allege an injury in fact even though they have yet to be subjected to a guardianship proceeding.

Second, the Defendants assert that, so long as judges have discretion to provide counsel in some cases, Katherine and Anthony's loss of the guarantee of counsel does not injure them. As an initial matter, even were a judge to choose to provide counsel, Katherine and Anthony

---

[10] The Defendants also argue that Katherine and Anthony do not allege they have already been denied counsel in a guardianship proceeding. This argument is correct but immaterial because Katherine and Anthony allege that they imminently face this deprivation.

10

would still suffer injury under the current statutory scheme because the state would not pay for this counsel.  *See* Compl., ¶¶ 80, 101, 108-09, 118, 123 (alleging—as a part of each cause of action—failure to pay for counsel).  More fundamentally, the failure to guarantee counsel constitutes an injury in fact regardless of the possibility that counsel might still be appointed.  *See Clinton v. City of New York*, 524 U.S. 417, 430 (1998) (finding injury in fact even though the plaintiff could—and did—apply for a discretionary waiver that would avoid the alleged harm).

### b. DLC Alleges Organizational Injury in Its Own Right And Associational Injury on Behalf of Disabled Utahns.

#### (1) DLC Suffers an Injury in Fact in Its Own Right.

The DLC has "standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  "Under this theory of 'organizational' standing, the organization is just another person—albeit a legal person—seeking to vindicate a right." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  "An organization has standing on its own behalf if it meets the same standing test that applies to individuals." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (Ginsburg, J.).  The Defendants' violations have caused DLC both a diversion of resources and an impediment to its ability to carry out its mission.  Either of these harms suffices to show an organizational injury in fact.

First, the Defendants' violations have caused DLC injury in fact because they have forced DLC to divert resources to address the violations' effects on disabled Utahns.  When a defendant's allegedly illegal conduct "perceptibly impair[s]" an organizational plaintiff's ability to effectuate its mission by creating a "drain on the organization's resources," there "can be no question that the organization has suffered injury in fact." *Havens Realty Corp. v. Coleman*, 455

U.S. 363, 379 (1982). The *Havens Realty* plaintiff—an antidiscrimination organization— "broadly alleged" that it "had to devote significant resources to identify and counteract" an apartment complex's violations of the Fair Housing Act. *Id.* The Supreme Court held that this "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitute[d] far more than simply a setback to the organization's abstract social interests" and supported standing. *Id.* Just as the *Havens Realty* plaintiff suffered a cognizable harm by being forced to divert resources to combat racially discriminatory housing practices, DLC has alleged a "concrete and demonstrable injury" because the Defendants' violations have required it to expend resources in bringing this suit and guarding against the fallout of the Defendants' actions. The Defendants try to undercut DLC's injury-in-fact allegations by citing an opinion finding that "the injury in question cannot be the voluntarily incurred cost of trying to have the law changed." *Faith Action for Cmty. Equity v. Hawaii*, No. CIV. 13-00450 SOM, 2014 WL 1691622, at *6 (D. Haw. Apr. 28, 2014); Utah Mot., 8. But DLC's injuries are deeper. Its pursuit of this challenge is hardly voluntary: its statutory mandate formally instructs it to bring legal challenges of this nature. Compl., ¶¶ 11-12. And it has alleged a diversion of resources extending well beyond those required to pursue this suit. The Defendants' violations lead to improperly and erroneously imposed guardianships, which will in turn cause abuses of disabled Utahns and deprivations of their rights. It falls to DLC—whose statutorily mandated mission is to represent disabled Utahns in need of assistance—to remedy these deprivations and abuses.

The Defendants note that the Court has discretion to consider a jurisdictional challenge to be factual and to admit facts beyond the pleadings. They request that the Court consider a

statement on DLC's website that it does not represent guardianship respondents in guardianship proceedings. The Plaintiffs do not dispute that the Court has the discretion to consider this evidence, but this case does not warrant such an exercise of discretion because this fact does not controvert the Plaintiffs' allegations. In relevant part, the Plaintiffs' complaint alleges:

> As a result of Defendants' actions, DLC has suffered and will continue to suffer a diversion of its limited resources advocating in opposition to H.B. 101 and Defendants' denial of counsel to guardianship respondents. Defendants' actions also require DLC to divert its limited resources to provide legal assistance to those whom Defendants have denied counsel.

