DAVID N. WOLF (6688)
ANDREW DYMEK (9277)
BRETT PETERSON (13330)
Assistant Utah Attorneys General
Utah Attorney General's Office
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: adymek@agutah.gov
E-mail: brettmpeterson@agutah.gov

*Counsel for State of Utah*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, KATHERINE C., AND ANTHONY M.<br><br>                  Plaintiffs,<br><br>v.<br><br>THE STATE OF UTAH, THE UTAH JUDICIAL COUNCIL, and the UTAH ADMINISTRATIVE OFFICE OF THE COURTS<br><br>                  Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT STATE OF UTAH'S MOTION TO DISMISS**<br><br><br><br><br>Case No. 2:17-CV-00748-RJS<br><br>Judge Robert J. Shelby |

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... vi

ARGUMENT ................................................................................................................. 1

   I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION ........................................ 1

      A.  No Federal Question Jurisdiction ...................................................... 1

      B.  The State Is Immune To Plaintiffs' Claims.................................................. 3

          1.  Standalone Constitutional Claims ................................................ 3

          2.  Claims Under Section 504 Rehabilitation Act ........................................... 4

          3.  Claims Under Title II of ADA.................................................... 4

      C.  PLAINTIFFS LACK STANDING ....................................................... 11

          1.  Katherine and Anthony Lack Standing .................................................. 11

          2.  DLC Lacks Standing............................................................. 13

            i.  DLC Has Not Suffered an Injury in its Own Right.............................. 13

            ii.  DLC Lacks Associational Standing ................................................. 14

            iii. Plaintiffs Lack Standing to Seek Blanket Prospective Relief ........................... 17

  II.   PLAINTFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) ............. 18

          A.  As-Applied Claims ....................................................................... 18

          B.  Facial Claims ........................................................................... 20

CONCLUSION..................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Access 4 All, Inc. v. Commons at Sugarhouse, LLC*, 2016 WL 6779430 (D. Utah Nov. 15, 2016) ................................................................................................................ 14, 15

*Access 4 All, Inc. v. Smith's Food & Drug Centers, Inc.*, 2017 WL 3484921 (D. Utah Aug. 14, 2017) ......................................................................................................... vi, 15

*Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174 (10th Cir. 2015) ........................................... 4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......................................................................... 16

*Clinton v. City of New York*, 524 U.S. 417 (1998)......................................................................... 12

*Cressman v. Thompson*, 719 F.3d 1139 (10th Cir. 2013) ............................................................. 12

*Dawson v. Dep't of Transp.*, 480 F. Supp. 351 (W.D. Okla. 1979)............................................... 18

*Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012)....................................................... 20

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999)........................................................................ 15, 17

*Duvall v. Georgia-Pac. Consumer Prod., L.P.*, 607 F.3d 1255 (10th Cir. 2010)............................ 7

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...................................................................................... 3

*Franco-Gonzalez v. Holder*, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) ................................. 8

*Gromer v. Mack*, 799 F. Supp. 2d 704 (N.D. Tex. 2011) .......................................................... 1, 2

*Guttman v. Khalsa*, 446 F.3d 1027 (10th Cir. 2006) ..................................................................... 3

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) ..................................................................... 9

*Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968)..................................................................... 10

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ........................................... 14

*J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289 (10th Cir. 2016)........................................ 8, 19, 20

*Knick v. Twp. of Scott*, 862 F.3d 310 (3d Cir. 2017) ............................................................. 20, 21

*Kornblau v. Dade Cty.*, 86 F.3d 193 (11th Cir. 1996) ................................................................... 7

*Lassiter v. Dep't. of Social Servs. of Durham County*, 452 U.S. 18 (1981) ........................ 10, 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................... 11

*Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007) ...................................................... 16

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................ 19

*Medina v. City of Cape Coral, Fla.*, 72 F. Supp. 3d 1274 (M.D. Fla. 2014) ................................ 7

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014) ................................. 2

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993) .......................................................................................................... 15

*New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286 (2d Cir. 2012)... 14

*Pa. Prison Soc'y v. Cortes*, 508 F.3d 156 (3d Cir. 2007) ............................................... 18, 20

*Pinson v. Equifax Credit Info. Servs.*, 316 Fed. Appx. 744 (10th Cir. 2009) ........................... 8, 19

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed.Cir.2008) ..................................... 18

*Protocols, LLC v. Leavitt*, 549 F.3d 1294 (10th Cir. 2008) ............................................. 11, 12

*Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342 (7th Cir. 1996) ............................... 7

*Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D. C. Cir.1990) ........................................ 13

*St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167 (10th Cir. 1995) .............................. 2

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................... 15

*Tanasse v. City of St. George*, 172 F.3d 63 (10th Cir. 1999) .......................................... 20

*Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004) ............................................. 11

*Tennessee v. Lane*, 541 U.S. 509 (2004) ........................................................... 5, 6, 10

*Todd v. Carstarphen*, 236 F. Supp. 3d 1311 (N.D. Ga. 2017) ............................................. 8

*Turner v. Rogers*, 564 U.S. 431 (2011) ............................................................... 10

*U.S. v. Salerno*, 481 U.S. 739 (1987) ................................................................ 20

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996) .................................................................................................................... 14

*United States v. Georgia*, 546 U.S. 151(2006) ...................................................... 4, 5, 9

*United States v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016) ........................ 12

*Valdez v. Nat'l Sec. Agency*, 228 F. Supp. 3d 1271 (D. Utah 2017) ............................................ 16

