BRENT M. JOHNSON (5495)
General Counsel
NANCY J. SYLVESTER (14347)
Associate General Counsel
Administrative Office of the Courts
P.O. Box 140241
Salt Lake City, Utah 84114-0241
Tel: (801) 578-3800

*Counsel for Defendants Utah Judicial Council*
*and the Utah Administrative Office of the Courts*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABILITY LAW CENTER, KATHERINE C., and ANTHONY M. <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF UTAH, THE UTAH JUDICIAL COUNCIL, and the UTAH ADMINISTRATIVE OFFICE OF THE COURTS <br><br> Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br><br><br> Case No. 2:17-CV-00748-RJS <br><br> Judge Robert J. Shelby <br> Magistrate Judge Warner |

Pursuant to DUCivR 7-1(b)(2), the Utah Judicial Council and the Utah Administrative Office of the Courts, by and through counsel Brent M. Johnson and Nancy J. Sylvester of the Utah Administrative Office of the Courts, submit the following reply in support of their motion to dismiss.

### INTRODUCTION

The Utah Judicial Council (Council) and the Utah Administrative Office of the Courts

(AOC) do not dispute that they receive federal funds, but maintain that neither entity has violated either the Rehabilitation Act or the ADA. They retain their sovereign immunity. Enjoining the Council and the AOC from implementing the provisions of H.B. 101 will not prevent injury to Plaintiffs. The Council and the AOC do not have the authority to make Utah State Court judges ignore the law, and individual judges must make the determination of how to apply H.B. 101 to the facts and circumstances of each case. As such, Plaintiffs incorrectly state that Defendants have not pointed "to any other entity that could comply." (Opp. at p. 15). The proper place to raise these claims is in a state court action.

Plaintiffs point to two rules as evidence of these defendants' abilities to redress their alleged harms: Utah Rule of Juvenile Procedure 25 and Utah Rule of Judicial Administration Rule 3-417. Plaintiffs err. The Council does not establish rules of juvenile procedure. The Utah Supreme Court does. The Council only promulgates rules addressing judicial administration and operations. (AOC's Mot. at 4-5). With respect to Rule 3-417, the AOC has yet to receive an ADA complaint filed under that rule in relation to this issue. That may be telling. Brent Johnson's letter in response to the Disability and Guardianship Project made clear that the redressability the DLC now seeks in this court was (and still is) problematic when he referred only to "progressive programs," not directives to judges. (Doc. 8-3 at 32). The Council and AOC continue to maintain that they will not interfere with judges' discretion to apply legislatively-created policy in individual cases. And contrary to Plaintiffs' assertion, discovery beyond what has already been pleaded will not yield the kind of information Plaintiffs need to keep this action alive.

## ARGUMENT

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION AS TO THE AOC

2

**AND THE COUNCIL**

    **a. Federal Question Jurisdiction**

The AOC and the Judicial Council join the State in its arguments that there is no federal question jurisdiction. The AOC and the Council are keenly interested in what happens in guardianship cases, as evidenced by the formation and sustaining of both the Guardianship Signature Program (providing attorneys for respondents) and the Volunteer Court Visitor Program (providing volunteers to report to the court on the circumstances of each case). But the AOC and Council have not violated the Rehabilitation Act or the ADA by failing to mandate that Utah State Court judges ignore H.B. 101. Neither entity will ever mandate that judges ignore a law, by rule or otherwise. This court lacks subject matter jurisdiction as to the AOC and the Council because, as the State points out, Plaintiffs' claims are federal defenses to state court guardianship proceedings. (State's M. in Supp. at 3).

The proper channel for addressing this issue remains in an individual case. As the AOC and Council mentioned previously, there are at least six different ways to do so. (AOC's Mot. at 3).[1] Plaintiffs cite *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 312 (2005), for the proposition that "federal-question jurisdiction is invoked by…plaintiffs pleading a cause of action created by federal law." But that same case went on to note that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal

---

    1 Plaintiffs assert in their opposition introduction that it is "practically impossible" for a guardianship respondent to raise constitutional defects in their case. But that presupposes a lot, such as 1) the respondent not having a support network of friends and family to help them raise these issues at any stage of their case, 2) their not having some mental competency, 3) a court visitor not being appointed, and 4) the Disability Law Center being unwilling to intervene in a live controversy at the state court level. DLC has said it has the authority to advocate for individuals at risk of or under guardianship. (*See* Pls.' Opp. at 13). Intervention is conceivably an extension of this authority and, it appears, would be permissible under Utah Rule of Civil Procedure 24(b).

jurisdiction." *Id.* at 314. That disruptive portent is present here, at least as to the AOC and the Council because of the limitations of their roles within the judiciary. That is, of establishing administrative and operational policy, not policy within individual cases. (AOC's Mot. at 4-5).