Compl., ¶ 82. "Legal assistance" is a broad term encompassing a range of services that protection and advocacy organizations like DLC provide to individuals at risk of or under guardianship; the fact that DLC does not offer to represent guardianship respondents in those proceedings does not bear on the allegation's accuracy. And even if the Court determines to exercise its discretion to consider the Defendants' citation to DLC's website, it does not alter or controvert the Plaintiffs' well-pleaded allegations that the Defendants' actions have forced them to expend resources in several ways.[11]

Second, DLC suffers an organizational injury in fact because the Defendants' violations frustrate its actions to carry out its mission. In *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012), the New York Civil Liberties Union challenged a regulation that prevented it from observing hearings before the Transportation Adjudication

---

[11] Should the Court use its discretion to consider evidence relevant to the DLC's allegation of organizational harm, the Plaintiffs respectfully request that it also use this discretion to consider facts supporting this allegation included in the Declaration of Adina Zahradnikova, the DLC's Director, attached to this opposition. Ms. Zahradnikova declares that "any law that removes procedural protections for individuals facing guardianships—which H.B. 101 certainly does—exposes these Utahns to a higher risk of abuse and neglect and requires DLC to intercede pursuant to the center's PAIMI/PADD mandate." Zahradnikova Decl. ¶ 7. When H.B. 101 eliminated the guarantee of counsel in guardianship, it forced DLC to expend considerable resources standing up for the rights of Utahns with disabilities. *Id*. at ¶¶ 7–9.

Board.  *Id.*  The Second Circuit held that the NYCLU had alleged injury in fact because this regulation "ha[d] impeded, and w[ould] continue to impede, the organization's ability to carry out" its organizational goal of representing clients before the Board.  *Id.*  Here, too, the Defendants' actions frustrate DLC's attempts to carry out its mission.  As part of its core goal of providing representation to disabled Utahns, a DLC representative sits on the board of the Guardianship Signature Program that supplies guardianship counsel when appointed by judges.[12] *See* Compl., ¶¶ 56-59.  The Defendants' violations prevent the Guardianship Signature Program from providing appointed counsel to indigent respondents and thereby impede DLC's actions carrying out its mission, causing an organizational injury in fact.  *See New York Civil Liberties Union*, 684 F.3d at 295.

### (2) DLC Alleges Associational Injury on Disabled Utahns' Behalf.

In addition to its organizational standing, DLC has associational standing to sue on behalf of disabled Utahns.  The Defendants argue that DLC has not pleaded an injury in fact to any particular disabled Utahn.  *See* Utah Mot., 9-11; AOC JC Mot., 11.  The allegations of the complaint prove otherwise.  As the Plaintiffs explain above, *see supra* 9-11, Katherine and Anthony both have alleged an injury in fact.[13]  *See Int'l Union, United Auto., Aerospace & Agr.*

_____

[12] The Plaintiffs' complaint does not include an allegation that DLC's representative sits on this board.  Should the Court grant the Defendants' request that it consider evidence relevant to DLC's allegation of organizational harm, *see supra* n. 11, the Plaintiffs respectfully request that the Court also consider the Defendants' website stating this fact, https://www.utcourts.gov/howto/family/gc/signature/.  Should the Court find this fact dispositive, the Plaintiffs respectfully request leave to amend their Complaint to allege it.

[13] The Defendants claim that the Plaintiffs do not allege facts showing that Katherine and Anthony do not fall under PAIMI and PADD, respectively, so as to grant DLC standing to sue on their behalf.  The complaint alleges that "Anthony has developmental and intellectual disabilities," thus alleging that he falls under PADD.  Compl., ¶ 35.  The Defendants claim that

*Implement Workers of Am. v. Brock*, 477 U.S. 274, 286, 290 (1986) (holding a showing of individual members' standing suffices for associational standing). DLC also alleges injuries on behalf of all disabled Utahns deprived of the guarantee of counsel. The Defendants admit that DLC can adequately allege an injury in fact to a member without explicitly naming that member. Utah Mot., 10. The complaint does just that: "[DLC's] constituents have each suffered injuries, or are at risk of suffering injuries, that would allow them to bring suit against Defendants in their own right." Compl., ¶ 20. The law requires nothing more. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 668 (1993).