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................. 17

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ............................................ 20, 21

**Statutes**

28 U.S.C. § 2201(a) ................................................................................................ 18

42 U.S.C. § 10802(4) .............................................................................................. 17

42 U.S.C. § 12101(a)(7) ........................................................................................... 7

42 U.S.C. § 12131(2) ............................................................................................... 6

42 U.S.C. § 12202 ............................................................................................... 4, 5

Utah Code Ann. § 75-5-303(5)(d)(v) ........................................................................ 8

Utah Code Ann. § 75-5-303(d) ............................................................................... 18

**Rules**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ............................................... vi

Defendant the State of Utah (the "State"), through counsel, submits this reply in further support of its Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs have failed to demonstrate they are entitled to proceed with their claims in this Court. There are several reasons to dismiss this case. Plaintiffs' claims have not ripened to a case or controversy; this is not the proper forum to hear Plaintiffs' claims, which are simply premature defenses to a guardianship proceedings arising under state law; the State has sovereign immunity; Plaintiffs' theory that guardianship respondents are entitled to counsel in all cases contradicts controlling law; and Plaintiffs' pleadings fall far short of the *Twombly* and *Iqbal* standard in several material respects.

As underscored by a recent decision issued by Judge Jill Parrish of this Court,[1] the question of standing in this case boils down to whether the named individuals, Katherine C. ("Katherine") and Anthony M. ("Anthony"), have standing. They do not. To the numerous reasons already noted by the State as to why they lack standing, another can be added: Over two months have passed since the filing of the Complaint, and neither Katherine nor Anthony have been subject to a guardianship proceeding or been denied counsel during one, which further proves that they faced no threat of imminent injury at the time they brought this action. Katherine is a particularly odd choice for a test case premised on an alleged and unproven constitutional right to counsel in guardianship proceedings. Katherine has a *juris doctor* degree and works as a law clerk. It is undisputed that in her present condition she could ably represent herself in a guardianship proceeding without any harm or injury to her rights.

Plaintiffs ignore or downplay the very significant procedural protections provided by the

---

[1] *Access 4 All, Inc. v. Smith's Food & Drug Centers, Inc.*, 2017 WL 3484921 (D. Utah Aug. 14, 2017).

guardianship statute and House Bill 101 ("H.B. 101").   One of the foremost of these protections is the requirement that counsel be appointed for the potential ward unless the court is satisfied that one is not needed.  This requirement more than adequately addresses Plaintiffs' concerns over due process for potential wards.  Plaintiffs have not demonstrated otherwise.  Accordingly, the Court should dismiss Plaintiffs' claims.

## ARGUMENT

### I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION

#### A.   *No Federal Question Jurisdiction*

Plaintiffs do not dispute many of the points made by the State in arguing that this Court lacks federal question jurisdiction.  Plaintiffs do not and cannot dispute that guardianships have traditionally been the province of the states; that the alleged violations of federal law would occur, if at all, only during a guardianship proceeding conducted under Utah state probate law, and would not arise at all in cases where the probate judge appoints counsel.  Thus, it is undisputed that the alleged violations of federal law arise only potentially, but not necessarily, during guardianship proceedings, and that, as a result, this Court would not have either original or removal jurisdiction over a guardianship proceeding.

Plaintiffs do not take issue with the persuasive reasoning, or the outcome, in the case *Gromer v. Mack*, 799 F. Supp. 2d 704 (N.D. Tex. 2011).  Instead, Plaintiffs futilely assert that *Gromer* is "beside the point" because the court "merely followed the rule", "[a] defense that raises a federal question is inadequate to confer federal question jurisdiction." [Pl. Opp. At 2].

(Doc. 54). *Gromer* is directly on point because the bases of Plaintiffs' claims are simply potential federal defenses to a state court guardianship proceeding.[2]

Plaintiffs assert they have federal question jurisdiction because they allegedly "plead[] a cause of action created by federal law." [Pls.' Opp. at 2]. Plaintiffs are incorrect. Plaintiffs' Complaint alleges that the potential failure to appoint counsel for Katherine and Anthony at a hypothetical future guardianship proceeding would violate procedural due process, the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"). Because a cause of action has not yet accrued, Plaintiffs only option is to attempt to rely on the Declaratory Judgment Act. However, "federal courts, when determining declaratory judgment jurisdiction, often look to the 'character of the threatened action'" to determine whether it "would necessarily present a federal question." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) (citations omitted). The character of the hypothetical future action here is a guardianship proceeding arising under state law. The alleged "federal questions" would not necessarily arise during the guardianship proceeding because the probate court may appoint counsel for the potential ward. Thus, this Court should rule it lacks federal question jurisdiction.

Further, the Court should asserts its discretion not to assert jurisdiction under the Declaratory Judgment Act. *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995). Plaintiffs' claims are so unripe that they are essentially seeking an advisory opinion on a hypothetical set of facts. Plaintiffs have not explained why, if the Disability Law Center ("DLC") has a duty to protect the interests of the disabled as they claim, the DLC cannot raise

---

[2] Here, there is even less reason than in *Gromer* for the Court to rule that it has federal question jurisdiction. In *Gromer*, the alleged violation of due process rights *had actually occurred* in the course of a live proceeding, and thus the federal court had the benefit of a developed record. Here, in contrast, due to the lack of ripeness of the asserted claims, it is speculative to assume that this case involves any federal question, let alone a substantial one.

the same arguments they are raising here in state court, during a live controversy.  That would give the probate court and, if necessary, Utah appellate courts, the opportunity to consider whether Plaintiffs' concerns could and should be resolved under state law rather than constitutional law.