With respect to their contentions as to *Gromer* and the probate exception, Plaintiffs seem to misunderstand the AOC's and Council's arguments. (Pls.' Opp. at 3, n. 4). The AOC and Council did not claim that Utah granted its courts exclusive jurisdiction over probate matters. They readily acknowledge that the probate exception, which discusses the probate and annulment of wills, does not apply here. *See Marshall v. Marshall*, 457 U.S. 293, 311-12 (2006). But the AOC and Council did accurately state that state laws traditionally confer jurisdiction on state courts to adjudicate probate proceedings. (AOC's Mot. at 4). And in the context of the redressability issues present here, it makes sense for the AOC and Council to point this out. A respondent in a guardianship case has a much better chance of having any due process issues resolved at the time of their state court case than in a lawsuit the end goal of which is to have this Court force the AOC and Council to do something that is outside their respective authorities.

**b.  Eleventh Amendment Immunity**

The AOC and Council maintain their sovereign immunity for the same reasons the State does. And with respect to Rehabilitation Act claims, assert that Eleventh Amendment immunity is only foreclosed in the context of *viable* RA claims. *Arbogast v. Kansas, Dep't of Labor*, 789 F.3d 1174, 1183 (10th Cir. 2015) ("In response to the [*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247(1985)] decision, Congress enacted the Rehabilitation Act Amendments of 1986, in which it sought to provide a sufficiently clear statement that acceptance of federal funds by the states constituted a waiver of immunity" where states violate the Act.)   The Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States ... shall, solely

4

by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….” 29 U.S.C. 794(a). For the reasons already stated, the AOC and Council maintain that Plaintiffs’ Rehabilitation Act claims do not apply to them—even though they receive federal funds—due to the exceptionally limited role they have played in the “implementation” of H.B. 101. (See Motion pp. 4-5). Neither the AOC nor the Council has excluded any of the Plaintiffs from its programs or activities. To the contrary, both have encouraged the use of the Guardianship Signature Program and the Volunteer Court Visitor Program. As such, the AOC and the Council retain their sovereign immunity and Plaintiffs’ Rehabilitation Act claim should not go forward.

These same reasons also guide the analysis with respect to the ADA and the Fourteenth Amendment. “Title II of the [ADA] … provides that ‘no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.” *Tennessee v. Lane*, 541 U.S. 509, 513 (2004) (quoting 42 U.S.C. § 12132).The activities referred to in *Lane* were access to the courts by criminal defendants. And as the State notes, *physical* access to courts was the real focus of *Lane.* The AOC and Council take issue with the claim that they have denied Plaintiffs access to the Utah State Courts. They have certainly not denied physical access to the courts. And on a more fundamental level they are not involved in judges’ decision-making with respect to the appointment of counsel in individual guardianship cases except to the extent that they provide the Guardianship Signature Program. That program makes it easier for judges to appoint (often) low- or no-cost counsel for respondents. The AOC’s and Council’s provision of that program points to increased—not decreased—court access. But

as the State points out in its Memorandum in Support, because there are many other ways to accommodate a disabled person, it is doubtful that the appointment of counsel would be considered a reasonable ADA accommodation in every case. The AOC and the Council agree with Plaintiffs that "Title II [of the ADA] creates a private cause of action against the States," but only "for conduct that actually violates the Fourteenth Amendment..." *United States v. Georgia, 546 U.S. 151, 159* (2006). Because the AOC and Council have not violated the ADA, they have not violated the Fourteenth Amendment. Plaintiffs should not be permitted to proceed in their action against either entity because they retain their sovereign immunity.