### 2. The Defendants—the State and the Two Entities that Implement Statutes on Guardianship Counsel—Can Redress the Plaintiffs' Harms.

The Plaintiffs sued the three defendants empowered to ensure that guardianship counsel is appointed: the two state entities that represented in pre-suit correspondence that they were charged with H.B. 101's "implementation" and the state itself. *See* Zharadnikova Decl., Ex. 1. Now all three Defendants claim to lack the authority to comply with an order granting the relief the Plaintiffs seek, and none points to any other entity that could comply. But redressability is no bar to standing against any defendant.

The complaint states that the JC and AOC "implement" H.B. 101 and the statutory scheme related to guardianship counsel, Compl., ¶¶ 43-44, but the JC and AOC dispute this allegation. Their motion attaches their implementing statutes and rules, implicitly requesting that this Court exercise its discretion to consider those submissions as evidence countering the

---

PAIMI does not include Katherine because she was not released from a facility within the last 90 days, citing a requirement from 42 U.S.C. § 10805(a)(1)(C). In doing so, they ignore § 10805(a)(1)(B), which includes no such requirement. They therefore fail to defeat standing. *K.M. v. Regence Blueshield*, No. 13-CV-1214-RAJ, 2014 WL 801204, at *6 (W.D. Wash. Feb. 27, 2014); *Brown v. Stone*, 66 F. Supp. 2d 412, 425 (E.D.N.Y. 1999).

Plaintiffs' allegations of redressability. This Court should not exercise this discretion, but if it decides to do so, ample evidence supports the plaintiffs' allegations. The JC and AOC's general counsel admits in a pre-suit letter to DLC that—contrary to the JC and AOC's arguments here—they "implement" the relevant statutory scheme:

- "[W]e will be dealing with [H.B. 101's] implementation."
- "[W]e believe we have established some progressive programs. We will continue to look at improving those programs."
- "[O]ur working group will move forward with reviewing ways in which individuals receive the access and protections they deserve and are guaranteed."

Zharadnikova Decl., Ex. 1. Further undercutting the JC and AOC's assertions that they lack the power to implement a right to counsel are the rules the JC has established effectuating the juvenile right to counsel recognized by the Supreme Court in *In re Gault*, 387 U.S. 1 (1967). Utah R. Juvenile P. 25(c)(1) (barring a court from accepting a plea without a finding "that the right to counsel has been knowingly waived if the minor is not represented by counsel"); Utah Code § 78A-6-203(1)(a)-(b) (permitting the Judicial Counsel to establish the Rules of Juvenile Procedure via its Board of Juvenile Court Judges). Similarly, the JC has promulgated rules for the AOC requiring it to investigate and resolve ADA complaints, indicating that both entities can redress ADA violations. Utah Judicial Council Code of Judicial Administration, Rule 3-417. This evidence demonstrates that the JC and AOC have the authority the complaint alleges. At the very least, it warrants discovery on redressability before any defendant might be dismissed.

The JC and AOC further argue that they cannot instruct judges how to perform the case-by-case determination H.B. 101 sets out and thus cannot redress the harm the Plaintiffs claim. AOC JC Mot., 5–6, 8–10. This argument misapprehends the relief the Plaintiffs seek. Because this declaratory and injunctive relief takes the form of a simple rule—guardianship respondents

16

have a right to counsel at the state's expense—it presents no barrier to standing.  *See Bramlett v. Peterson*, 307 F. Supp. 1311, 1317-19 (M.D. Fla. 1969) (finding standing in a suit against justices of the peace for injunctive relief protecting the plaintiffs' right to counsel); *United States v. Clark*, 249 F. Supp. 720, 728 (S.D. Ala. 1965) ("[An injunction prohibiting the judiciary from unlawfully discriminating] involves no interference with judicial discretion since an injunction— if warranted by the evidence and if issued—will only prevent the doing of what there is no right to do." ) (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)); *c.f. Family Div. Trial Lawyers of Super. Ct.-D.C., Inc. v. Moultrie*, 725 F.2d 695, 704 (D.C. Cir. 1984) (holding in the context of abstention that a case was proper for federal judicial resolution because "relief can be effected by requiring the superior court to adopt [a] 'rule'" as opposed to a case-by-case determination).