Finally, Plaintiffs have not adequately pleaded claims based on completed guardianship proceedings where a prospective ward was actually denied counsel.  Even if Plaintiffs had adequately pleaded such claims, under the *Rooker-Feldman* doctrine, the Court would not have jurisdiction over the claims. *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006).

### B.   The State Is Immune To Plaintiffs' Claims

The Court should rule that the State is immune to Plaintiffs' claims, as a matter of law. Plaintiffs do not dispute the State's arguments, that it has not waived its sovereign immunity, and that the *Ex Parte Young* doctrine does not apply to their claims against the State.  Thus, Plaintiffs' claims based on the Fourteenth and Sixth Amendment fail as a matter of law.  Further, Plaintiffs have failed to show that the State's sovereign immunity has been abrogated with respect to their claims under the ADA and RA.

#### 1.   Standalone Constitutional Claims

In their Third and Fourth Claims for Relief, Plaintiffs attempt to assert claims against the State based on their right to procedural due process and right to counsel under the Fourteenth and Sixth Amendments to the United States Constitution.  However, the State has sovereign immunity against these constitutional claims, for the reasons set forth in the State's initial memorandum. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  Plaintiffs have not demonstrated that any exception to sovereign immunity applies to these constitutional claims.  In fact, Plaintiffs themselves assert only their "*statutory* claims fall[] under one of the[] Eleventh

3

Amendment exceptions." [Pls.' Opp. at 5]. Thus, the Court should dismiss Plaintiffs' Third and Fourth Claims for Relief on sovereign immunity grounds.

### 2.   Claims Under Section 504 Rehabilitation Act

The State of Utah retains its sovereign immunity to Plaintiffs' Rehabilitation Act claim (i.e., Second Claim for Relief). *Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015), cited by Plaintiffs, does not compel a different conclusion. Consistent with the authorities cited by the State, the *Arbogast* court noted that "courts considering the scope of a state entity's waiver under the Rehabilitation Act acknowledge that the definition of 'program or activity' was 'not intended to sweep in the *whole state* or local government' whenever one subdivision discriminates," *Id.* at 1184 (emphasis added), as Plaintiffs acknowledge.  (Pls.' Opp. At 6).  Plaintiffs have not alleged that the State as a whole is responsible for implementing  H.B. 101 or for appointing counsel in guardianship cases.  To the contrary, Plaintiffs allege that only the other defendants (the Utah Judicial Council and the Utah Administrative Office of the Courts) are responsible for the implementation of  H.B. 101. *See* Complaint, ¶¶ 43-44.  Thus, as a matter of law, the State of Utah retains its sovereign immunity to the RA claim.

### 3.   Claims Under Title II of ADA

Plaintiffs have likewise failed to show that the ADA abrogates the State's sovereign immunity for Plaintiffs' claims against the State.  As the cases cited by Plaintiffs make clear, the ADA only potentially abrogates sovereign immunity for <u>actual</u> violations of ADA.  As noted in *United States v. Georgia*, 546 U.S. 151(2006), cited by Plaintiffs, ADA merely abrogates sovereign immunity "for a violation" of ADA, *id*. at 154 (*citing* 42 U.S.C. § 12202).  It does not abrogate sovereign immunity for claims based on future violations that may never occur.

4

Consistent with the plain language of the ADA's abrogation provision (42 U.S.C. § 12202), the persons with disabilities in *Georgia* and *Tennessee v. Lane*, 541 U.S. 509 (2004), cited by Plaintiffs, alleged that they had experienced actual violations of ADA. *Georgia*, 546 U.S. at 155 (noting that prisoner alleged, "he was confined for 23–to–24 hours per day in a 12– by–3–foot cell in which he could not turn his wheelchair around."); *Lane*, 541 U.S. at 513-14 (noting paraplegic alleged that courthouse lacked elevator forcing him to crawl up "two flights of stairs to get to the courtroom.").

In this case, Katherine and Anthony have not plausibly alleged that they have experienced a "violation of ADA," and they cannot attempt to allege a "violation of ADA" because they have not been subject to a guardianship proceeding.  Thus, the State retains its sovereign immunity against their claims based on the ADA, as a matter of law.

The State disagrees with Plaintiffs' assertion that the "*Georgia* test is unnecessary here because the Supreme Court [in *Lane*] recognized per-se abrogation for all cases seeking 'access to the courts.'"[3]  The *Lane* case is distinguishable on the facts and law, and Plaintiffs' reading of *Lane* is too expansive.  *Lane* cannot be stretched so far as to equate "access to the courts" with the appointment of counsel in a civil guardianship proceeding.  In its only reference to counsel, the *Lane* court stated that the duty to appoint counsel applied to "*certain criminal* defendants." *Id*. at 533 (emphasis added).

The focus of *Lane* was structural shortcomings in courthouses that rendered them physically inaccessible to persons with disabilities, and inhibited them from being physically present in court. *Id*. at 513-14, 515.  With respect to the "right of access to the courts," the *Lane*

---

[3] Even if *Lane* controls, *Lane* (like *Georgia*) requires allegations of discrimination, not potential future discrimination.

court noted that the "evidence before Congress when it enacted Title II established that *physical barriers* in government buildings, including courthouses and in the courtrooms, themselves, have had the effect of denying disabled people the opportunity to access vital services and to exercise fundamental rights guaranteed by the Due Process Clause." *Id.* at 515 (citation and internal quotation omitted) (emphasis added).