### c.  Standing

In their motion to dismiss, the AOC and Council joined the State in its arguments regarding Plaintiffs' lack of standing. They will defer again to the State on these arguments and add that they disagree with Plaintiffs' contention that "Defendants agree that the complaint satisfies the second *Lujan* requirement." (Opposition at p. 9). These defendants do not agree, and although they may not have explicitly addressed this in the context of *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992), they generally addressed it in the context of redressability and their ability to actually "implement" H.B. 101. Plaintiffs' injuries are *not* fairly traceable to the Defendants' conduct for all of the reasons already stated and those below

### i.  Council and Utah Supreme Court Rulemaking Authority

With respect to Plaintiffs' contentions as to the Council's ability to implement rules establishing a right to counsel (Pls.'Opp. at 16), Plaintiffs simply err. (*See* discussion of Council's rulemaking authority, AOC's Mot.at 4-5. Plaintiffs point to Utah Rule of Juvenile Procedure 25(c)(1) as evidence that the Council "has established [rules] effectuating the juvenile right to counsel recognized by the Supreme Court in *In re Gault*, 387 U.S. 1 (1967)." But the

6

Council did not establish that rule. The Utah Supreme Court did. Utah Code section

78A-6-203(1)(a)-(b) states the Council shall establish the Board of Juvenile Court Judges by

rule. What it does not say is that the Judicial Council may establish the Rules of Juvenile

Procedure through that body. That falls under Article VIII, Section 4 of the Utah Constitution

(rulemaking authority of the Utah Supreme Court), Chapter 11, Article 1 of the Utah Code of

Judicial Administration ("establish[ing] procedures for the adoption, modification, and repeal of

rules governing the practice of law, evidence, court procedures, and other matters within the

authority of the Supreme Court), and Utah Code of Judicial Administration Rule 11-101(1)

("There is hereby established a Supreme Court advisory committee in each of the following

areas: civil procedure, criminal procedure, juvenile court procedure, appellate procedure,

evidence, and the rules of professional conduct.").

      Lest Plaintiffs assume by virtue of its rulemaking authority that the Utah Supreme Court

should be a party to this action (and because they opened the door), counsel takes this

opportunity to explain what that court can and cannot do. The Utah Supreme Court can declare

one's constitutional right to counsel only in a ripe case or controversy. *Baird v. State,* 574 P.2d

713, 716 ("The courts have no jurisdiction to render a declaratory judgment in the absence of a

justiciable or actual controversy. . . Judicial adherence to the doctrine of separation of powers

preserves the courts for the decision of issues between litigants capable of effective

determination.") In *In re E.K.S.,* 2016 UT 56,[2] for example, the court determined that an

indigent mother had a due process right to the appointment of counsel in a private parental

---

    2 Pertinent to this case, the court also noted that "[i]n general, a court has discretion as to whether to appoint
counsel in civil matters. This discretion can be limited in two ways: first, a statute or constitutional provision may
require that counsel be appointed, as in certain parental termination cases. Second, a statute may do just the opposite
and forbid the appointment of counsel." *Id.* at ¶17.

termination case, even in the face of a contrary statutory provision. *See also In the Matter of the Adoption of K.A.S.,* 2016 UT 55. But the Utah Supreme Court could not declare that right extra-judicially. The case of *Utah Transit Authority v. Local 382 of Amalgamated Transit Union* offers a good discussion of the court's judicial power. Although the discussion is within the context of advisory opinions, it has overlap with its rulemaking authority.

> Under [Utah Constitution Article VIII, Section 1, "[t]he judicial power of the state' is "vested in a Supreme Court, in a trial court of general jurisdiction known as the district court, and in such other courts as the Legislature by statute may establish." [] Alone, the text does little to reveal the precise scope of the judicial power. But it does make one fundamental point abundantly clear: The scope of our authority is not a matter for the courts to define at our preference or whim; we are constitutionally limited to wield only "judicial power" and may not act extra-judicially (regardless of how interesting or important the matter presented for our consideration).

2012 UT 75, ¶ 20, 289 P.3d 582, 587. In that vein, the Utah Supreme Court is not a political body, so it cannot enact rules that instruct judges to ignore legislatively-enacted policy. *State v. Walker,* 2011 UT 53, n. 8 (quoting *State v. Atkinson*, 298 Or. 1, 688 P.2d 832, 835 (1984)) ("'Like the Supreme Court of the United States, we are a judicial, not a legislative body. It is not our function to decide [policy]. That is a matter for politically accountable officials to decide by laws, ordinances, or delegations of rulemaking authority.'"). The court as of 1943 has exclusive authority to adopt rules of procedure and evidence, a power that is "considered essential to…maintaining an independent judiciary." *Injured Workers Ass'n of Utah v. State*, 2016 UT 21, ¶23. But the constitution also permits legislative oversight. *Id.* ¶26. That means "[t]he Legislature may amend the Rules of Procedure and Evidence adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature...." *Id.;* Utah Const. art VIII, § 4. The Supreme Court is not wont to step on the Legislature's political toes, so to speak, by enacting rules that directly contradict its policies. But if a case or controversy comes

8

before the court in which it is asked to weigh in on the constitutionality of a statute (such as the H.B. 101 provisions of Utah Code section 78A-5-303), it may exercise its discretion to do so, as noted above. *Baird,* 574 P.2d at 716.