Defendant Utah similarly claims that the complaint does not allege it can redress the Plaintiffs' harms.  The Complaint alleges that "Utah is responsible for operating its programs, services, and activities in conformity with the Americans with Disabilities Act, the Rehabilitation Act, and the United States Constitution."  Compl., ¶ 42.  Utah's statutory scheme for counsel in guardianship cases causes the state's courts—part of its "programs, services, and activities—to violate these statutory and constitutional mandates.  Compl., ¶¶ 60-124.  The complaint thus alleges that Utah can redress these violations.  Utah additionally argues that an injunction against it cannot redress the Plaintiffs' harms because an injunction guaranteeing all guardianship respondents counsel would encompass guardianship respondents not currently before the Court.  Even if this claim were a bar to redressability, it is incorrect: DLC has alleged associational standing on behalf of all disabled guardianship respondents and organizational standing deriving from harms to all disabled guardianship respondents.  Compl., ¶¶ 81-82, 102-103, 110-111, 119-

120.  These harms support an injunction extending to all guardianship respondents.

## III.  THE PLAINTIFFS HAVE STATED VIABLE CLAIMS.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). The Court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

Utah brings a 12(b)(6) motion, which the JC and AOC do not join.  The JC and AOC move under Rule 12(b)(6) on the same grounds on which they brought their Rule 12(b)(1) motion.  This motion fails for the same reasons as their 12(b)(1) motion.

### A.  The Defendants' Hypotheticals Do Not Extinguish the Plaintiffs' Facial Challenge on Behalf of Individuals with Disabilities For Whom the Law Is a Restriction.

Utah bases much of its 12(b)(6) motion on an incorrect view that facial challenges "generally fail if there is any set of circumstances under which the law would be valid."  Utah Mot., 16 (citing *Peterson v. LaCabe*, 783 F. Supp. 2d 1167, 1173 (D. Colo. 2011) (referencing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008))).  But more recent Tenth Circuit precedent directly contradicts the Defendants' position.  In *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012), the Tenth Circuit rejected Utah's view of the "no set of circumstances" test: "[t]he idea that the Supreme Court applies the 'no set of circumstances' test to every facial challenge is simply a fiction, readily dispelled by a plethora of

Supreme Court authority." *Id.* at 1122, 1124 (citing thirteen Supreme Court cases, including

*Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992)).[14] Ultimately, "the distinction

between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the

Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331

(2010). The Court must therefore consider the Plaintiffs' "facial challenge[] simply by applying

the relevant constitutional test to the challenged statute without attempting to conjure up whether

or not there is a hypothetical situation in which application of the statute might be valid." *City of

Albuquerque*, 667 F.3d at 1124; *see also* *ACLU v. Individual Members of the Ind. State Bd. of

Law Examiners*, 2011 U.S. Dist. LEXIS 106337, *29-31 (S.D. Ind. Sept. 20, 2011) (analyzing a

facial ADA challenge by applying the statutory test to the challenged restriction).

Ignoring the proper facial-challenge test, the Defendants mount several challenges

involving unlikely hypothetical factual scenarios in which a guardianship respondent would not

require counsel. Each argument fails under the proper inquiry for a facial challenge. The

Defendants claim that some guardianships could be brought frivolously against a non-disabled

respondent and that some disabled respondents could be sufficiently skilled in the law to provide

themselves competent representation[15] or would want to knowingly and competently waive

counsel. These are the exact type of "attempt[s] to conjure up whether or not there is a

---

[14] *City of Albuquerque* specifically addresses the Supreme Court precedent cited by the District of Colorado in the pre-*City-of-Albuquerque* opinion on which the Defendants rely. 667 F.3d at 1127 (noting that *Washington State Grange* examines "whether the terms of the statute itself measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain a constitutional infirmity that invalidates the statute in its entirety") (quotation and bracket omitted).

[15] Utah claims that the Plaintiffs' allegations show Katherine to be sufficiently skilled in the law that she cannot qualify for a constitutional or statutory right to counsel. But the complaint forecloses this theory: she alleges that a guardianship proceeding would come at a time when her paranoid schizophrenia would prevent her from representing herself. Compl., ¶ 31.

hypothetical situation in which application of the statute might be valid" that the 10th Circuit held improper in *City of Albuquerque.* 667 F.3d at 1124.