It is true that the *Lane* court noted in passing that the ADA requires "States to take reasonable measures to remove architectural and other barriers' to accessibility,"  including "communication" barriers. *Id.* at 531 (*citing*  42 U.S.C. § 12131(2) (mentioning "removal of architectural, communication, or transportation barriers")). Yet, the *Lane* court also noted that the "remedy Congress chose is nevertheless a limited one;" that "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities;" and that the  "reasonable modification requirement can be satisfied in a number of ways." *Id.* at 531. Thus, it is not surprising that neither the ADA nor its implementing regulations expressly require the appointment of lawyers for disabled persons in court cases.

There are a number of ways to mitigate communications barriers with a person with disabilities, including, where appropriate, "interpretative services for the hearing impaired," as mentioned in *Lane, id.* at 527, or, where requested by the disabled person, and the assistance of a family member experienced in communicating with the person.  Plaintiffs have not alleged facts showing that a lawyer is the only or the best way, in all cases, to minimize communication barriers with potential wards.

In fact, making available a lawyer's legal knowledge to a potential ward cannot be considered an ADA accommodation.  As the examples in *Lane* illustrate, the purpose of an ADA accommodation is to allow a person with disabilities to participate meaningfully in a service, to

the extent possible and reasonable, not to provide the person with specialized knowledge or other advantages she would not have if not disabled. *Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342, 344 (7th Cir. 1996) ("ADA is designed to level the playing field . . . .") s*ee* 28 C.F.R. § 35.160(a)(1) & (b)(1) (referring to appropriate steps to ensure communications with persons with disabilities are "as effective as communications with others" and appropriate "auxiliary aids" to afford them an "equal opportunity to participate in" a service). None of the other participants (e.g., petitioner, interested parties) in guardianship proceedings are entitled to a court-appointed lawyer. Thus, at the most, the ADA might require an accommodation permitting the potential ward to communicate as effectively as the other lay participants in a guardianship proceeding. Especially in those guardianship cases where the petitioning parents appear pro se, it would be manifestly inconsistent with ADA to appoint counsel for the potential ward. "The purpose of the Act is to place those with disabilities on an equal footing, not to give them an unfair advantage." *Duvall v. Georgia-Pac. Consumer Prod., L.P.,* 607 F.3d 1255, 1262 (10th Cir. 2010) (quoting *Kornblau v. Dade Cty.*, 86 F.3d 193, 194 (11th Cir. 1996)); *Medina v. City of Cape Coral, Fla.*, 72 F. Supp. 3d 1274, 1279 (M.D. Fla. 2014) stating ("'[m]eaningful access'. . . does not mean 'equal access' or preferential treatment.") (citation omitted).

There is another fundamental problem with equating access to a lawyer with a mandatory ADA accommodation. One of the principal purposes of ADA is to empower persons with disabilities to participate directly in the programs or activities of a public entity. *See* 42 U.S.C. § 12101(a)(7) (stating that "full participation" is among the goals of ADA). However, forcing a person with disability to use a lawyer as a proxy or intermediary to speak for them at a hearing relegates them to the background. Thus, when faced with allegations that a disabled person was unable to physically access a court, the *Lane* court considered the need for reasonable structural

accommodations to allow the person to be physically present in court, not the use of lawyers or other proxies in lieu of the person's physical presence and direct participation.

Even assuming that a lawyer might be considered an accommodation within the meaning of ADA, and that proposition is dubious, that does not mean a lawyer must be appointed in all guardianship cases, as Plaintiffs contend. A public entity's duty to accommodate generally is not triggered until the individual with disability requests an accommodation. That is, even if a lawyer might qualify as an accommodation, neither the ADA nor the Rehabilitation Act require a probate court to appoint one *sua sponte*, *Pinson v. Equifax Credit Info. Servs.*, 316 Fed. Appx. 744, 749 (10th Cir. 2009), unless the need for a lawyer is obvious. *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016) (holding that claim for accommodation failed as a matter of law because plaintiffs "failed to request an accommodation or show that the need for an accommodation was obvious.").[4] Neither Katherine nor Anthony have alleged they would request a lawyer, or the need for one would be obvious, at a future guardianship proceeding. Nevertheless, if the need for a lawyer is obvious, H.B. 101 itself requires that one be appointed. Utah Code Ann. § 75-5-303(5)(d)(v) (requiring appointment of counsel unless court is "satisfied that counsel is not necessary in order to protect the interests of" the potential ward).[5]

Appointing a lawyer for a potential ward when he or she has not requested one may even violate ADA. ADA's implementing regulations specifically forbid a public entity from relying on "an adult [e.g., lawyer] accompanying an individual with a disability to . . . *facilitate*

---

[4] Even assuming a lawyer is a permissible ADA accommodation and is specifically requested by the potential ward, ADA does not necessarily require the court appoint one. ADA does not require a public entity to provide a disabled person with her preferred accommodation, only a reasonable one. *See generally Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1333-34 (N.D. Ga. 2017).

[5] In support of their ADA claims, Plaintiffs cite *Franco-Gonzales v. Napolitano*, 2011 WL11705815 (C.D. Cal. Nov. 21, 2011) and *Franco-Gonzalez v. Holder*, 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013). Non-binding, these cases are useful only to the extent they contain relevant and persuasive reasoning. However, these rulings lack such reasoning.

communication" except in emergencies involving an imminent threat to safety, or where the individual "specifically requests" that the accompanying adult facilitate communication.  28 C.F.R. § 35.160(c)(2).