### ii.   Code of Judicial Administration Rule 3-417.

Plaintiffs point to Code of Judicial Administration Rule 3-417 (in conjunction with Juvenile Procedure Rule 25(c)(1)) as fairly conclusive evidence that the AOC could resolve an ADA claim like the one they have set forth in this court. But this argument presupposes that *all* ADA claims as to the Utah State Courts can be resolved administratively. As the AOC and Council have already noted, the kind of ADA claim Plaintiffs set forth should be resolved within the context of an individual case since the AOC and Council have no authority to order a judge to provide counsel. (*See* State's discussion of ADA accommodations, M. in Supp., "Claims Under Title II of ADA").

Interestingly, the AOC has yet to receive an ADA complaint filed under Rule 3-417 from any of the plaintiffs. Even if the letter the Disability and Guardianship Project sent to the Council on April 7, 2016 (see Document 8-3, p. 27) could be construed as a complaint sent on behalf of the plaintiffs, none appealed Brent Johnson's response letter, as would have been their right under the rule. But perhaps that makes sense given the AOC's and Councils' arguments up to this point. At the time he sent it, Mr. Johnson's letter made clear that the redressability the DLC now seeks in Federal Court was a problem. He never insinuated that the AOC could demand that judges appoint counsel in every guardianship case. He only referred to "progressive programs," such as the Guardianship Signature Program and the Court Visitor Program, as ways to improve access and protections. (Document 8-3, p. 32). The Council and AOC continue to maintain that they will not interfere with individual judges' discretion to apply the law. (*See* AOC's Mot. at 9).

9

As to these defendants, discovery beyond what has been already pleaded will not yield the kind of information Plaintiffs need to keep this action alive.

## II.       PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM

The AOC and Council reassert that for all of the reasons this complaint should not survive a 12(b)(1) motion because subject matter jurisdiction is lacking, this complaint should not survive a 12(b)(6) motion. Plaintiffs have simply failed to allege injuries that are redressable against the AOC and the Council because neither entity "implements" legislation in the way they suggest. So Plaintiffs have failed to state a claim upon which relief may be granted. Because the State's arguments regarding as-applied claims are similar to ones the AOC and Council made in their motion, they join them. To the extent that the State defends the constitutionality of H.B. 101 in its section on facial claims, the AOC and Council do not join them because they will not weigh in on the constitutionality of a statute.

## CONCLUSION

For all of the reasons above, this court lacks subject matter jurisdiction over—and Plaintiffs have failed to state a claim upon which relief can be granted as to—the Utah Judicial Council and the Utah Administrative Office of the Courts. Plaintiffs' complaint should be dismissed.

Dated this 15th day of September, 2017.

/s/Nancy J. Sylvester
Counsel for Defendants Utah Judicial
Council and Utah Administrative Office of
the Courts

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was delivered to the court's CM/ECF electronic filing system as follows on this 15th day of August, 2017.

Alfred C. Pfeiffer, Jr. (pro hac vice)
Kyle A. Virgien (pro hac vic)
Dorottya Schranz (pro hac vice)
John H. Steinbach (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California   94111-6538
Telephone:   415.391.0600
Facsimile:   415.395.8095
al.pfeiffer@lw.com
kyle.virgien@lw.com
dorey.schranz@lw.com
john.steinbach@lw.com

Claudia Center (pro hac vice)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Telephone:   415.343.0762
Facsimile:   415.395.0950
ccenter@aclu.org

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
AMERICAN CIVIL LIBERTIES UNION OF
UTAH FOUNDATION, INC.
355 N. 300 W.
Salt Lake City, Utah 84103
Telephone:   801.521.9862
Facsimile:   801.532.2850
aclu@acluutah.org
*Attorneys for Plaintiffs Disability Law Center, Katherine C., and Anthony M.*

DAVID N. WOLF (6688)
ANDREW DYMEK (9277)
BRETT PETERSON (13330)
Assistant Utah Attorneys General
Utah Attorney General's Office
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: adymek@agutah.gov
Email: brettmpeterson@agutah.gov
*Counsel for Defendant State of Utah*

/s/ Nancy J. Sylvester
Counsel for Defendants Utah Judicial Council and Utah Administrative Office of the Courts

11