Similarly, the Defendants argue that the Plaintiffs cannot support their facial challenge because the judge may use his or her discretion to grant some respondents counsel. Again, the hypothetical *ad hoc* appointment of counsel in some individual instances under the existing statutory structure does not cure the deprivations that this suit seeks to remedy. *See* Compl., ¶¶ 80, 101, 108-09, 118, 123. The Defendants' reliance on hypothetical outliers ignores that "[t]he proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Casey*, 505 U.S. at 894. In *Casey*, every married woman undergoing an abortion was subject to a law requiring her to provide a signed statement that she had notified her husband of the procedure. *Casey*, 505 U.S. at 887. The statute had many exceptions, including allowing a woman to certify that she believed notifying her husband "will cause him or someone else to inflict bodily injury on her," and thus applied only to the small subset of women for whom spousal notification would be an impediment but who did not qualify for an exception. *Id.* The defendants argued "the statute affects fewer than one percent of women seeking abortions" and, therefore, "the statute cannot be invalid on its face." *Id.* Although most of *Casey* is a plurality decision, a majority of the court refuted this position and held that the statute's "real target . . . is married women seeking abortions who do not wish to notify their husbands of their intentions and do not qualify for one of the statutory notice exemptions." *Id.* at 888. Focusing on the small subset of women who suffered the challenged deprivation, the Supreme Court invalidated the spousal notice provision as facially unconstitutional. *Id.* at 895; *see also* *Stenberg v. Carhart*, 530 U.S. 914 (2000) (upholding a

facial challenge to Nebraska's abortion statute focused on its lack of a health exception for those few women who might need such a procedure). Here, the "real targets" of H.B. 101 and the related statutory scheme are those low-asset guardianship respondents deprived of counsel. The provisions allowing the judge to appoint counsel or allowing the respondent to request counsel are, like the "exceptions" to *Casey*'s spousal notification statute, red herrings irrelevant to the facial validity of its failure to guarantee and pay for counsel.

  **B.**  **A Constitutional Right to Counsel Protects Guardianship Respondents, A Vulnerable Group Who Would Otherwise Face Severe Deprivations Alone.**

  As the Plaintiffs explained in their complaint, guardianship respondents derive their right to counsel from two independent Fourteenth Amendment sources: (1) the substantive-due-process incorporation of the Sixth Amendment and (2) procedural due process. Utah mounts a brief attack on the first source and contests the second. Because neither argument succeeds, the Court should not dismiss the Plaintiffs' constitutional claims.

  **1.**  **Because Guardianship Respondents Face a Deprivation of Physical Liberty, Substantive Due Process Guarantees their Right to Counsel.**[16]

  Beginning with *Gideon v. Wainwright*, courts have recognized that the right to counsel properly encompasses any proceeding that places a defendant's physical liberty into jeopardy. *Gideon v. Wainwright*, 372 U.S. 335, 342-343 (1963) (criminal proceedings); *In re Gault*, 387 U.S. 1, 36-37 (1967) (juvenile delinquency proceedings); *Heryford v. Parker*, 396 F.2d 393, 395 (10th Cir. 1968) (involuntary commitment); *Vitek v. Jones*, 445 U.S. 480, 496 (1980) (involuntary transfer of prisoner to mental institution); *Walker v. McLain*, 768 F.2d 1181, 1183

---

[16] The Plaintiffs refer the Court to pages 22-26 of their motion for a preliminary injunction (Dkt. No. 8) for a more in-depth discussion of their entitlement to substantive-due-process relief.

(10th Cir. 1985) (imprisonment for civil contempt). The Plaintiffs alleged that guardianship proceedings threaten to deprive them of their physical liberty. Compl., ¶ 115. The guardianship statute confirms this allegation: a guardian gains control over a ward's place of abode, ability to travel, ability to associate with others, and medical decisions. Utah Code § 75-5-312(3)(a), (c). The Sixth Amendment, as incorporated by substantive due process under the Fourteenth Amendment, thus protects vulnerable guardianship respondents through the right to counsel.