Under *United States v. Georgia*, 546 U.S. 151(2006), cited by Plaintiffs to demonstrate abrogation, Plaintiffs have the burden of showing the State engaged in conduct that violated both (1) Title II of ADA and (2) the Fourteenth Amendment.[6]  Plaintiff have failed to do so.

Plaintiffs have failed to plead, consistent with *Twombly* and *Iqbal*, a violation ADA. Having not been subject to a guardianship proceeding, they cannot show a "violation of ADA" has occurred.   Further, they have not alleged facts plausibly showing that they would, at a hypothetical future proceeding, request a lawyer as an accommodation or that a lawyer would be the only accommodation that could satisfy ADA.

For similar reasons, to the extent that Plaintiffs are attempting to rely on unnamed persons who have allegedly actually participated in a guardianship proceeding and did not receive counsel, Plaintiffs have not plausibly alleged facts showing an ADA violation occurred. In particular, Plaintiffs have not alleged facts showing that the duty to accommodate was triggered by a request or by obviousness; or that a lawyer was the only possible accommodation under the circumstances. *See supra, Lane* (stating the "reasonable modification requirement can be satisfied in a number of ways" ).  Because Plaintiffs cannot get past the first step of the *Georgia* test, the State retains its sovereign immunity to Plaintiffs' ADA claims, as a matter of law. *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012).

Even if Plaintiffs had pleaded facts sufficient to satisfy the first step of the *Georgia* test, Plaintiffs would be unable to demonstrate that not appointing counsel in a guardianship

---

[6] Although the *Georgia* test includes a third step, Plaintiffs do not attempt to rely on it.

proceeding would violate the Fourteenth Amendment, as is required by the test's second step.
*Lane*, 541 U.S. at 513 (due process requires that counsel be provided to "certain criminal defendants"); *Lassiter v. Dep't. of Social Servs. of Durham County*, 452 U.S. 18, 25-27 (1981) (holding that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty" equivalent to "actual imprisonment" or involuntary "commitment to an institution."); *cf. Turner v. Rogers*, 564 U.S. 431, 441, 448-89 (2011) ("[T]he Sixth Amendment does not govern civil cases.").

The cases cited by Plaintiffs are legally and factually distinguishable. *In re Gault*, 387, U.S. 1, 36-37 (1967) (holding that assistance of counsel is required for delinquency proceedings because of the "awesome prospect of <u>incarceration in a state institution</u> until the juvenile reaches the age of 21")(emphasis added); *Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir. 1968) (stating that it is the "likelihood of involuntary <u>incarceration" in a state institution</u>, where the "state undertakes to act in parens patriae," that requires that a mentally deficient person be afforded legal counsel in an involuntary commitment proceeding) (emphasis added). In contrast, in a guardianship proceeding under H.B. 101, the State is not the prosecutor or petitioner and there is no likelihood of involuntary incarceration in a state institution.

As noted above, the fact that the government does not prosecute a guardianship proceeding under H.B. 101 is material to the due process analysis. Justice Blackmun opined in his *Lassiter* dissent, that counsel should have been appointed for an indigent mother in a proceeding initiated by the State to terminate her parental rights. *Id.* at 35. Yet, even he acknowledged that due process might not require appointment of counsel if the termination proceeding had been initiated by a private party, where, as in the case of a guardianship

proceeding under H.B. 101, the State would not be performing an "adversarial and accusatory role." *Id.* at 42 & n. 9.

A guardianship proceeding under H.B. 101 is not initiated or prosecuted by state actors, and does not involve the "awesome prospect" of involuntary incarceration in a state institution, with the State acting parens patriae. Thus, H.B. 101 does not violate the procedural due process rights of potential wards, as a matter of law.

### C. *PLAINTIFFS LACK STANDING*

#### 1. <u>Katherine and Anthony Lack Standing</u>

Plaintiffs have not refuted the State's argument that any chance of Katherine or Anthony being wrongfully denied counsel in a guardianship proceeding is far too remote and speculative to give them standing. Plaintiffs' allegations that the parents of Katherine and Anthony might, at some indeterminate point in the future, bring a guardianship proceeding against them, at best rise to the level of the sort of "some day" intentions deemed insufficient to confer standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). Even if one speculatively assumes that these "some day" intentions actually will result in any concrete plans or actions by the parents before H.B. 101 sunsets, it is speculative to assume that the probate court will not appoint counsel for Katherine and Anthony, when the facts bearing on that determination are unknown and speculative, as the State explained in its motion.[7]

*Protocols, LLC v. Leavitt*, 549 F.3d 1294 (10th Cir. 2008), cited by Plaintiffs, is not on point. In *Protocols*, the plaintiff (Protocols) had engaged in conduct, i.e., it assisted in

---

[7] Because standing is determined based on the circumstances at the time the complaint was filed, *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004), it is worth noting that Plaintiffs do not appear to dispute the State's point that Katherine, a law school graduate employed as a law clerk when this action was filed, would not be injured if she were not appointed counsel in a guardianship proceeding.

structuring settlements for worker's compensation claim, for which it was exposed to liability based on a governmental agency's interpretation of a statute governing such structured settlements. Indeed, Protocols "admit[ted] that it ha[d] arranged settlements that [were] contrary to what the agency ("CMS") ha[d] declared to be required." *Id*. at 1301. As such, the case had ripened to the point that no further action by Protocols or any third party was needed before the government demanded that "Protocols reimburse Medicare for Protocols' portion of settlement proceeds." *Id*. Thus, although *Protocols* uses the term "contingent liability," the only contingency was the government's exercise of its prosecutorial discretion.