Utah challenges the very existence of this substantive-due-process right to counsel, claiming that "the Sixth Amendment, by its express terms, applies only to criminal prosecutions, not civil guardianship proceedings."[17] Binding case law forecloses this interpretation of the Sixth Amendment. Walker, 768 F.2d at 1183 ("The right to counsel, as an aspect of due process, turns not on whether a proceeding may be characterized as 'criminal' or 'civil,' but on whether the proceeding may result in a deprivation of liberty."); Heryford, 396 F.2d at 396 ("It matters not whether the proceedings be labeled 'civil' or 'criminal.'").

### 2. The Plaintiffs Have Alleged a Violation of Procedural Due Process under the Fourteenth Amendment.

"[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."[18] Boddie v. Connecticut, 401 U.S.

---

[17] Utah attempts to support this proposition by citing a nonprecedential 5th Circuit opinion. Utah Mot., 22 (citing Murray v. Earle, 334 F. App'x 602, 606 (5th Cir. 2009)). The 5th Circuit rejected a minor appellant's argument that the Sixth Amendment guaranteed her a right to counsel in a suit seeking to remove her from her parents' custody not because it was wrong but because the appellant "cite[d] no authority." Id.

[18] Utah contends that procedural due process cannot encompass a right to counsel because the Sixth Amendment more explicitly encompasses this right. But the existence of another constitutional source for a right does not limit procedural due process. Uroza v. Salt Lake Cty., No. 11-CV-713-DAK, 2014 WL 4457300, at *4 (D. Utah Sept. 10, 2014). Courts recognize that

371, 377 (1971). Courts evaluate whether a state has provided due process according to the test set out in *Mathews v. Eldridge*, weighing: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of liberty interests through the procedures used, and the probable value of additional or substitute procedures; and, finally, the Government's interest, including [any financial or] administrative burdens" entailed by substitute procedures. 424 U.S. 319, 335 (1976).

### 3. The Private Interest at Stake—A Deprivation of Fundamental Physical Liberty and Decisional Autonomy—Is Extraordinary.

The Plaintiffs allege that guardianship respondents face severe deprivations, including losing the choice where to live, the decision over what medical treatment to receive, and the autonomy that an individual generally obtains on reaching majority. Compl., ¶ 49. Such severe incursions on a person's autonomy trigger the strictest procedural-due-process protections. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004) (finding an accused illegal enemy combatant's liberty interest to outweigh even "the weighty and sensitive governmental interests" of war and treason); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.") (citations omitted). Utah contests the severity of the deprivations at stake in a guardianship proceeding, arguing that unrepresented guardianship respondents may receive limited guardianships that would result in more limited intrusions on

---

procedural due process can require counsel independently of the Sixth Amendment's right to counsel. *See, e.g.*, *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 31 (1981) (giving examples of parental termination suits that would require appointment of counsel); *Nordgren v. Mitchell*, 716 F.2d 1335, 1339 (10th Cir. 1983) (describing circumstances that would demand appointed counsel for defendants in paternity suits); *Garramone v. Romo*, 94 F.3d 1446, 1450 (10th Cir. 1996) (holding that mother had procedural due process right to counsel in child neglect hearing).

their private interests.  But the Plaintiffs alleged a severe incursion on their private interests that Utah's argument would require the Court to ignore.[19]  Compl.,  ¶ 73 ("Absent counsel, these respondents . . . are less likely to contest the proposed guardianship or, where some form of guardianship is appropriate, to advocate for limits to this guardianship.").

4. **Only Counsel Can Cure the Immense Risk that a Disabled Respondent Will Suffer an Erroneous Deprivation.**

The second *Mathews* factor requires the Court to consider the risk of an erroneous deprivation absent counsel and the probable value of the safeguard of counsel.  *Mathews*, 424 U.S. at 335.  The Plaintiffs have pleaded that only counsel can prevent them from the serious erroneous deprivations that an inappropriate or overbroad guardianship would entail.  Compl.,  ¶ 73.  The Supreme Court has admonished that "[t]he opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."  *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970) (finding written submissions an insufficient protection for welfare recipients, many of "who[m] lack the educational attainment necessary to write effectively").  And it has recognized that courts must exercise particular vigilance when examining the protections due classes of people particularly susceptible to abuses—such as those without education or with intellectual disabilities.  *Powell v. Alabama*, 287 U.S. 45, 68-69 (1932) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.").  Guardianship respondents—a group particularly vulnerable to erroneous