Here, there is no similar contingency with respect to Katherine and Anthony. Their fates are not in the hands of the government. The probate court cannot do anything unless and until their parents file a petition for guardianship. Whether or not that will ever happen is remote and speculative. Further, even if a guardianship petition is filed, under H.B. 101, the default rule and presumption is that counsel would be appointed unless five conditions are satisfied. It is speculative to assume that a probate court would find these conditions would be satisfied at some future guardianship proceeding, assuming one ever occurs. For these reasons, this case is distinguishable from *Clinton v. City of New York*, 524 U.S. 417, 430 (1998), cited by Plaintiffs, where the court found the plaintiff had standing because it "*now* has a multibillion dollar contingent liability" that had not been eliminated by its waiver requests. *Id*. at 531.

The other cases cited by Plaintiffs stand for the inapposite proposition that "[s]tanding may still exist even when a plaintiff ends the proscribed behavior, so long as a credible threat remains that such behavior, if taken in the future, would be prosecuted." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 901 (10th Cir. 2016); *Cressman v. Thompson*, 719 F.3d 1139, 1145 (10th Cir. 2013). Here, there is no credible threat of enforcement. And,

Plaintiffs have not alleged any alteration of their behavior as a result of threats of enforcement of H.B. 101 by the government, nor can they, since H.B. 101 applies only to guardianship petitions brought by parents.

    2.  <u>DLC Lacks Standing</u>

      i.  *DLC Has Not Suffered an Injury in its Own Right*

DLC has not suffered an injury in fact as a result of Defendants' alleged wrongful failure to appoint counsel in guardianship proceedings. DLC's alleged injuries are not cognizable injuries in fact.  DLC claims, first, that it has been injured because "Defendants' violations have required it to expend resources in bringing this suit . . . ."  (Pls.' Opp. at 12).  Expending resources on a suit does not confer standing to bring the suit.  *See, e.g., Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D. C. Cir.1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit").

DLC also cryptically claims that it has suffered a "diversion of resources extending well beyond those required to pursue this suit" because it "falls to DLC" to remedy "deprivations and abuses" resulting from "improperly and erroneously imposed guardianships."  (Pls.' Opp. at 12). However, the DLC has not alleged facts that plausibility show, as a result of H.B. 101, (1) there have been any improperly and erroneously imposed guardianships; (2) these guardianships resulted in any deprivation or abuses; or (3) that it has done *anything* to remedy any such "deprivations or abuses."  For instance, DLC has not alleged facts showing it has expended resources attempting to vacate or appeal any guardianship orders.

DLC also claims that "Defendants' actions frustrate DLC's attempts to carry out its mission"  because "DLC representative sits on the board of the Guardianship Signature Program" and "Defendants' violations prevent the Guardianship Signature Program [GSP] from

providing appointed counsel to indigent respondents," which in turn "impede DLC's actions carrying out its mission."  (Pls.' Opp. at 14).   This reasoning is circular and unpersuasive. GSP is not injured if counsel is not appointed, and its board members are certainly not injured.

Even if DLC has sufficiently alleged facts showing it suffered a cognizable injury in its own right, that simply confers on DLC standing to assert causes of action for violations of its rights and immunities, not those of Katherine, Anthony, or other individuals.  In *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 295 (2d Cir. 2012), cited by Plaintiffs, the court stated that an organization can "have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever ***rights and immunities the [organization] itself may enjoy***."  However, the claims in this lawsuit are not based on the rights or immunities of DLC, but rather on the alleged rights of individuals under the Fourteenth Amendment, ADA, and RA.  DLC lacks standing to assert these claims.  *Cf. Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (stating that although district court was "obviously correct" that organization did not have standing to assert its members' individual rights, organization had standing to assert claim under § 1983 for a denial of its *own* First Amendment rights).

> ii.   *DLC Lacks Associational Standing*

Likewise, the Court should rule, as a matter of law, that DLC lacks associational standing to assert the individual rights of Anthony, Katherine, or anyone else.  DLC's attempt to assert associational standing fails because it has not included in this lawsuit "at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association."  *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555 (1996).  Plaintiffs assert that "Defendants admit that DLC can adequately allege an injury in fact to a member without explicitly naming that member."  (Pls.' Opp. at 15).

14

Plaintiffs are mistaken.  Relying on *United Food* and *Access 4 All, Inc. v. Commons at Sugarhouse, LLC*, 2016 WL 6779430 (D. Utah Nov. 15, 2016), the State argued that DLC lacked associational standing because its failed to include any members with standing in this lawsuit. [Def. Mot. at 9]. (Doc. 36).  In *Access 4*, the court even stated that the "vast majority of courts considering the scope of injunctive relief available under Title III [of ADA] have held that a representational plaintiff is limited to the relief applicable to the named plaintiff in a denial of access case."  *Id*. at. * 7.

The State did not "admit" anything by acknowledging that the court in a non-binding case,  *Doe v. Stincer*, 175 F.3d 879, 884-85 (11th Cir. 1999), had held that the specific naming of an individual was not required to establish associational standing.  Rather, the State cited *Doe* to demonstrate that Plaintiffs have failed to establish associational standing even under decisions adopting the minority view. [Def. Mot. at 10].