---

[19]  Utah cites its guardianship statute to suggest that statutory presumptions cause limited guardianships to be common.  Utah Mot., 20.  The Court should look no further than the Plaintiffs' well-pleaded allegation and should not consider Utah's contrary argument, but if it examines sources beyond the pleadings, ample authority undercuts Utah's optimistic view of the prevalence of limited guardianships.  *E.g.*, Pamela B. Teaster et al., *Wards of the State: A National Study of Public Guardianship*, 84 (in a survey of public guardianships including data from Utah, finding that only 8% of guardianships were limited).

deprivations—thus require the strong protection of counsel.

Utah counters that various procedural protections already available adequately protect guardianship respondents such that they do not require the stronger protection of counsel. First, they claim that guardianship respondents have the right to hire their own counsel or secure pro-bono counsel. Utah Mot., 20. The right to hire counsel falls well short of the guarantee of counsel that due process mandates. The mere right to hire counsel or secure pro bono counsel is particularly inadequate here: disabled guardianship respondents denied counsel are those least able to afford to pay, *see* Utah Code § 75-5-303(5)(d)(ii) (removing guarantee of counsel only for wards with estates valued at $20,000 or less), and may be unable to navigate the complex process of securing pro-bono counsel. Next, Utah points to the judge's discretion to appoint a physician, an observer, or to use her inherent authority to invent additional procedures. But protections that are only sometimes employed cannot protect all Utahns as the law requires. And, because the Plaintiffs contend that these discretionary protections are employed rarely if at all, Utah can do no more than inject a fact dispute about the frequency with which these protections are employed that is inappropriate for resolution on a 12(b)(6) motion.

### 5. Utah's Interest in Allowing Its Citizens to Avoid Working with Counsel Are Slight.

Utah's benefit from denying its disabled citizens the guarantee of counsel is slight. Utah justifies its removal of the guarantee of counsel by referencing its interest in allowing certain of its citizens "to avoid the potential costs and delays associated with retaining an attorney." Utah Mot., 22. But that is no answer to Plaintiffs' claims. The Plaintiffs' procedural-due-process claim would avoid imposing the cost of retaining an attorney on respondents who cannot afford one or on their families. Rather, it would impose the cost of attorneys for indigent respondents

25

on the state. Compl., ¶ 108. Utah does not claim that the costs it will incur in paying for counsel weigh in the *Mathews v. Eldridge* analysis. Hence the state can claim no relevant "costs . . . associated with retaining an attorney." The sole interest Utah claims is therefore the additional time its citizens would spend in working with an attorney. If this is a burden at all, it is so miniscule as to be insignificant compared to the serious deprivation at stake and society's strong interest in guaranteeing all citizens full access to the courts. *Goldberg*, 397 U.S. at 271 ("We do not anticipate that th[e] assistance [of counsel] will unduly prolong or otherwise encumber the hearing."); *see also Lane*, 541 U.S. at 533 (holding, in an ADA case, that "the ordinary considerations of cost and convenience alone cannot justify a State's failure to provide individuals with meaningful right of access to the courts"); Utah Mot., 21 (admitting that Utah has a "compelling interest in ensuring that the needs of incapacitated adults are provided for.").

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court decline to bar its doors to the Plaintiffs' efforts to effectuate their constitutional and statutory rights, and that it deny the Defendants' motions in their entirety.

Should the Court grant any portion of these motions the Plaintiffs respectfully request leave to amend their complaint. The court should "freely give leave" for any such amendment, which would not result in undue delay or prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nor would such an amendment be futile, because the Defendants largely base their arguments for dismissal on the complaint's form rather than substance.

DATED:  September 1, 2017

LATHAM & WATKINS LLP

/s/ Kyle A. Virgien
Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Kyle A. Virgien (*pro hac vice*)
Dorottya Schranz (*pro hac vice*)
John H. Steinbach (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (*pro hac vice*)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:  415.343.0762
Facsimile:  415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES
UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:  801.521.9862
Facsimile:  801.532.2850
aclu@acluutah.org

Attorneys for Plaintiffs Disability Law
Center, Katherine C., and Anthony M.