More recent controlling cases make clear that  "plaintiff-organizations [must] make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers v. Earth Island Inst*., 555 U.S. 488, 498 (2009) (emphasis added); *see also Access 4 All, Inc. v. Smith's Food & Drug Centers, Inc*., No. 2:16-CV-00475-JNP, 2017 WL 3484921, at *4 (D. Utah Aug. 14, 2017) ("Since Mr. Peterson is the only purported member of Access 4 All identified in the complaint," and he is not a member, "the organization lacks associational standing.").  DLC has failed to do so.

Citing *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, Fla., 508 U.S. 656, 668 (1993), Plaintiffs claim that the "law requires nothing more" than to allege, as Plaintiffs did, that DLC's "constituents have each suffered injuries, or are at risk of suffering injuries, that would allow them to bring suit against Defendants in their own right." In *City of*

15

*Jacksonville,* the Supreme Court did not endorse such a formulaic recitation of the elements of associational standing, and the Supreme Court's subsequent decisions in *Twombly* and *Iqbal* make clear that today's pleading standards require far more than the formulaic recitation on which DLC relies. *See Valdez v. Nat'l Sec. Agency*, 228 F. Supp. 3d 1271, 1282 (D. Utah 2017) (noting that the court must consider whether these two only "bare assertion of injury in fact.").

There are additional reasons why DLC lacks standing to assert claims for any unnamed persons that DLC conclusory and inadequately asserts have "suffered injuries" as a result of not having counsel appointed at state guardianship proceeding.  Specifically, DLC lacks standing to seek injunctive relief on behalf of these unnamed persons  because DLC has not alleged and cannot allege that these unnamed persons face an impending likelihood of facing another guardianship proceeding at which they will again not be appointed counsel.  For a claim for injunctive or declaratory relief, a plaintiff's allegation of past injury is insufficient to establish standing; instead the plaintiff must show a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 104 (1983).  Moreover, seeking injunctive and declaratory relief on account of any alleged failure to appoint counsel in probate court proceeding also violates the *Rooker-Feldman* doctrine, as a matter of law.  *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007).  In addition, the prospective declaratory and injunctive relief that Plaintiffs are seeking will not *redress* any alleged injuries suffered by those who have already undergone guardianship proceedings.

Finally, Plaintiffs claim they are authorized to sue on behalf of Katherine under subsection 10805(a)(1)(B) of PAIMI.  (Pls.' Opp. at 14-15, n. 13).  Plaintiffs are mistaken. Subsection 10805(a)(1)(B) applies to "individuals with mental illness who are receiving care or treatment in the State."  "Individual with mental illness" is defined by PAIMI to mean, in

16

pertinent part, a person with a "significant mental illness . . . as determined by a mental health professional." 42 U.S.C. § 10802(4). Katherine does not meet this definition. In particular, Plaintiffs have not plausibly alleged facts showing that she has a presently-diagnosable "significant mental illness" and is currently receiving care or treatment in the State. *Cf. Doe v. Stincer*, 175 F.3d 879, 887 (11th Cir. 1999) (noting that plaintiffs had not shown the "persons were currently receiving treatment.").

### iii. *Plaintiffs Lack Standing to Seek Blanket Prospective Relief*

Plaintiffs lack standing to seek blanket injunctive and declaratory relief prohibiting Defendants from applying H.B. 101, requiring Defendants to appoint and pay for counsel for all guardianship respondents in all future cases. Even assuming Plaintiffs have standing (and they do not), they have standing only to obtain relief for themselves based on violations of their rights. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating this "Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). The only possible exception to this general rule is DLC's flawed claim that it has associational standing. However, as discussed above, DLC has associational standing for only those of its members *with standing* in their own right that have been included in this lawsuit, and DLC has failed to include any members with standing in this lawsuit. However, the blanket injunction sought by Plaintiffs would impermissibly and indiscriminately encompass all persons who would be subject to H.B. 101 in the future, including those without any present expectation, or even speculative subjective apprehensions, of facing a guardianship proceeding. Such persons manifestly lack standing and neither they nor anyone else, including DLC, may obtain an injunction on their behalf.

Similarly, even if any of the Plaintiffs suffered an injury in fact, they lack standing to raise a facial challenge under the procedural due process clause of the Fourteenth Amendment, ADA, or RA.  Only in the "highly exceptional First Amendment context," with its overbreadth doctrine, do plaintiffs generally have standing to raise facial challenges.  *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 168-69 (3d Cir. 2007) (declining to extend standing rules applicable to "highly exceptional First Amendment context" to facial challenges raised under the Ex Post Facto and Due Process clauses).

## II.     PLAINTFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

### A.  As-Applied Claims

Plaintiffs have failed to state "as applied" claims under the U.S Constitution, ADA, or RA.  Plaintiffs' theory of liability, whether under the U.S Constitution, ADA, or RA, is based on the prospect that a probate court may not appoint counsel for a potential ward in a guardianship proceeding.  Katherine and Anthony have not participated in a guardianship proceeding and have not been denied counsel.  Since a violation of their federal rights has not occurred, their only option is to attempt to state a claim for a declaratory judgment.  However, they have failed to state a claim for declaratory relief for the same reasons they lack standing.  *Dawson v. Dep't of Transp.*, 480 F. Supp. 351, 352 (W.D. Okla. 1979) (holding that an "actual controversy" is required to grant relief under the Declaratory Judgment Act"); 28 U.S.C. § 2201(a); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed.Cir.2008) (equating Declaratory Judgment Act's requirement of "actual controversy" to a "case or controversy" under Article III).

Moreover, Plaintiffs do not and cannot dispute that H.B. 101 does not affirmatively deny counsel in all cases.  To the contrary, H.B. 101 requires counsel be appointed unless five conditions are satisfied, one of which requires the court be "satisfied that counsel is not

necessary in order to protect the interests of the person." Utah Code Ann. § 75-5-303(d).
Plaintiffs have failed to state claims for Katherine or Anthony because they have not stated facts
that plausibly show that the probate court would not appoint them counsel in their guardianship
proceeding, should one ever occur.

Claims based on procedural due process and ADA/RA are inherently fact intensive, and
Plaintiffs have not plead enough facts to show such claims are plausible, despite their assertions
to the contrary. Here, Plaintiffs have not plead facts showing, *inter alia*, (1) what type of
guardianship (limited vs. plenary) will be sought, (2) whether or not the probate judge will utilize
other procedures (e.g., visitor, physician) or make available other accommodations besides
counsel, (3) whether or not the probate judge will utilize other procedures (e.g., visitor,
physician) or make available other accommodations besides counsel, and or (4) whether or not
they will request counsel, among other things.  Due to Plaintiffs' failure to plead such essential
facts, even in conclusory terms, and their inability to plead such facts without resorting to
speculation, the Court cannot even begin to evaluate (1) the <u>private interest</u> affected or (2) the
risk of erroneous deprivation of those interests <u>with the procedures used,</u> as is necessary under
the test for due process stated in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).  For the
same reasons, the Court cannot assess whether Plaintiffs have plausibly claimed that the
appointment of a lawyer would be necessary as a reasonable accommodation.

Moreover, Plaintiffs failure to plead that Katherine and Anthony (or any unnamed
individual) would request or did request counsel at their guardianship proceeding is fatal to their
ADA and RA claims.  *See supra, Pinson*, 316 Fed. Appx. at 749 (10th Cir. 2009).  Although
there is an exception to the request requirement if the need for an accommodation is "obvious,"

*see supra*, *Albuquerque Pub. Sch.*, 813 F.3d at 1299, H.B. 101 requires the probate court to appoint a lawyer if the need for one is "obvious."

## B. Facial Claims

Due to the failure of Plaintiffs to state even an "as applied" claim, *a fortiori* their facial claims fail, as a matter of law.  *See Knick v. Twp. of Scott*, 862 F.3d 310, 321 (3d Cir. 2017); *Tanasse v. City of St. George*, 172 F.3d 63 (10th Cir. 1999).  Plaintiff reliance on cases from the First Amendment and abortion contexts is misplaced.  *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 168-69 (3d Cir. 2007) (declining to rules applicable to "highly exceptional First Amendment context" to facial challenges raised under the Ex Post Facto and Due Process clauses); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2343 n.11 (2016) ("The proper standard for facial challenges is unsettled in the abortion context.") (dissent). *Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012), cited by Plaintiffs, is an inapposite case concerning First Amendment claims.[8]

Although Plaintiffs claim that a facial challenge must be resolved by applying the "relevant constitutional test," (Pls.' Opp. at 19), Plaintiffs do not identify what they think the relevant test is for a facial challenge under procedural due process, RA, or ADA.  Plaintiffs have not shown that overbreadth doctrine applies outside the First Amendment context, or the tests applied in abortion cases apply outside of that context.

The relevant constitutional test for due process claims was stated in *U.S. v. Salerno*, 481 U.S. 739 (1987), where the Supreme Court rejected a facial challenge to the "procedures of the Bail Reform Act" because it found the procedures "adequate to authorize the pretrial detention of

---

[8] There is no merit whatsoever to Plaintiffs' assertion that H.B. 101 targets "low-asset guardianship respondents."  (Pls.' Opp. at 21).  The purpose of the $20,000 limitation in H.B. 101 was to mitigate concerns that a financial motive might underly a guardianship petition.

at least some [persons] charged with crimes." *Id.* at 751. Thus, the State appropriately relied on scenarios showing that H.B. 101's procedures are clearly adequate with certain categories of guardianship respondents. Because Plaintiffs do not dispute that H.B. 101's procedures are adequate under these scenarios, Plaintiffs' facial claims fail, as a matter of law.

Where, as here, "surveying the full range of possible applications of H.B. 101] is made difficult by a bare-bones record," a facial challenge is particularly inappropriate. *Knick*, 862 F.3d at 321. Plaintiffs have not alleged facts that plausibly show that H.B. 101 violates federal law in all its applications. Even under the "large fraction" standard sometimes used in the abortion context, *Woman's Health*, 136 S. Ct. at 2343 n.11, Plaintiffs have failed to state a facial claim. Plaintiffs have not plead facts plausibly showing that a large fraction of potential wards are wrongfully denied counsel under H.B. 101, and cannot do so due to H.B. 101's requirement that counsel be appointed unless the probate court is satisfied there is no need for one.

## CONCLUSION

For the reasons stated above, the State respectfully request that this Court dismiss Plaintiffs' claims against the State in their entirety, and with prejudice.

DATED:  September 15, 2017.

OFFICE OF THE UTAH ATTORNEY GENERAL


/s/ Andrew Dymek
DAVID N. WOLF
ANDREW DYMEK
BRETT PETERSON
Assistant Utah Attorneys General
*Counsel for State of Utah*

21